**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ANDAV CAPITAL,<br>NISHA DESAI,<br><div align="right">*Plaintiffs*,</div><br>v.<br><br>PAYPAL HOLDINGS, INC.,<br>PAYPAL VENTURES,<br><div align="right">*Defendants*.</div> | Case No. 25-cv-33<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1.    In the United States, race is a "forbidden classification" under our law because "it demeans the dignity and worth of a person to be judged by ancestry instead of by his or her own merit and essential qualities." *SFFA v. Harvard*, 600 U.S. 181, 220 (2023). So Congress, in enacting 42 U.S.C. §1981 as part of the Civil Rights Act of 1866, "establish[ed] in the federal law a broa[d] principle" of racial neutrality that "proscribe[s] discrimination in the making or enforcement of contracts *against*, or *in favor* of, any race." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976) (emphasis added).

2.    That federal law would allow racial discrimination—*no matter the race* of the victims—is a notion "so radical, so destructive, that it required a Second Founding to undo." *SFFA*, 600 U.S. at 230. As the Supreme Court has recently emphasized, discrimination against Asian Americans is legally prohibited, even if that discrimination supposedly helps members of other racial groups. *Id.* at 218.

3.    Remediation of broad societal discrimination in the past cannot justify further and new broad societal discrimination today: It cannot "justify a [racial] classification that imposes disadvantages upon persons … who bear no responsibility for

whatever harm the beneficiaries of the race-based … program are thought to have suffered." *Id.* at 226 (cleaned up). And an institution's "self-proclaimed righteousness does not afford them license to discriminate on the basis of race." *Id.* at 256 (Thomas, J., concurring). "Indeed, if our history has taught us anything, it has taught us to beware of elites bearing racial theories." *Id.* at 267 (Thomas, J., concurring).

4.     PayPal is flagrantly violating these principles. It runs a multi-million-dollar investment program that racially discriminates by design. This program invests in "Black and Latinx-led" emerging venture-capital funds. Funds majority-owned by individuals of other races, including Asian Americans, are not given equal consideration. Worse, PayPal and its senior management have repeatedly trumpeted the program's focus on race, bragging in statements and press releases that PayPal's program is for some races and ethnicities but not others.

5.     PayPal's discrimination harmed Nisha Desai, directly and immensely. Born and raised in northwest Georgia, Ms. Desai is an American woman, a U.S. citizen, and the daughter of lawful American citizens. She founded and runs Andav Capital, an early-stage venture capital firm. But Ms. Desai is Asian American. When Ms. Desai sought inclusion in PayPal's program, she was denied equal consideration—along with significant funding at a crucial time—because of her race.

6.     The exclusion from PayPal's program cost Andav vital capital worth millions of dollars. As PayPal anticipated and hoped, emerging venture firms that received

PayPal's investment were able to leverage those awards into additional investments, greater brand equity, resources, access, and success.

7.     For some of the funds, PayPal was the *first* major or institutional investor—a fact that created a halo effect and that catalyzed substantial fundraising and growth for those awardees. Meanwhile, funds that PayPal rejected suffered from the adverse and inaccurate perception that PayPal had made a decision based on the merits of their business, rather than the race of the fund's ownership.

8.     PayPal's exclusion of Asian-Americans violated §1981 because it blocked the creation of contractual relationships based on race.

9.     PayPal's racially exclusionary investment program is also illegal under New York state and city laws prohibiting racial discrimination.

## PARTIES

10.     Plaintiff Andav Capital is a New York-based venture-capital firm.

11.     Plaintiff Nisha Desai, a United States citizen and Asian-American woman, is CEO and the founding general partner of Andav Capital. She lives and works in New York City.

12.     Defendant PayPal Holdings, Inc. is a financial institution and technology company. It has offices around the world, including in New York City.

13.     Defendant PayPal Ventures is the corporate venture arm of PayPal.

14.     Together, the PayPal defendants ran the racially discriminatory program that injured Plaintiffs.

## JURISDICTION AND VENUE

15.     This Court has subject-matter jurisdiction under 28 U.S.C. §1331, §1343, and §1367 because Plaintiffs primarily allege violations of federal civil-rights laws and all other claims form part of the same case or controversy.

