UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ANDAV CAPITAL, NISHA DESAI,

               Plaintiffs,

   vs.

PAYPAL HOLDINGS, INC., PAYPAL
VENTURES,

             Defendants.

                         Case No. 1:25-cv-00033-JMF

                         **Oral Argument Requested**

---------------------------------------------------------x

## **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND .................................................................................................................... 3

STANDARD OF REVIEW ..................................................................................................... 5

ARGUMENT ......................................................................................................................... 6

    I.    The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1)
        Because Plaintiffs Lack Standing To Challenge The Fund .................................. 6

    II.   The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)
        Because Plaintiffs' Claims Are Untimely ............................................................. 9

    III.  The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6)
        Because It Fails To Allege Facts Sufficient To State Plausible Claims
        Under Any Law ...................................................................................................... 13

    a.    Plaintiffs' Section 1981 Claim (Count I) Should Be Dismissed Because
        The Complaint Fails To Allege Any Contractual Relationship ........................... 13

    b.    The Complaint Fails To State a Title VI Claim (Count II) ................................. 14

    c.    Plaintiffs Cannot State an NYSHRL Claim (Count III) Because They Do
        Not Allege That PayPal Was Extending "Credit" ................................................ 18

    d.    Plaintiffs' NYCHRL Public Accommodation Claim (Count IV) Should Be
        Dismissed .............................................................................................................. 20

    IV.  The Complaint Should Be Dismissed For Improper "Group Pleading" ............. 22

CONCLUSION ....................................................................................................................... 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abadi v. Am. Airlines, Inc.*,
   2024 WL 1346437 (S.D.N.Y. 2024) ....................................................................17

*Al–Haideri v. Trustees of Columbia Univ.*,
   2007 WL 2187102 (S.D.N.Y. 2007) .....................................................................9

*Arch Ins. Co. v. Watermark Env't, Inc.*,
   534 F. Supp. 3d 602 (E.D. Va. 2021) ................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................6

*Awah v. Mansfield Kaseman Health Clinic*,
   2023 WL 3198116 (D. Md. May 2, 2023) ..........................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................6

*Binghamton GHS Emps. Fed. Credit Union v. State Div. of Hum. Rts.*,
   564 N.E.2d 1051 (N.Y. 1990) .............................................................................19

*Capitol Indem. Corp. v. Aulakh*,
   313 F.3d 200 (4th Cir. 2002) .............................................................................19

*Carney v. Adams*,
   592 U.S. 53 (2020)..................................................................................................7

*Collins v. Giving Back Fund*,
   2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019) .....................................................17

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   589 U.S. 327 (2020)..............................................................................................14

*Cook v. Budget Rent-A-Car Corp.*,
   502 F. Supp. 494 (S.D.N.Y. 1980) .....................................................................16

*Crawford v. US Sec. Assocs.*,
   2019 WL 8128253 (S.D.N.Y. Sept. 11, 2019)................................................9, 10

*Do No Harm v. Pfizer Inc.*,
   126 F.4th 109 (2d Cir. 2025) ............................................................................6, 7

*Doe v. Blum*,
   729 F.2d 186 (2d Cir. 1984)...................................................................................7

*Doe v. N.Y. Univ.*,
   2024 WL 2847368 (S.D.N.Y. May 30, 2024) .......................................................7

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Doe v. State Univ. of N.Y. Purchase Coll.*,
   617 F. Supp. 3d 195 (S.D.N.Y. 2022)........................................................................12

*Domino's Pizza v. McDonald*,
   546 U.S. 470 (2006)........................................................................................................13

*Farmer v. Cnty. of Westchester*,
   2021 WL 4199944 (S.D.N.Y. Sept. 15, 2021)........................................................23

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021)........................................................................................................21

*Garrett v. Tandy Corp.*,
   295 F.3d 94 (1st Cir. 2002) ........................................................................................14

*George v. Pro. Disposables Int'l, Inc.*,
   221 F. Supp. 3d 428 (S.D.N.Y. 2016)........................................................................9

*Germain v. M & T Bank Corp.*,
   111 F. Supp. 3d 506 (S.D.N.Y. 2015)........................................................................19

*Goldstein v. Pataki*,
   516 F.3d 50 (2d Cir. 2008)............................................................................................6

*Gonzalez v. Hasty*,
   802 F.3d 212 (2d Cir. 2015)........................................................................................12

*Hintermaier v. Hands of Hope Physical Therapy & Wellness*,
   2025 WL 384559 (S.D.N.Y. Feb. 4, 2025)........................................................15, 17

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)....................................................................................................7, 8

*Johnson v. Bd. of Educ. of Prince George's Cnty.*,
   2014 WL 3778603 (D. Md. July 29, 2014)................................................................16

*Joy v. Crime Victims Treatment Ctr.*,
   2025 WL 326521 (S.D.N.Y. Jan. 29, 2025) ...........................................................15

*Lee v. Sutton Garage, LLC*,
   2017 WL 11898266 (S.D.N.Y. Oct. 19, 2017) .........................................................9

*Lewis v. Clark*,
   2015 WL 3905315 (D. Conn. June 25, 2015)........................................................12

*Liboy v. Russ*,
   2023 WL 6386889 (S.D.N.Y. Sept. 29, 2023)........................................................12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lowery v. Texas A&M Univ.*,
2024 WL 4614714 (5th Cir. Oct. 30, 2024)............................................................9

*Lucius v. Fort Taco, LLC*,
2022 WL 335491 (S.D. Fla. Jan. 5, 2022) ...........................................................18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)...............................................................................................5

*Lukovsky v. City & Cnty. of San Francisco*,
535 F.3d 1044 (9th Cir. 2008)..............................................................................11

*Mack v. AAA Mid-Atl., Inc.*,
511 F. Supp. 2d 539 (E.D. Pa. 2007) ...................................................................13

*Madsen v. Boise State Univ.*,
976 F.2d 1219 (9th Cir. 1992) ...............................................................................6

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012)......................................................................................5

*Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*,
356 F. App'x 521 (2d Cir. 2009) ..........................................................................13

*Miller v. Bridgeport Police Dep't*,
2016 WL 3086402 (D. Conn. May 31, 2016), *aff'd*, 718 F. App'x 49 (2d Cir.
2017) .....................................................................................................................13

*Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*,
531 F. Supp. 3d 673 (S.D.N.Y. 2021)...................................................................22

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972).............................................................................................6, 7

*Morris v. Off. Max, Inc.*,
89 F.3d 411 (7th Cir. 1996) ............................................................................13, 14

*Morse v. Univ. of Vermont*,
973 F.2d 122 (2d Cir. 1992)................................................................................9, 10

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)..............................................................................................12