16.     Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

**A. PayPal launches an investment program to "support Black and minority-owned businesses and communities."**

17.     On June 11, 2020, PayPal and its CEO Dan Schulman unveiled "a $530 million commitment to support Black and minority-owned businesses in the U.S. … to help address economic inequality." Press Release, *PayPal Announces $530 Million Commitment to Support Black Businesses, Strengthen Minority Communities and Fight Economic Inequality* (June 11, 2020), perma.cc/DE5G-QXFL.

18.     This commitment included a $500 million allocation specifically for "an economic opportunity fund to support and strengthen Black and underrepresented minority businesses and communities over the long term" and to "drive financial health, access and generational wealth creation," including by "investing directly into Black and minority-led startups and *minority-focused investment funds*." *Id.* (emphasis added); *accord* Masters of Scale, *Inside PayPal's $530M Plan to Close the Racial Wealth Gap - PayPal's Dan*

4

*Schulman* (archived Dec. 21, 2024), tinyurl.com/mryxcb4a (Dan Schulman: "We established a $500 million fund to invest in Black and minority entrepreneurs, Black and minority-owned businesses, [and] Black and minority-owned investment funds.").

19.    "Startups and investment funds" were "invited to express interest" in this economic opportunity fund "to the PayPal Ventures team." *PayPal Announces $530 Million Commitment to Support Black Businesses, supra.*

**B. Nisha Desai and Andav Capital immediately seek funding through PayPal's investment program and appear to be ideal recipients.**

20.    Ms. Desai and Andav Capital immediately sought funding from the new PayPal investment program.

21.    Based on PayPal's purported intent to "fight economic inequality," "drive financial health, access and generational wealth creation," "close the racial wealth gap," and "advanc[e] a more just economy and society," Ms. Desai and Andav Capital appeared to be ideal candidates. *Id.*

22.    Ms. Desai established Andav to generate financial returns by investing in undervalued early-stage companies, whose overlooked founders or gap-closing business models would generate above-market returns. She had a deep affinity for and track record of doing so.

23.    Ms. Desai's life has given her an acute understanding of the intersection of legal equality, economic opportunity, and generational advancement:

a. Ms. Desai is an American woman. She is also a woman of color and Asian American.

b. She was born and raised in the Deep South to blue-collar immigrants for whom English was a fourth language (after Gujarati, Swahili, and Hindi).

c. Her mother, one of seven born and raised in colonial Uganda to small-business operators, became destitute and a refugee under Idi Amin's forcible Asian-expulsion and violent, race-based Asian asset nationalization.

d. Her father—one of eight born and raised in Kenya as a British subject—was unlawfully detained by the British government and refused his rightful British citizenship.

e. All four of her grandparents were born under and subject to colonial rule.

f. Immigrating to the U.S. in the 1970s legally as British citizens, her parents worked 6 to 7 days per week for decades as small business owner-operators and became naturalized American citizens. From childhood, she often worked alongside them. She and her family made many sacrifices and worked tirelessly in pursuit of the American Dream.

g. Ms. Desai became a first-generation college graduate. She worked multiple jobs in high school and college (while sustaining heavy extracurricular, leadership, and academic loads) to pay her way through college and to fully repay her educational loans.

h. Despite her humble background and lack of connections or guidance, Ms. Desai reached and excelled at preeminent institutions including Google, Wachtell Lipton, J.P. Morgan, Georgetown, and The Wharton School.

i. She exhibited a lifelong commitment to inclusion, America's promise of equal rights, and professional excellence: She worked for civil-rights leader Rep. John Lewis, in a jail and a public defender's office for indigent inmates, and toward the rare professional distinction of Chartered Financial Analyst.

24. Given her own family's history, Ms. Desai views hard work, entrepreneurship, and the rule of law as the foundation for self-empowerment and the American Dream. Ms. Desai believed early-stage capital markets were inefficient in addressing talented, hungry entrepreneurs who lacked access to "friends and family" capital. Through Andav, she sought to level the playing field for diverse and overlooked founders.

25. Andav Capital's demonstrable work fit PayPal's stated economic inclusion goals and interests. For example, in the midst of the Covid-19 pandemic, Andav's portfolio companies enabled thousands of struggling Americans to get credited back for bank overdraft fees, provided income sources to the underemployed by creating new remote work opportunities, and counseled hundreds of American small businesses and non-profits, including healthcare clinics, family-owned farms, restaurants, and mom-and-pop shops.