*New Hope Fam. Servs., Inc. v. James*,
2022 WL 4494277 (N.D.N.Y. Sept. 28, 2022) .....................................................21

*Ortiz v. Consol. Edison Co. of New York, Inc.*,
2024 WL 3086161 (S.D.N.Y. June 7, 2024), *R&R adopted*, 2024 WL
3105686 (S.D.N.Y. June 24, 2024)........................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Patterson v. Cnty. of Oneida*,
    375 F.3d 206 (2d Cir. 2004) .................................................................................9

*Pierre v. JC Penney Co.*,
    2006 WL 407553 (E.D.N.Y. Feb. 21, 2006).........................................................13

*Plusgrade L.P. v. Endava Inc.*,
    2023 WL 2402879 (S.D.N.Y. Mar. 8, 2023) ........................................................22

*Romualdo v. Guru Krupa 104 Corp.*,
    2023 WL 6167614 (E.D.N.Y. Sept. 1, 2023) .......................................................23

*Sattler v. City of New York Commission on Human Rights*,
    554 N.Y.S.2d 763 (Sup. Ct. 1990), *aff'd*, 580 N.Y.S.2d 35 (1992)..................21, 22

*Scott v. Cayuga Cnty. Civ. Serv. Comm'n*,
    2025 WL 472681 (N.D.N.Y. Feb. 12, 2025) .....................................................9, 10

*Scott v. Nat'l Ass'n for Stock Car Racing, Inc.*,
    2008 WL 217049 (S.D.N.Y. Jan. 17, 2008) .........................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).................................................................................................6

*Springfield Hosp., Inc. v. Guzman*,
    28 F.4th 403 (2d Cir. 2022) ...............................................................................15, 16

*United States v. City of New York*,
    631 F. Supp. 2d 419 (S.D.N.Y. 2009).................................................................10, 11

*Welch v. United Network for Organ Sharing*,
    2025 WL 546369 (M.D. Tenn. Feb. 19, 2025) ....................................................16

*Williams v. AT & T Wireless Servs., Inc.*,
    5 F. Supp. 2d 1142 (W.D. Wash. 1998)................................................................19

*Williams v. N.Y.C. Hous. Auth.*,
    61 A.D.3d 62 (1st Dep't 2009) .............................................................................21

*Zakrzewska v. The New Sch.*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009), *aff'd*, 620 F.3d 168 (2d Cir. 2010) ...........21

*Zerilli–Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003).....................................................................................13

**Statutes**

15 U.S.C. § 636(a)(36)(D) .............................................................................................16

## TABLE OF AUTHORITIES
(continued)

Page(s)

15 U.S.C. § 636(a)(36)(G)(i)(II) ...................................................................18

42 U.S.C. § 2000d...........................................................................................4

42 U.S.C. § 2000d-1 ......................................................................................16

42 U.S.C. § 2000d-4a(3)(A)(i) .....................................................................17

42 U.S.C. § 2000d-4a(3)(B) ..........................................................................18

N.Y. Exec. Law § 292(20) .............................................................................8

N.Y. Exec. Law § 292(22) ............................................................................18

N.Y. Exec. Law § 296-a(1)(b) ........................................................................2

N.Y. Executive Law § 296-a.........................................................................18

### Other Authorities

Black's Law Dictionary, 10th ed. .................................................................20

Masters of Scale, *Inside PayPal's $530M Plan to Close the Racial Wealth Gap -
    PayPal's Dan Schulman* (archived Dec. 21, 2024), tinyurl.com/mryxcb4a ..........................19

PayPal, *Federal and State Government Resources Related to COVID-19* (Apr. 30,
    2020), perma.cc/88E9-SFN8 ............................................................17

Press Release, *PayPal Announces $530 Million Commitment to Support Black
    Businesses, Strengthen Minority Communities and Fight Economic Inequality*
    (June 11, 2020), perma.cc/DE5G-QXFL ...........................................3, 7

### Regulations

N.Y.C. Admin. Code § 8-102........................................................................20

N.Y.C. Admin. Code § 8-107(4)(1)(a) .......................................................2, 20

## PRELIMINARY STATEMENT

Nearly five years ago, in June 2020, PayPal announced a "$500 million commitment" to create an "economic opportunity fund to support and strengthen Black and underrepresented minority businesses" and invited "[s]tartups and investment funds" to "express interest" by following a link to a Microsoft form. Compl. ¶¶ 17–19 (citing a press release at https://perma.cc/DE5G-QXFL). This case is brought by a venture capital firm, Andav Capital, and its Asian-American owner, Nisha Desai, who had conversations with some PayPal employees about participating in this historical program, but never formally applied for consideration and ultimately allowed those conversations to lapse in July 2020, without ever following up. *Id.* ¶¶ 30–42. Now, four years after PayPal's fund last made any new investments, Andav and Desai complain that PayPal engaged in unlawful discrimination by funding Black- and LatinX-owned venture capital funds, but not Andav. *See generally* Compl.

As a threshold matter, the Complaint should be dismissed on jurisdictional grounds because Plaintiffs do not have standing to pursue their claims. Plaintiffs never formally applied for PayPal's economic opportunity fund (the "Fund"). Instead, Desai claims she spoke with several PayPal employees about "Andav's fit" for the Fund, and, once those conversations ended, did not follow up further. Compl. ¶¶ 30–42. Plaintiffs do not allege that they followed the application process outlined in the funding announcement they cite. And while they suggest they were not "allowed" to do so "because of Ms. Desai's race," *id.* ¶ 42, their only factual support for this contention is a single alleged comment that "the program did, in fact, preference black and Hispanic-led firms," *id.* ¶ 39. Given PayPal's multiple public statements confirming the Fund was open to all "Black and underrepresented minority businesses," *id.* ¶ 17, this private comment by one individual could not reasonably have led Plaintiffs to the conclusion that formally applying

1

would have been futile. Plaintiffs' failure to apply for the program they claim unlawfully discriminated against them is thus fatal to their claims.

Even if Plaintiffs had standing to bring this lawsuit, they filed it too late. The statute of limitations for each of their claims requires filing suit within three years of when Plaintiffs knew or should have known of the alleged discriminatory harm. Plaintiffs knew of the alleged preferences they complain about by October 28, 2020 at the latest. On that date, PayPal announced it was investing in eight early-stage, Black- and LatinX-led venture capital funds—but not Andav, which Plaintiffs contend made the alleged discrimination "unmistakable." Compl. ¶¶ 43–46. But Plaintiffs did not sue until more than three years later. Plaintiffs' claims thus are time-barred, and the Complaint should be dismissed in its entirety on that basis.