26.     Based on Andav's prior work and on a June 2020 interview, *Emerging Manager Monthly* published an article titled "Andav Offers Early-Stage Seeding to Diverse Businesses." *Andav Offers Early-Stage Seeding to Diverse Businesses,* Emerging Manager Monthly (Nov. 26, 2020) (Interviewed in June 2020). This reputable industry publication stated that, "[a]s ESG investments begin to shift to focusing beyond the 'E' for environment, Andav Capital's focus is largely on the 'S' of social and economic impact for underserved populations and on companies whose core businesses drive solutions for socio-economic disparity" and that "Andav Capital focuses on underserved founders that don't come from generational wealth." *Id.* It included Ms. Desai's statement that "[t]he durability of the businesses we are investing in is enhanced by the fact that very few other companies are applying for-profit business structures to addressing inequities of the bottom 99%, particularly in this country." *Id.*

27.     Andav invested in, for example, financial technology, commerce enablement, and payments.

28.     Working full-time 7 days a week, Ms. Desai invested substantial time, capital, and effort building Andav Capital.

29.     Ms. Desai personified PayPal's stated goals. A minority woman overcoming generational adversity, she committed her resources and talents to launching a firm to specifically support underrepresented founders and undervalued companies, the vast majority of whom were operated by women, minorities, or other often overlooked groups. Ms. Desai was well-positioned to deploy PayPal's capital to benefit a variety of

early-stage, undercapitalized companies in alignment with both PayPal's and Andav's interests.

30.    Within hours of PayPal's June 2020 announcement, Ms. Desai contacted Patrick Dowd, a PayPal executive in partnerships, who had publicly indicated his affiliation with the funding program.

31.    Mr. Dowd and Ms. Desai had a two-hour discussion over Zoom that very day regarding Andav's work and its inclusion in PayPal's funding program.

32.    Mr. Dowd received confidential information on Andav from Ms. Desai and directed her to follow up with another PayPal executive, which she did.

33.    Also on June 11, Ms. Desai separately contacted Jay Ganatra, Director of PayPal Ventures, to explain Andav's fit for PayPal's program.

34.    Mr. Ganatra directed Ms. Desai to email him more information on Andav in order to figure out next steps, which Ms. Desai did.

35.    In the weeks following these contacts, Ms. Desai had several more exchanges with Mr. Ganatra and Mario Ruiz, Principal of PayPal Ventures, regarding PayPal's funding program and Andav.

36.    At Mr. Ganatra's request, Ms. Desai provided PayPal with proprietary and confidential information about Andav and Ms. Desai's relevant experience. Ms. Desai shared (among other things) her investment thesis, execution strategy, professional experience, investment performance, track record, capital markets views, and portfolio

company information, including qualitative and quantitative impact on reducing socio-economic disparity for overlooked Americans and on funding underrepresented founders.

37.    On July 19, 2024, Ms. Desai reached out to Usman Ahmed, Head of Public Policy and Research for PayPal, to discuss PayPal's program, her experience, and capital-markets realities for emerging-manager-led venture-capital firms. Mr. Ahmed has a J.D. and teaches at a law school.

38.    On July 24, 2020, Ms. Desai spoke with Mr. Ahmed. They discussed the program's process, policies, and power; the emerging-manager-led venture capital market, market structure, and manager selection; company and senior management decisions, including racial and socio-economic inclusion in PayPal's $530 million program; and Ms. Desai's concerns that Asian-American women fund managers be equally evaluated and included within the program.

39.    During this discussion, Mr. Ahmed acknowledged and confirmed that the program did, in fact, preference black and Hispanic-led firms over other races and ethnicities, including Asian Americans.

40.    Ms. Desai discussed her own background and explained that race was an inappropriate proxy for socio-economic background, access to generational wealth, or unearned access to opportunities. Ms. Desai reiterated to Mr. Ahmed that her and Andav's work should be evaluated on merit, fit, and record.

41.    On July 25, 2020, Ms. Desai sent Mr. Ahmed additional research and information about the emerging-fund-manager market, Andav's experience, and how Andav would advance PayPal's stated goals. Ms. Desai also reiterated the substantial market impact of PayPal's investment. She reiterated the challenges of underrepresented emerging fund managers (particularly those who do not come from generational wealth) and the market-impacting role and halo effects of catalytic capital from limited partners, like PayPal's opportunity fund. Mr. Ahmed responded on July 26, 2020, thanking Ms. Desai and letting her know that he would follow up with her.