In addition to these procedural deficiencies, Plaintiffs' Complaint fails to state a claim on the merits. Their claim under Section 1981 falls short because Plaintiffs do not sufficiently allege that they applied to the Fund or that they suffered damages because of PayPal's purported discrimination. Plaintiffs' appeal to Title VI of the Civil Rights Act of 1964 likewise flounders because they make only conclusory assertions that PayPal is a recipient of federal financial assistance to which that law applies. And Plaintiffs' claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") fail because venture capital funding is neither a "form of credit," N.Y. Exec. Law § 296-a(1)(b), nor a "public accommodation," N.Y.C. Admin. Code § 8-107(4)(1)(a), as required to pursue discrimination claims under those statutes.

For these reasons, and as discussed in more detail below, Plaintiffs' Complaint should be dismissed in its entirety, with prejudice.

**BACKGROUND**[1]

Plaintiff Andav Capital is a venture capital firm founded "to specifically support underrepresented founders and undervalued companies, the vast majority of whom were operated by women, minorities, or other often overlooked groups." Compl. ¶ 29. Plaintiff Nisha Desai is Andav's Asian-American founder and CEO. *Id.* ¶¶ 10–11. Plaintiffs allege that, on June 11, 2020, PayPal announced the Fund as a $500 million commitment dedicated to "strengthen[ing] Black and underrepresented minority businesses and communities over the long term" by "investing directly into Black and minority-led startups and minority-focused investment funds." *Id.* ¶¶ 17, 18. In Plaintiffs' telling, the Fund "invests in Black and LatinX-led emerging venture-capital funds," while funds "majority-owned by individuals of other races" are "not given equal consideration." *Id.* ¶ 4.

Plaintiffs allege that "together, the PayPal Defendants"—that is, Defendants PayPal Holdings, Inc. and PayPal Ventures—"ran" the Fund. *Id.* ¶ 14. But the press release Plaintiffs cite attributes the Fund announcement to PayPal Holdings, Inc. *Id.* ¶ 17 (citing Press Release, *PayPal Announces $530 Million Commitment to Support Black Businesses, Strengthen Minority Communities and Fight Economic Inequality* (June 11, 2020), perma.cc/DE5G-QXFL). PayPal Ventures is mentioned only briefly, and neither the Complaint nor the release that it incorporates clarifies PayPal Ventures' or PayPal Holdings' alleged respective roles in administering the Fund.[2]

Upon announcing the Fund on June 11, 2020, PayPal invited "startups and investment

---

[1] PayPal accepts as true the factual allegations in the Complaint solely for purposes of this Motion.

[2] As discussed *infra* at Part IV, Plaintiffs' impermissible use of group pleading makes it impossible for Defendants to identify and respond to any allegations made against them individually. For this reason, and without waiving their position that the Complaint does not meet the pleading requirements of Fed. R. Civ. P. 8, Defendants are constrained to follow Plaintiffs in referring to PayPal Holdings, Inc. and PayPal Ventures collectively as "PayPal."

funds . . . to express interest" by filling in an online form.  *Id.* ¶ 19.  Plaintiffs, however, did not complete the form.  Instead, "[w]ithin hours of PayPal's June 11, 2020 announcement," Desai allegedly contacted Patrick Dowd, a PayPal employee "who had publicly indicated his affiliation with the funding program."  *Id.* ¶ 30.  Dowd allegedly "directed" Desai to follow up with another unspecified PayPal employee, "which she did."  *Id.* ¶ 32.  Desai also contacted "Jay Ganatra, Director of PayPal Ventures" and "Mario Ruiz, Principal of PayPal Ventures" to discuss Andav and the Fund.  *Id.* ¶¶ 33, 35.

On July 24, 2020, Desai allegedly spoke with yet another PayPal employee, Usman Ahmed.  Compl. ¶ 38.  During that conversation, Ahmed purportedly "confirmed that the program did, in fact, preference [B]lack and Hispanic-led firms over other races and ethnicities, including Asian Americans."  *Id.* ¶ 39.  Nevertheless, Desai and Ahmed continued to correspond by email, and Ahmed allegedly told Desai two days after their meeting that he would "follow up with her." *Id.* ¶ 41.  The Complaint alleges that "[n]either Mr. Ahmed nor anyone else at PayPal ever followed up with Ms. Desai" after this July 26, 2020 email.  *See id.* ¶ 42.  The lack of communication was apparently a two-way street: Plaintiffs do not allege that Desai made any further attempt to communicate with anyone involved with the Fund.

Several months later, on October 28, 2020, PayPal announced eight funding recipients. Compl. ¶ 43.  Plaintiffs were not selected.  According to the Complaint, the recipients were chosen after being "evaluated" by PayPal "based on a mix of historical investment performance, diversity (race, gender, and geography), and alignment with PayPal's commitment to address the racial wealth gap."  *Id.* ¶ 53.  Allegedly, all the recipients included "at least one general partner who was [B]lack or Latino—an unmistakable racial pattern that reflected PayPal's stated race-based purpose."  *Id.* ¶ 46.  According to the Complaint, PayPal's selections made its "racial criteria"

"obvious." *Id.* ¶ 51.  In exchange for investments, the recipients supposedly incurred "numerous legal obligations to PayPal." *Id.* ¶ 71.  The Complaint, does not however, allege that the selected funds were required to repay PayPal, with interest or otherwise.

Plaintiffs allege that PayPal announced another round of venture capital fund awardees on May 26, 2021, all of whom again included "at least one [B]lack or Hispanic General partner." Compl. ¶¶ 49, 51.  While, according to Plaintiffs, PayPal "has not announced an end to the program," Plaintiffs tacitly concede that the Fund has not made any new investments since May 2021.  *Id.* ¶¶ 49, 58.

In their four-count Complaint, Plaintiffs allege that they were "denied equal consideration" for investments from the Fund because of Desai's race.  Compl. ¶ 5.  Plaintiffs assert that PayPal's alleged decision to limit Fund investments to Black- and LatinX-led investment funds violates Section 1981's prohibition of race discrimination in contracting (Count I), *id.* ¶¶ 64–76; Title VI's prohibition of racial discrimination in programs that receive federal financial assistance (Count II), *id.* ¶¶ 77–93; a provision of the NYSHRL prohibiting race discrimination by creditors in granting "credit" (Count III), *id.* ¶¶ 94–101; and the NYCHRL's prohibition against race discrimination by providers of public accommodation (Count IV), *id.* ¶¶ 102–109.  Defendants now move to dismiss the Complaint in its entirety.

## STANDARD OF REVIEW

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) where a plaintiff lacks Article III standing.  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). To establish the "irreducible constitutional minimum" of standing, a plaintiff must show: (1) "an injury in fact" to "a legally protected interest," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is "likely" that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where, as here, "a case is at

the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo,*

*Inc. v. Robins*, 578 U.S. 330, 337 (2016).