42.    Neither Mr. Ahmed nor anyone else at PayPal ever followed up with Ms. Desai. PayPal instead excluded her and Andav from competing for these funds because of Ms. Desai's race. Had they been allowed, Ms. Desai and Andav would have completed all necessary steps to obtain, and would have accepted, Paypal's funding through the program.

### C.  PayPal announces awards.

43.    On October 28, 2020, PayPal announced its first program investments, stating it was investing "$50 million in eight early-stage, Black and Latinx-led venture capital funds." Press Release, *PayPal Invests $50 Million in Black and Latinx-Led Venture Capital Funds* (October 28, 2020), perma.cc/9SRU-T5XL. PayPal's press release emphasized the racial criteria it applied to its investments. *Id.*

44. PayPal's CEO, Dan Schulman, repeated the company's racial rhetoric, emphasizing that "PayPal is investing $50 million in eight Black and Latinx-led, early-stage venture capital funds." Dan Schulman, *LinkedIn Post* (2020), perma.cc/4HD5-82M2.

45. Consistent with its racially exclusive investment program, PayPal announced in the same press release that it would establish a racially exclusive venture capital apprenticeship program. It would "begin offering a three-month fellowship to a Black or Latinx graduate student each semester, through which the PayPal Ventures team will provide coaching, training and mentoring." *PayPal Invests $50 Million in Black and Latinx-Led Venture Capital Funds*, *supra*.

46. Ultimately, every single one of the funds that PayPal invested in this first round included at least one general partner who was black or Latino—an unmistakable racial pattern that reflected PayPal's stated race-based purpose.

47. The press release also noted that PayPal Ventures invests in "startups in areas of strategic relevance to PayPal, including financial services, commerce enablement and payments infrastructure." *Id.* Andav already had a track record of investing in startups (including startups led by underrepresented founders) in these three areas.

48. Some of the funds PayPal invested in lacked relevant track records comparable to Andav's. Yet PayPal became the first major investor for those funds.

49. On May 26, 2021, PayPal announced its second round of investments and again touted its racial criteria: "an additional $50 million in 11 Black- and Latinx-led early-stage venture capital funds." Press Release, *PayPal Invests Additional $50 Million in*

12

*Black and Latinx-Led Venture Capital Funds as Part of $535 Million Commitment* (May 26, 2021), perma.cc/R9GZ-M6GD. These investments, PayPal explained, were designed to "build upon the $50 million investment by PayPal in eight Black and Latinx-led early-stage venture capital funds announced in October 2020." *Id.*

50.    Once again, PayPal's CEO reiterated the company's racial discrimination. Schulman highlighted the two racial groups considered for the program, noting that "[v]enture capital funds led by Black and Latinx managers expand wealth creation opportunities for diverse founders." *Id.* And in a separate press release Schulman re-emphasized the program's racial criteria: "PayPal," he said, "will invest an additional $50 million in 11 Black- and Latinx-led early-stage venture capital funds." Dan Schulman, *Linkedin Post* (2021), perma.cc/9GM5-MJZY.

51.    Again, PayPal's racial criteria were obvious: Not a single dollar was given to funds without at least one black or Hispanic general partner.

52.    In the days that followed the May 26 announcement, PayPal continued to fixate on black and Hispanic minorities, with no mention of Asian Americans, other racial minorities, or other demographic groups.

53.    In a statement to the news publisher Payments Dive, a PayPal spokesperson made clear that race mattered in the awards: "Our ventures team met with more than 200 funds over the past year and ultimately evaluated them based on a mix of historical investment performance, diversity (race, gender, and geography), and align-

ment with PayPal's commitment to address the racial wealth gap." Vaidik Trivedi, *Pay-PaI Invests $50M More in Black, Latinx Funds*, Payments Dive (May 27, 2021), perma.cc/XN39-M6Z8.