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it

"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.*  The complaint must contain more than "conclusory statements" or

"naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557)

(cleaned up).  "[A]t a bare minimum, the operative standard requires the plaintiff to provide the

grounds upon which his claim rests through factual allegations sufficient to raise a right to relief

above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (cleaned up).

## <u>ARGUMENT</u>

### I.    The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) Because Plaintiffs Lack Standing To Challenge The Fund

As a threshold matter, Plaintiffs lack standing to challenge the Fund's investments because

they never applied to receive funding.  Unless it would be a "futile gesture," "to establish standing

to challenge an allegedly discriminatory program, a plaintiff must apply to that program." *Do No*

*Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025).  This threshold requirement is necessary

for a plaintiff to show she has "suffered an injury in fact." *Id.*  It also "serves the salutary objective

of ensuring that only those individuals who cannot resolve their disputes without judicial

intervention wind up in court." *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1221 (9th Cir. 1992).

Thus, in *Moose Lodge No. 107 v. Irvis*, the Supreme Court held that an African American who

never actually applied for membership to the Moose Lodge lacked standing to challenge the club's

all-white membership requirement.  407 U.S. 163, 167–68 (1972).  Similarly, in *Doe v. Blum*, the Second Circuit found that plaintiffs who never applied for, and therefore were never denied, desired family planning benefits did not have standing to challenge how those benefits were administered.  729 F.2d 186, 189–90 (2d Cir. 1984); *see also Doe v. N.Y. Univ.*, 2024 WL 2847368, at *4–5 (S.D.N.Y. May 30, 2024) (student who never applied for membership on Law Review did not have standing to bring discrimination claims).

In this case, Plaintiffs cite a press release announcing the Fund that invited "[s]tartups and investment funds . . . to express interest… to the PayPal Ventures team" by filling in a linked form. Compl. ¶ 17 (citing Press Release, *PayPal Announces $530 Million Commitment to Support Black Businesses, Strengthen Minority Communities and Fight Economic Inequality* (June 11, 2020), perma.cc/DE5G-QXFL).  Plaintiffs do not allege that they followed this process, completed all the necessary steps to apply for funding, or submitted all required information.  Instead, they allege Desai informally spoke with various PayPal contacts about a potential investment and that communications dropped off in July 2020.  *Id.* ¶¶ 30–42.  At that point, although Plaintiffs claim they "*would have* completed all necessary steps to obtain" funding, they admittedly never did so. *Id.* ¶ 42 (emphasis added).  That failure dooms Plaintiffs' claims:  Andav and Desai cannot show they were injured because they never applied to the Fund and, as a result, did not receive an investment.  *Doe*, 729 F.2d at 189–90; *Doe*, 2024 WL 2847368, at *4–5.

Plaintiffs also have not pled facts showing that applying would have been a "futile gesture." *Do No Harm*, 126 F.4th at 118.  This exception allows plaintiffs to establish standing by showing an application would have been an exercise in futility because the outcome was inevitable.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977); *Carney v. Adams*, 592 U.S. 53, 66 (2020) (reaffirming principle that "a plaintiff need not 'translat[e]' his or her 'desire for a job . . .

into a formal application'" if doing so would be a "futile gesture" (quoting *Teamsters*, 431 U.S. at 365–66)).  As the Supreme Court explained, "[i]f an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."  *Teamsters*, 431 U.S. at 365.

But futility has not been demonstrated here.  Instead, Plaintiffs claim that a single PayPal employee, of the five who collectively spent hours speaking with Desai, allegedly indicated that PayPal had a "*preference* [for] [B]lack and Hispanic-led firms over other races."  Compl. ¶ 39 (emphasis added).  Plaintiffs allege that this employee was "Head of Public Policy and Research for PayPal" and that he "has a J.D. and teaches at a law school," *id.* ¶ 37, but their Complaint notably lacks any allegations that he was in any way responsible for setting criteria for the Fund or had any role in selecting its recipients.  The employee was not identified in the release announcing the Fund, and Desai apparently "reached out to" him of her own initiative.  *Id.* Plaintiffs likewise do not claim that this PayPal employee or anyone else told Desai that Andav would not be considered if she applied.  Quite the opposite, the press release and other public statements announcing the Fund made clear it was open to all "Black and minority-owned" venture capital funds, which would have included Andav and Desai, and that PayPal shared Andav's mission of supporting underrepresented companies.  *Id.* ¶¶ 17–18.  That, presumably, is why Desai inquired about the opportunity and why numerous PayPal employees were receptive to her inquiries and devoted a significant amount of time speaking with her; public materials did not say she was excluded from consideration.

In these circumstances, Plaintiffs cannot show that following the application procedure for the Fund would have been a "futile gesture."  *Teamsters*, 431 U.S. at 365.  Their failure to

"submit[] an application to substantiate [their] interest" is "fatal," and Plaintiffs' claims should be dismissed for lack of standing. *Lowery v. Texas A&M Univ.*, 2024 WL 4614714, at *1 (5th Cir. Oct. 30, 2024) (white male who did not apply to university position subject to alleged hiring preferences for women and minority groups lacked standing because application would not have been futile).

## II.    The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because Plaintiffs' Claims Are Untimely

Even if Plaintiffs had standing to bring their claims, all of those claims must be dismissed for a straightforward, threshold reason: they are time-barred under the applicable statutes of limitations. Title VI, the NYSHRL, and the NYCHRL have three-year statutes of limitations. *See Al–Haideri v. Trustees of Columbia Univ.*, 2007 WL 2187102, at *2 (S.D.N.Y. 2007) (Title VI); *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016) (NYSHRL); *Lee v. Sutton Garage, LLC*, 2017 WL 11898266, at *2 (S.D.N.Y. Oct. 19, 2017) (NYCHRL). Section 1981 does not specify a statute of limitations, but New York courts have concluded that the applicable limitations period is three years. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (Section 1981). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992) (cleaned up); *see also Scott v. Cayuga Cnty. Civ. Serv. Comm'n*, 2025 WL 472681, at *7 (N.D.N.Y. Feb. 12, 2025) (conducting similar analysis under NYSHRL); *Crawford v. US Sec. Assocs.*, 2019 WL 8128253, at *7 (S.D.N.Y. Sept. 11, 2019) (similar standard under NYCHRL).