54.    Even today, PayPal continues to make the same race-based claims. Just a few weeks ago, PayPal's "Economic Opportunity Fund Manager," Lisha Bell, said the "Economic Opportunity fund"—the program Ms. Desai tried to apply to—was created to "inves[t] in first-time diverse GPs and funds." *Inside PayPal Ventures*, 0:55-1:10 (Nov. 8, 2024), perma.cc/KQ3B-WE9C. And what did it mean by "diverse?" "[B]lack and brown lead funds." *Id.* And "brown" meant Hispanic, including white Hispanics, but not brown Asian-American women like Ms. Desai.

55.    In total, PayPal invested $100 million in 19 venture capital firms led by "Black and Latinx managers," but announced not $1 of funding to Asian-American woman-led funds—despite their demonstrated interest and fit. *Id.*

56.    Moreover, PayPal has explicitly told multiple Asian-American-woman general partners that their firms were ineligible for investment awards because PayPal had identified them as of Asian descent.

57.    To PayPal and its executives, Asian Americans might be minorities, but they're the wrong kind of minority.

58.    PayPal has not announced an end to the program.

**D. PayPal refuses to fairly and equally evaluate Andav for multi-million-dollar investment contracts on account of Ms. Desai's race.**

59.    The 19 emerging venture capital firms that PayPal selected for multi-million-dollar investments include at least 38 general partners.

    a.  19 out of 19 awardee firms have at least one black or Latino general partner.

    b.  19 out of 19 awardee firms have general partnerships with 50% or more black or Latino partners.

    c.  0 out of 19 awardee firms have general partnerships with more than 50% Asian-American or non-Hispanic white general partners.

    d.  0 of the awardee funds are majority-owned by an Asian-American woman general partner.

    e.  0 out of 38 awardee general partners is an Asian-American woman.

60.    PayPal invested in 6 emerging venture capital firms run by solo general partners.

    a.  6 out of 6 of those solo general partner firms were black or Latino owned.

    b.  0 out of 6 of those solo general partners were Asian-American or non-Hispanic white owned.

61.    PayPal awarded multi-million-dollar investment contracts—an average of $5 million dollars at a time—to numerous black and Latino emerging fund managers, but not a single dollar to an emerging Asian-American woman fund manager, even

though multiple emerging Asian-American women fund managers sought funding through this program.

62.    The exclusion of Andav from PayPal's program cost Andav vital capital worth millions of dollars to the firm. Additionally, as PayPal had anticipated and hoped for, emerging venture firms that received PayPal's investment were able to leverage those awards into additional investments, greater brand equity, resources, access, and success.

63.    PayPal's race-based rejections also distorted the market for emerging venture-capital funds focused on underserved founders. Funds that PayPal rejected suffered from the adverse and inaccurate perception that PayPal had made a decision based on the merits of their business, rather than the race of the fund's general partner.

## CLAIMS FOR RELIEF
### COUNT I
### Violation of the Civil Rights Act of 1866
### 42 U.S.C. §1981

64.    Plaintiffs repeat and reallege each of the prior allegations.

65.    Section 1981 states that "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws … as is enjoyed by white citizens." 42 U.S.C. §1981(a).

66.    Section 1981 lets private plaintiffs sue for equitable and legal relief, including compensatory and punitive damages. *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975).

67.    The Supreme Court has held that §1981 "protects the equal right of all persons … without respect to race." *Domino's Pizza, Inc v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up); *accord McDonald*, 427 U.S. at 295 (§1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race.").

68.    PayPal violated §1981 by discriminating against Asian Americans in its investment program.

69.    PayPal's program implicates the "making … of contracts," which is an enumerated activity in §1981.

70.    The investment program is designed to lead to a contractual relationship between PayPal and investment funds.

71.    In exchange for PayPal's financial investment, the funds agree to "work collaboratively" with PayPal and have numerous legal obligations to PayPal. They also benefit from PayPal's commitment to, "in some cases, invest directly in businesses through PayPal Ventures, [PayPal's] venture capital arm." *PayPal Invests $50 Million in Black and Latinx-Led Venture Capital Funds, supra*.

72.    These investment contracts grant PayPal information rights, provide for regular financial reporting to PayPal, generate goodwill for PayPal among businesses who support such racially-exclusionary practices, and generate financial benefits—such as tax breaks or financial returns—for PayPal or its affiliates.

73.    PayPal's racial and ethnic discrimination against Asian Americans was intentional.

74.    PayPal has no valid defense for its use of race and ethnicity as factors in making investments, either asserted or theoretical. Nor could it survive strict scrutiny.