Plaintiffs allege that they were not selected for the Fund, on a purportedly discriminatory basis that was "unmistakable," Compl. ¶ 46, more than three years before they filed this suit. The Complaint alleges that, on June 11, 2020, PayPal "unveiled" the Fund, describing it as a "fund to

support and strengthen Black and underrepresented minority businesses" by "investing directly into Black and minority-led startups and minority-focused investment funds." Compl. ¶¶ 17–18 (emphasis omitted). "Within hours of PayPal's June 2020 announcement," Desai allegedly contacted a PayPal employee who had "publicly indicated his affiliation with the funding program," and she "explain[ed] Andav's fit for PayPal's program" to a different PayPal employee on June 11, 2020. *Id.* ¶¶ 30, 33. During a July 24, 2020 conversation with Desai, a third PayPal employee purportedly "acknowledged and confirmed that the program did, in fact, preference [B]lack and Hispanic-led firms over other races and ethnicities, including Asian Americans." *Id.* ¶¶ 38–39. Plaintiffs allege that this third employee claimed that he would follow up with Desai, but never did. *Id.* ¶¶ 41–42. On October 28, 2020, PayPal announced the Fund's first round of investments, "every single one of" which allegedly "included at least one general partner who was [B]lack or Latino," demonstrating "obvious" racial criteria and an "unmistakable racial pattern." *Id.* ¶¶ 43–44, 46, 51. Supposedly, PayPal's accompanying press release "emphasized the racial criteria it applied to its investments." *Id.* ¶ 43. Plaintiffs allege that they were "excluded . . . from competing for these funds" because of Desai's race. *Id.* ¶ 42.

All this makes clear that Plaintiffs' claims accrued, at the latest, on October 28, 2020, when they knew or had reason to know that they had been purportedly injured. *See Morse*, 973 F.2d at 125; *Scott*, 2025 WL 472681, at *7; *Crawford*, 2019 WL 8128253, at *7. As of October 28, 2020, PayPal had selected funding recipients other than Plaintiffs, its racial preferences were purportedly "unmistakable" and "obvious" to Plaintiffs, and it had been months since Desai learned that PayPal allegedly preferred Black- and Latinx-led funds and PayPal employees had stopped communicating with her. Compl. ¶¶ 41–46, 51. Plaintiffs knew or should have known that they had been injured as of that date. *See, e.g.*, *United States v. City of New York*, 631 F. Supp. 2d 419,

428 (S.D.N.Y. 2009) (plaintiffs' failure-to-hire claims accrued when they had reason to know they had not been selected for interviews); *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1047, 1051 (9th Cir. 2008) (Section 1981 claim accrued when job applicants who were never formally rejected "should have realized" they had not been selected).   Thus, the deadline for Plaintiffs to file suit was three years later, on October 28, 2023.   Plaintiffs did not file suit as of that date, so their claims are untimely.[3]

While Plaintiffs allege that PayPal announced a second round of funding recipients in May 2021 and "has not announced an end to the program," Compl. ¶¶ 49, 58, Plaintiffs do not allege that they made any further attempts to pursue funding after they were not selected in October 2020. Nor do they allege that they were still under consideration for Fund investments after that point. And even if they made these allegations, they would not extend the limitations period.   *Scott v. Nat'l Ass'n for Stock Car Racing, Inc.*, 2008 WL 217049, at *12 (S.D.N.Y. Jan. 17, 2008).   In *Scott*, for example, the court found that a job applicant's Section 1981 claim was time-barred where the plaintiff knew he had not received a job offer more than three years before he filed suit, even though he had allegedly engaged in a "repeated dialogue" with defendants "for the next five to six years" and received a more explicit rejection as part of those conversations.   The employer in that case argued, and the court agreed, that "Plaintiff can not [sic] toll the statute of limitations by . . . claiming he was waiting patiently for five to six years for [the employer] to give him any job."   *Id.* at *4, *12.   So too, here, Plaintiffs cannot revive their time-barred claims by contending they were waiting patiently for PayPal to change its mind when awarding subsequent rounds of funding.

---

[3]    Although Plaintiffs signed a tolling agreement with PayPal effective May 22, 2024, the agreement does not save their claims.   The agreement preserves Plaintiffs' rights to "assert and pursue [their] claims in litigation as if they had been filed on May 22, 2024."   Ex. B at 1.   By that date, Plaintiffs' claims had already been untimely for more than six months.

Although Second Circuit courts have sometimes allowed otherwise untimely claims to proceed where a plaintiff can demonstrate a "continuing violation," that exception also cannot save Plaintiffs' claims. The continuing violation doctrine permits a plaintiff to "bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022) (cleaned up). The doctrine applies only to claims "that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment"—traditionally, hostile work environment claims—and is "heavily disfavored." *Doe*, 617 F. Supp. 3d at 208–09; *see also Liboy v. Russ*, 2023 WL 6386889, at *7 (S.D.N.Y. Sept. 29, 2023) (similar). The continuing violation doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (cleaned up); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 115 (2002) (explaining that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," while hostile work environment claims may be subject to the continuing violation doctrine because they are "based on the cumulative effect of individual acts").

The Complaint challenges a discrete act: PayPal's alleged refusal in 2020 to consider Plaintiffs for funding based on Desai's race. *See, e.g.*, Compl. ¶¶ 41–43. This type of one-off, particularized decision is precisely the kind of "discrete unlawful act" that is outside the scope of the continuing violation doctrine. *See, e.g.*, *Lewis v. Clark*, 2015 WL 3905315, at *2 n.4 (D. Conn. June 25, 2015) (holding that plaintiff's claim accrued when he was banned from campus despite the ban continuing to be in effect at the time of the suit). Were it otherwise, the limitations period would be "forever manipulable" by Plaintiffs because they "could re-start the statute of limitations

at any time by printing up and submitting a new [request] for payment, regardless of [their] prior knowledge that [PayPal] would refuse to pay." *Miller v. Bridgeport Police Dep't*, 2016 WL 3086402, at *5 (D. Conn. May 31, 2016) (dismissing Section 1981 failure-to-contract claim), *aff'd*, 718 F. App'x 49 (2d Cir. 2017). Thus, all of Plaintiffs' claims should be dismissed as untimely.[4]

## III.    The Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) Because It Fails To Allege Facts Sufficient To State Plausible Claims Under Any Law

The Complaint also must be dismissed because it fails to state any viable claim under Section 1981, Title VI, the NYSHRL, or the NYCHRL.