75.    And PayPal's conduct was recklessly and callously indifferent to Plaintiffs' "federally protected rights." *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001).

76.    Plaintiffs suffered immense damages as a result of PayPal's intentional discrimination.

## COUNT II
### Violation of Title VI of the Civil Rights Act
### 42 U.S.C. §2000d

77.    Plaintiffs repeat and reallege each of the prior allegations.

78.    Title VI provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §2000d.

79.    Private plaintiffs can sue to enforce Title VI and obtain both injunctive relief and damages. *See Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001).

80.    Under Title VI, "the term 'program or activity' and the term 'program' mean all of the operations of … an entire corporation … if assistance is extended to such corporation … as a whole." 42 U.S.C. §2000d-4a(3)(A)(i).

81.    PayPal received federal financial assistance as a whole by, at a minimum, participating in the Paycheck Protection Program under the Coronavirus Aid, Relief, and Economic Security Act. *See* PayPal, *Federal and State Government Resources Related to COVID-19* (April 30, 2020), perma.cc/88E9-SFN8.

82.    All of PayPal's operations, including its racially discriminatory investment program, were subject to Title VI at all relevant times.

83.    PayPal's program violates Title VI because Asian-American fund managers are "excluded from participation in" and "subjected to discrimination under" the program "on the ground of race." 42 U.S.C. §2000d.

84.    Title VI applies the Equal Protection Clause's rules about race discrimination to funding recipients, including private entities. *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003).

85.    PayPal's use of race is subject to strict scrutiny, which it cannot satisfy.

86.    PayPal cannot show a compelling interest for excluding Asian Americans.

87.    "[A] generalized assertion that there has been past discrimination in an entire industry" cannot serve as a compelling interest that justifies present discrimination. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 498 (1989).

88.    Discrimination against Asian-American female fund managers—a group that faces the same funding disparities as their black and Latino counterparts—is not narrowly tailored. *The Untapped Potential of Women-led Funds* 6 (Oct. 2020), perma.cc/TGK8-ABFF.

89.    PayPal never "considered" and reasonably rejected "methods other than explicit racial classifications to achieve [its] stated goals." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 735 (2007).

90.    Nor can PayPal show "the most exact connection between justification and classification." *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 280 (1986).

91.    PayPal's racial and ethnic discrimination against Asian Americans was intentional.

92.    PayPal was recklessly and callously indifferent to Plaintiffs' "federally protected rights." *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001).

93.    Plaintiffs suffered immense damages as a result of PayPal's intentional discrimination.

## COUNT III
### Violation of New York State Human Rights Law
### N.Y. Exec. Law §296-a – Discriminatory Practices in Relation to Credit

94.    Plaintiffs repeat and reallege each of the prior allegations.

95.    New York law makes it an "unlawful discriminatory practice for any creditor or any officer, agent or employee thereof" to "discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race." N.Y. Exec. Law §296-a(1)(b).

96.    The term "creditor" means "any person or financial institution which does business in this state and which extends credit or arranges for the extension of credit by others." N.Y. Exec. Law §292(22). The term "creditor" is broad, and it includes

"credit card issuers," "licensed lenders," and "banks," along with other financial institutions. *Id.*

97.    PayPal is a creditor. The company issues credit cards. *E.g.*, *The PayPal Cashback Mastercard* (archived Jan. 2, 2025), perma.cc/U9RP-6YV3. It offers an array of "credit products," including a "digital credit line" and "a revolving line of credit." *What credit or debit products are offered by PayPal?* (archived Jan. 2, 2025), perma.cc/UCN5-FUKK; *PayPal credit options* (archived Jan. 2, 2025), perma.cc/46RJ-MG68. It extends credit—through its "Working Capital Business Loan" and "PayPal Business Loan"—to a wide range of businesses. *E.g.*, *Working capital* (archived Jan. 2, 2025), perma.cc/V7Y6-67YN; *Small Business Loans* (archived Jan. 2, 2025), perma.cc/7NN8-FUFG. And the company is even  licensed as a "Credit Services" provider in several States. *E.g.*, *Pennsylvania Dep't of Banking and Securities* (Feb. 1, 2024), perma.cc/QR6D-4LWG; *Vermont - Small Loan Company License* (Apr. 9, 2024), perma.cc/CJ37-2SFR.