### a.    Plaintiffs' Section 1981 Claim (Count I) Should Be Dismissed Because The Complaint Fails To Allege Any Contractual Relationship

Plaintiffs fail to state a Section 1981 claim for two reasons. First, as discussed above, Plaintiffs never applied to the Fund. *Supra* at Part I. "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship." *Domino's Pizza v. McDonald*, 546 U.S. 470, 476 (2006). This requires a successful plaintiff to "make a tangible attempt to contract" which is "thwarted by the defendant." *Mack v. AAA Mid-Atl., Inc.*, 511 F. Supp. 2d 539, 545 (E.D. Pa. 2007); *accord Pierre v. JC Penney Co.*, 2006 WL 407553, at *5 (E.D.N.Y. Feb. 21, 2006). Because Plaintiffs did not complete the steps necessary to apply for an investment from the Fund, *supra* at Part I, they have not alleged such an attempt. *See Morris v. Off. Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (rejecting Section 1981 claim brought by prospective customers who

---

[4]    To the extent Plaintiffs claim that the applicable statutes of limitations should be equitably tolled, the Court should reject that argument as well. Equitable tolling is generally only appropriate where (1) "the defendant has actively misled the plaintiff respecting the cause of action," (2) "the plaintiff has in some extraordinary way been prevented from asserting his rights," or (3) the plaintiff "has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, 356 F. App'x 521, 522 (2d Cir. 2009). A plaintiff seeking equitable tolling also must demonstrate that she "acted with reasonable diligence during the time period she seeks to have tolled." *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). Plaintiffs do not plead facts supporting any of these bases for equitable tolling.

claimed they "would have attempted to purchase" goods if the defendant had not reported them to the police); *Garrett v. Tandy Corp.*, 295 F.3d 94, 102 (1st Cir. 2002) (customer failed to state Section 1981 claim against merchant "for denying the right to a refund that the customer never pursued").

Second, Plaintiffs fail to plead any facts plausibly indicating that they can recover damages under Section 1981. As the Supreme Court has explained, a would-be Section 1981 plaintiff must allege at the pleading stage that "but for the defendant's unlawful conduct, its alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 331 (2020). Plaintiffs do not allege that Andav would in fact have received a Fund investment absent PayPal's supposed preference for Black- and LatinX-owned venture capital funds. *See* Compl. ¶ 42 (alleging only that Plaintiffs "would have completed" the necessary steps to obtain funding and "would have accepted" it if offered). Nor do Plaintiffs allege that Andav was equally or more likely to receive an investment from the Fund than any of the actual recipients. Indeed, the facts alleged in the Complaint cast doubt on any claim that Andav would have been selected: Plaintiffs concededly did not apply for a Fund investment, and the small handful of eventual recipients were selected only after being "evaluated" by PayPal "based on a mix of historical investment performance, diversity (race, gender, and geography), and alignment with PayPal's commitment to address the racial wealth gap." *See id.* ¶ 53; *supra* at 4. Because Plaintiffs fail to allege that they would have received a Fund investment "but for [PayPal's] unlawful conduct," they cannot state any Section 1981 damages claim. *Comcast*, 589 U.S. at 331.

**b. The Complaint Fails To State a Title VI Claim (Count II)**

Title VI prohibits discrimination based on race, color, or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiffs' Title VI claim fails because they fail adequately to allege either that PayPal received federal financial

14

assistance or that the financial assistance PayPal purportedly received subjected the Fund to Title VI's requirements.

*First*, Plaintiffs have not alleged facts sufficient to show that PayPal received federal funds, which "is a required element of every Title VI claim." *Hintermaier v. Hands of Hope Physical Therapy & Wellness*, 2025 WL 384559, at *4 (S.D.N.Y. Feb. 4, 2025) (cleaned up). To adequately plead that a defendant received federal financial assistance, a plaintiff must allege details such as "its specific source, or the nexus between the use of the funds and the alleged discriminatory practice." *Joy v. Crime Victims Treatment Ctr.*, 2025 WL 326521, at *7 (S.D.N.Y. Jan. 29, 2025) (cleaned up). "[M]erely alleging, without additional information, that an entity receives such funds therefore amounts to no more than a threadbare recital of an element of a cause of action," which is not sufficient to state a claim. *Id.* (cleaned up) (dismissing Title VI claim where plaintiff alleged without detail that defendant received federal funding).

The Complaint's sole factual allegation on this front is that PayPal "received federal financial assistance as a whole by, at a minimum, participating in the [PPP] under the Coronavirus Aid, Relief, and Economic Security Act." Compl. ¶ 81. The PPP authorized the Small Business Administration ("SBA") to "guarantee favorable and potentially forgivable loans to businesses negatively impacted by the pandemic." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 408 (2d Cir. 2022). "PPP loans are made through private lenders and participants sign promissory notes, subject to SBA guarantees." *Id.* at 423 (cleaned up). Under the PPP, small business loan recipients may "seek loan forgiveness if at least 60% of the loaned funds are used for specified expenses, such as payroll." *Id.* at 409.

The Complaint offers no details about how PayPal allegedly "participated" in the PPP. Plaintiffs do not explain, for example, whether PayPal allegedly received a PPP loan, made loans

to others, served as a platform to transmit payments, or something else.  Nor does the Complaint specify when PayPal supposedly received this federal funding—a critical omission given that federal funds "must be received during the relevant time period of the alleged discrimination for a [Title VI] cause of action to survive."  *Awah v. Mansfield Kaseman Health Clinic*, 2023 WL 3198116, at *5 (D. Md. May 2, 2023); *see also Johnson v. Bd. of Educ. of Prince George's Cnty.*, 2014 WL 3778603, at *1 (D. Md. July 29, 2014) (noting that the "participle 'receiving' contained in the statute suggests simultaneity" of federal funds and discrimination at issue); *Welch v. United Network for Organ Sharing*, 2025 WL 546369, at *19 (M.D. Tenn. Feb. 19, 2025) (rejecting Title VI claim based on events after defendant's PPP loan was forgiven by federal government).

Even if Plaintiffs *had* supplied these basic facts, they still could not state a Title VI claim. Plaintiffs do not allege that PayPal would have been eligible to receive a PPP loan, which were generally available only to small businesses.  *See* 15 U.S.C. § 636(a)(36)(D).  If PayPal extended loans to small businesses guaranteed by the SBA through the PPP, those guarantees would not extend Title VI coverage to PayPal because the statute excludes "contract[s] of insurance or guaranty."  42 U.S.C. § 2000d-1; *see also Guzman*, 28 F.4th at 423 (holding in the bankruptcy context that the PPP "is a loan guaranty program, not a grant program").  And to the extent PayPal allegedly received payments from the federal government for services rendered in facilitating loans to other entities, Plaintiffs cannot state a claim because market-rate contracts with the government do not constitute "financial assistance."  *Cook v. Budget Rent-A-Car Corp.*, 502 F. Supp. 494, 501 (S.D.N.Y. 1980).

What is more, the facts that *are* included in the Complaint suggest that PayPal received *no* federal financial assistance.  The webpage Plaintiffs cite in Paragraph 81 of the Complaint states that "PayPal is now participating in the Paycheck Protection Program component of the Act *to help*

16

*make small business loans available to approved borrowers* impacted by the COVID-19 pandemic." *See* PayPal, *Federal and State Government Resources Related to COVID-19* (Apr. 30, 2020), perma.cc/88E9-SFN8 (emphasis added). The webpage also states that the PPP is "not offered or endorsed by PayPal" and that the lender for PPP loans is "WebBank"—not PayPal. *Id.* In other words, any "participation" in the program by PayPal was limited to "help[ing] make available" small business loans issued by WebBank to other borrowers. Thus, Plaintiffs' Title VI claim must be dismissed because they fail to allege the "required element" that PayPal received federal funding. *Hintermaier*, 2025 WL 384559, at *4.