98.    PayPal racially discriminated against Ms. Desai and Andav Capital in the "the fixing of the … terms or conditions of" and in "withholding" program funds, a "form of credit." N.Y. Exec. Law §296-a(1)(b).

99.    PayPal's racial and ethnic discrimination against Asian Americans was intentional.

100.    PayPal's conduct "conscious[ly] disregard[ed]" Plaintiffs' rights. *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017); *Tolbert*, 242 F.3d at 77.

101.    Plaintiffs suffered immense damages as a result of PayPal's intentional dis-

crimination.

### COUNT IV
### Violation of New York City Human Rights Law
### N.Y.C. Admin. Code §8-107(4) – Discrimination in Public Accommodations

102.    Plaintiffs repeat and reallege each of the prior allegations.

103.    New York City makes it an "unlawful discriminatory practice" for any

"provider of public accommodation" to "refuse, withhold from or deny the full and

equal and enjoyment, on equal terms and conditions, of any of the accommodations,

advantages, services, facilities, or privileges of the place or provider of public accom-

modation" "[b]ecause of any person's actual or perceived race." N.Y.C. Admin. Code

§8-107(4)(1)(a).

104.    The term "place or provider of public accommodation" "includes provid-

ers, whether licensed or unlicensed, of goods, services, facilities, accommodations, ad-

vantages or privileges of any kind." N.Y.C. Admin. Code §8-102. In New York, the

term "public accommodation" is "broad," and it includes any business that "provid[es]

conveniences and services to the public." *Gifford v. McCarthy*, 23 N.Y.S.3d 422, 427

(2016).

105.    PayPal is a place or provider of public accommodation. The company's

most popular service—an application that allows users to "send and request money,"

*Transfer Money Online* (archived Jan. 2, 2025), perma.cc/T8NW-B5MB—is open to prac-

tically everyone in the United States, *PayPal User Agreement* (Oct. 28, 2024),

perma.cc/6AQZ-N9MV. And many of PayPal's remaining products—like its loans, credit lines, and digital wallet—are all open to the public, too. The challenged program (absent its illegal racial and ethnic criteria) was as well.

106.    PayPal denied Ms. Desai and Andav Capital, because of race, the "full and equal enjoyment, on equal terms and conditions" of the opportunity to be evaluated for participation in its investment program. N.Y.C. Admin. Code §8-107(4)(1)(a).

107.    PayPal's racial and ethnic discrimination against Asian Americans was intentional.

108.    PayPal's conduct "conscious[ly] disregard[ed]" Plaintiffs' rights. *Chauca v. Abraham*, 30 N.Y.3d 325, 334 (2017); *Tolbert*, 242 F.3d at 77.

109.    Plaintiffs suffered immense damages as a result of PayPal's intentional discrimination.

## PRAYER FOR RELIEF

110.    Plaintiffs respectfully ask this Court to enter judgment in their favor and against Defendants and provide the following relief:

      A. A declaration that PayPal's race- and ethnicity-based investment program violates Section 1981, New York State law, and New York City law;

      B. An injunction barring PayPal from knowing or considering race or ethnicity in any way in its investment program;

      C. Compensatory damages;

      D. Punitive damages;

    E.  Nominal damages of \$1;

    F.  Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws; and

    G.  All other relief that Plaintiffs are entitled to.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

Dated: January 2, 2025               Respectfully submitted,

                                     */s/ Daniel M. Vitagliano*

                                       Thomas R. McCarthy**
                                       Cameron T. Norris**
                                       Daniel M. Vitagliano* (SDNY Bar No. 5856703)
                                       CONSOVOY MCCARTHY PLLC
                                       1600 Wilson Blvd., Ste. 700
                                       Arlington, VA 22209
                                       tom@consovoymccarthy.com
                                       cam@consovoymccarthy.com
                                       dvitagliano@consovoymccarthy.com

                                       Patrick N. Strawbridge**
                                       CONSOVOY MCCARTHY PLLC
                                       Ten Post Office Square
                                       8th Floor South PMB #706
                                       Boston, MA 02109
                                       patrick@consovoymccarthy.com

                                       *\*Supervised by principals of the firm admitted to practice in VA*
                                       *\*\*Pro hac vice applications forthcoming*