*Second*, even if the Complaint somehow alleged that PayPal received federal money through the PPP, Plaintiffs fail to allege that this money subjected the Fund to Title VI. Plaintiffs do not plead that the Fund itself was assisted by the PPP; instead, they claim the Fund must comply with Title VI because, by participating in the PPP, PayPal allegedly "received federal financial assistance as a whole." Compl. ¶ 81; *id.* ¶ 80 ("An entire corporation" is covered by Title VI only where federal "assistance is extended to such corporation . . . as a whole." (quoting 42 U.S.C. § 2000d-4a(3)(A)(i))). In interpreting nearly identical language in the Rehabilitation Act, courts have held that the phrase "as a whole" means "that federal assistance is extended to the organization other than for some specific purpose—put differently, that the recipient of federal funds received those funds in general assistance." *Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *33 (S.D.N.Y. 2024); *see also Collins v. Giving Back Fund*, 2019 WL 3564578, at *11 (S.D.N.Y. Aug. 6, 2019) ("[F]ederal financial assistance that is earmarked for one or more facilities of a private corporation or other private entity when it is extended is not assistance to the entity 'as a whole.'"). When federal funds are not extended to an entity "as a whole," Title VI applies only to "the entire plant or other comparable, geographically separate facility to which Federal financial

assistance is extended." 42 U.S.C. § 2000d-4a(3)(B). The Complaint fails to allege any facts indicating that PayPal's unspecified "participation" in the PPP resulted in funding being extended to PayPal Holdings, Inc. or PayPal Ventures "as a whole." To the contrary, PPP funds were directed at specific expenses tied to the short-term economic challenges of COVID. *Lucius v. Fort Taco, LLC*, 2022 WL 335491, at *4–5 (S.D. Fla. Jan. 5, 2022) (PPP loans do not satisfy the "as a whole" requirement under Rehabilitation Act because they were dedicated to "specified purposes, namely to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments"); *see also* 15 U.S.C. § 636(a)(36)(G)(i)(II) (requiring PPP recipients to certify "that funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments"). Plaintiffs' Title VI claim should be dismissed for this reason as well.

### c. Plaintiffs Cannot State an NYSHRL Claim (Count III) Because They Do Not Allege That PayPal Was Extending "Credit"

Plaintiffs fail to state a claim under the NYSHRL because the provision under which they sue, N.Y. Executive Law § 296-a, applies only when the defendant extends "credit," yet Plaintiffs fail to allege that PayPal provided credit to any entity through the Fund. The NYSHRL makes it unlawful for any "creditor" to "discriminate in the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit, on the basis of race." N.Y. Exec. Law § 296-(a)(1)(b). The statute defines "creditor" as "any person or financial institution which does business in this state and which extends credit or arranges for the extension of credit by others." N.Y. Exec. Law § 292(22). In turn, "credit" is "the right conferred upon a person by a creditor *to incur debt and defer its payment*, whether or not any interest or finance charge is made for the exercise of this right." N.Y. Exec. Law § 292(20) (emphasis added).

In determining whether a transaction falls under the statute's purview, courts evaluate whether it "implicate[s] a term or condition of credit within the meaning of the Human Rights Law." *Binghamton GHS Emps. Fed. Credit Union v. State Div. of Hum. Rts.*, 564 N.E.2d 1051, 1053 (N.Y. 1990) (cleaned up).  As courts have explained in interpreting the parallel federal Equal Credit Opportunity Act ("ECOA"), the "essence of the credit relationship" is "one that provides a right to defer payment on a debt or other obligation." *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203 (4th Cir. 2002) (cleaned up); *see also Arch Ins. Co. v. Watermark Env't, Inc.*, 534 F. Supp. 3d 602, 606 (E.D. Va. 2021) (for ECOA to apply, the contractual arrangement between the parties must involve one party "grant[ing] a right" to the other "to defer payment of [a] debt or other obligation"); *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 525 (S.D.N.Y. 2015) (Section 296-a is the "state counterpart" to the ECOA, and discrimination claims under the statutes are considered together).  Put simply, "a transaction does not involve credit" unless "there is a deferral of payment." *Williams v. AT & T Wireless Servs.*, *Inc.*, 5 F. Supp. 2d 1142, 1145 (W.D. Wash. 1998) (cleaned up).

Plaintiffs fail to allege that PayPal extends "credit" through the Fund within the meaning of the NYSHRL.  The Complaint repeatedly alleges that PayPal "invests" in selected venture capital funds—not that it issues loans or debt instruments.  *See, e.g.*, Compl. ¶ 4 ("PayPal . . . runs a multi-million-dollar investment program"); *id.* ¶ 7 ("For some of the funds, PayPal was the first major or institutional investor") (emphasis omitted).  Indeed, sources Plaintiffs cite in their Complaint expressly confirm that the Fund's investments are not "loan money."  *See* Masters of Scale, *Inside PayPal's $530M Plan to Close the Racial Wealth Gap - PayPal's Dan Schulman* (archived Dec. 21, 2024), tinyurl.com/mryxcb4a.  Just as tellingly, Plaintiffs' threadbare allegation

that Fund recipients "incur numerous legal obligations to PayPal" conspicuously omits any mention of an obligation to repay PayPal's investment.  *See* Compl. ¶¶ 71–72; *supra* at 5.

While Plaintiffs attempt to argue that PayPal is a "creditor" in other contexts, Compl. ¶ 97, that misses the point.  It is irrelevant whether PayPal issues "credit cards," "credit products, including a digital credit line and a revolving line of credit," or "Working Capital Business" or "PayPal Business" loans, *id.*, because Plaintiffs do not allege that these purported activities have any connection to the Fund or its investments.  Even if PayPal in fact acts as a creditor in these circumstances, it can only be liable under the NYSHRL if it discriminates "*in* the granting, withholding, extending or renewing, or in the fixing of the rates, terms or conditions of, any form of credit."  N.Y. Exec. Law § 296-(a)(1)(b) (emphasis added).  Because Plaintiffs plainly fail to allege that Fund investments are a "form of credit," Count III must be dismissed.

### d. Plaintiffs' NYCHRL Public Accommodation Claim (Count IV) Should Be Dismissed

Plaintiffs cannot state an NYCHRL claim because they fail to allege that, in making investments through the Fund, PayPal acts as a "provider of public accommodation."  The NYCHRL makes it unlawful for any "provider of public accommodation" to "refuse, withhold from or deny the full and equal and enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation" because "of any person's actual or perceived race."  N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).  In turn, "provider of public accommodation" is defined to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind."  *Id.* § 8-102.  The statute does not expressly define the word "public," but that term is commonly understood to mean "[o]pen or available for all to use, share, or enjoy."  Black's Law Dictionary, 10th ed.  While the NYCHRL has a "uniquely broad and remedial

20

purpose," *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009), courts have ruled that the "starting point of analysis" for interpreting the statute "must be the plain meaning of the statutory language, since it is the statutory text which is the clearest indicator of legislative intent." *Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 435 (S.D.N.Y. 2009), *aff'd*, 620 F.3d 168 (2d Cir. 2010).

Plaintiffs' allegations make clear that PayPal is not a "provider of public accommodation" because the Fund is not "public" at all.  Plaintiffs do not allege that Fund investments were "open or available for all to use, share, or enjoy."  Indeed, the Complaint alleges the opposite: investments were only made in select venture capital funds after they were "evaluated" by PayPal "based on a mix of historical investment performance, diversity (race, gender, and geography), and alignment with PayPal's commitment to address the racial wealth gap."  Compl. ¶ 53.  This "customized and selective assessment" "bears little resemblance" to classic public accommodations like "staying in a hotel, eating at a restaurant, or riding a bus."  *Fulton v. City of Philadelphia*, 593 U.S. 522, 539 (2021) (defendant agency's foster care certification not a public accommodation under Philadelphia ordinance because it required a lengthy and stringent selection process); *see also New Hope Fam. Servs., Inc. v. James*, 2022 WL 4494277, at *9 (N.D.N.Y. Sept. 28, 2022) (similar under NYSHRL).

*Sattler v. City of New York Commission on Human Rights*, 554 N.Y.S.2d 763 (Sup. Ct. 1990), *aff'd*, 580 N.Y.S.2d 35 (1992), is instructive.  There, the court held that a dental office was not a place of "public accommodation" under the NYCHRL because the owner accepted new patients only by referral.  *Id.* at 768.  Because "a person [could not] simply walk into petitioner's office unannounced, off the street," the office was insufficiently "public" to be considered a public

accommodation.  *Id.*[5]  So too here.  Because treating PayPal as a "provider of public accommodation" would effectively read the word "public" out of the NYCHRL, Count IV must be dismissed.

## IV.    The Complaint Should Be Dismissed For Improper "Group Pleading"

Even if Plaintiffs could otherwise assert a viable federal or New York claim, their claims cannot proceed because the Complaint engages in impermissible "group pleading."  At "a minimum," a complaint must give a defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests."  *Plusgrade L.P. v. Endava Inc.*, 2023 WL 2402879, at *3 (S.D.N.Y. Mar. 8, 2023) (cleaned up).  "A complaint fails to give fair notice" when it engages in "group pleading" by lumping "all the defendants together in each claim" and provides "no factual basis to distinguish their conduct."  *Id.* (cleaned up); *Ortiz v. Consol. Edison Co. of New York, Inc.*, 2024 WL 3086161, at *8 (S.D.N.Y. June 7, 2024) ("Rule 8 is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it."), *R&R adopted*, 2024 WL 3105686 (S.D.N.Y. June 24, 2024); *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728–29 (S.D.N.Y. 2021) ("In prohibiting group pleading, courts acknowledge that the principal function of pleadings under the Federal Rules is to give the adverse parties fair notice of the claims asserted so as to enable them to answer and prepare for trial.").

Plaintiffs' claims are replete with references to "PayPal" as a monolithic entity, without any attempt to delineate the specific conduct attributable to each Defendant.  This reliance on collective references obscures the distinct roles and responsibilities of each Defendant, making it impossible to ascertain which entity allegedly engaged in the purported discriminatory conduct.

---

[5]    Although *Sattler* considered a previous version of the NYCHRL prior to its amendment in 1991, its logic in refusing to hold that a selectively available service is a public accommodation is consistent with the current version of the statute.

Plaintiffs bring claims against PayPal Holdings and PayPal Ventures but offer no specific facts about the conduct of either Defendant, alleging simply that "the PayPal defendants ran the racially discriminatory program that injured Plaintiffs."  Compl. ¶ 14.  The Complaint does not clarify which Defendant allegedly implemented or administered the Fund, referring to "PayPal"—which is never defined—throughout.  And while the Complaint references PayPal Ventures in a handful of places, it refers to PayPal Holdings only a single time and includes no allegations whatsoever about PayPal Holdings' specific conduct.  *See id.* ¶ 12.  Such vague and generalized allegations do not meet the pleading standards required under federal law.  *See, e.g.*, *Romualdo v. Guru Krupa 104 Corp.*, 2023 WL 6167614, at *8 (E.D.N.Y. Sept. 1, 2023) (complaint failed to state a claim where it alleged that "Defendants" employed the plaintiff); *Farmer v. Cnty. of Westchester*, 2021 WL 4199944, at *6–7 (S.D.N.Y. Sept. 15, 2021) (granting motion to dismiss pursuant to Rule 8 where "the vast majority of allegations relating to [defendant] are jointly alleged against most of the other Defendants without providing any factual basis to distinguish their conduct").

Because the Complaint fails to provide "fair notice" of the basis for Plaintiffs' claims against Defendants, it should be dismissed for impermissible group pleading.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice.

Dated: April 16, 2025                    Respectfully submitted,


By: */s/ Mylan L. Denerstein*
    Mylan L. Denerstein
    GIBSON, DUNN & CRUTCHER LLP
    200 Park Avenue
    New York, NY 10166-0193
    (212) 351-3850
    mdenerstein@gibsondunn.com

    Jason C. Schwartz (*pro hac vice pending*)
    GIBSON, DUNN & CRUTCHER LLP
    1700 M Street N.W.
    Washington, D.C. 20036-4504
    (202) 955-8242
    jschwartz@gibsondunn.com

    Gregg J. Costa (*pro hac vice pending*)
    GIBSON, DUNN & CRUTCHER LLP
    811 Main Street, Suite 300
    Houston, TX 77002-6117
    (346) 718-6649
    gcosta@gibsondunn.com

    *Attorneys for Defendants PayPal Holdings, Inc.*
    *and PayPal Ventures*

## <u>CERTIFICATION OF COUNSEL</u>

I hereby state, pursuant to Southern District of New York Local Civil Rule 7.1(c), that the foregoing brief was prepared using Microsoft Word.  According to Microsoft Word's word count feature, the total number of words in the foregoing brief (excluding the caption, table of contents, table of authorities, signature block, and this certification) is 7,604.

Dated: April 16, 2025

*/s/ Mylan L. Denerstein*
Mylan L. Denerstein
