UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

ANDAV CAPITAL, NISHA DESAI,

               Plaintiffs,

     vs.

PAYPAL HOLDINGS, INC., PAYPAL
VENTURES,

             Defendants.

----------------------------------------------------------x

Case No. 1:25-cv-00033-JMF

**Oral Argument Requested**

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR <u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .......................................................................................................... 2

STANDARD OF REVIEW ............................................................................................ 5

ARGUMENT ............................................................................................................... 6

    I.      Plaintiffs' Claims Under Section 1981 and New York Law Should Be Dismissed Because They Are Untimely (Counts I, III, and IV) ........................... 6

    II.     Plaintiffs' Credit Discrimination Claims Should Be Dismissed Because They Allegedly Applied For Funding, Not Credit (Counts II and III) ................ 11

          a.      Plaintiffs Fail To Allege That They Applied For Credit ........................ 12

          b.      Plaintiffs Fail To Allege That They Were Qualified To Receive Credit .................................................................................................... 16

    III.    Plaintiffs' NYCHRL Claim Should Be Dismissed Because The Fund Investments Were Not Public Accommodations (Count IV) ............................ 17

CONCLUSION .......................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrews v. Freemantlemedia N.A., Inc.*,
2014 WL 6686590 (S.D.N.Y. Nov. 20, 2014)..........................................................................9

*Arch Ins. Co. v. Watermark Env't, Inc.*,
534 F. Supp. 3d 602 (E.D. Va. 2021) ...............................................................................12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................5

*Bojorquez v. Wells Fargo Bank, NA*,
2014 WL 1883674 (D. Or. May 8, 2014) ...............................................................................16

*Capitol Indem. Corp. v. Aulakh*,
313 F.3d 200 (4th Cir. 2002) ..................................................................................................12

*Crawford v. US Sec. Assocs.*,
2019 WL 8128253 (S.D.N.Y. Sept. 11, 2019).....................................................................6, 7

*Doe v. State Univ. of N.Y. Purchase Coll.*,
617 F. Supp. 3d 195 (S.D.N.Y. 2022).....................................................................................10

*Dombrowski v. City of New York*,
116 F.3d 465 (2d Cir. 1997).......................................................................................................6

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021)................................................................................................................18

*George v. Pro. Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016).......................................................................................6

*Germain v. M & T Bank Corp.*,
111 F. Supp. 3d 506 (S.D.N.Y. 2015)......................................................................11, 15, 16

*Gmurzynska v. Hutton*,
257 F. Supp. 2d 621 (S.D.N.Y. 2003).....................................................................................15

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015).....................................................................................................10

*Gorham-DiMaggio v. Countrywide Home Loans, Inc.*,
592 F. Supp. 2d 283 (N.D.N.Y. 2008).....................................................................................14

*Johnson v. Railway Express Agency, Inc.*,
421 U.S. 454 (1975)...................................................................................................................6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Kwiatkowski v. Polish & Slavic Fed. Credit Union*,
   2011 WL 6225390 (E.D.N.Y. Dec. 12, 2011) .........................................................................14

*Lee v. Sutton Garage, LLC*,
   2017 WL 11898266 (S.D.N.Y. Oct. 19, 2017) ..........................................................................6

*Lewis v. Clark*,
   2015 WL 3905315 (D. Conn. June 25, 2015) .........................................................................10

*Liboy v. Russ*,
   2023 WL 6386889 (S.D.N.Y. Sept. 29, 2023) ........................................................................10

*Lukovsky v. City & Cnty. of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008) .................................................................................................7

*Lumpkin v. Am. Express Co.*,
   2025 WL 1111222 (M.D. Fla. Apr. 15, 2025) ........................................................................16

*Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*,
   356 F. App'x 521 (2d Cir. 2009) ............................................................................................11

*Miller v. Bridgeport Police Dep't*,
   2016 WL 3086402 (D. Conn. May 31, 2016) .........................................................................11

*Morse v. Univ. of Vermont*,
   973 F.2d 122 (2d Cir. 1992) .....................................................................................................7

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002) ...............................................................................................................10

*New Hope Fam. Servs., Inc. v. James*,
   2022 WL 4494277 (N.D.N.Y. Sept. 28, 2022) .......................................................................18

*Patterson v. Cnty. of Oneida*,
   375 F.3d 206 (2d Cir. 2004) .....................................................................................................6

*Powell v. American General Financial, Inc.*,
   310 F. Supp. 2d 481 (N.D.N.Y. 2004) ...................................................................................16

*Presidential Bank, FSB v. 1733 27th Street SE LLC*,
   271 F. Supp. 3d 163 (D.D.C. 2017) ..................................................................................14, 15

*Pyskaty v. Wide World of Cars, LLC*,
   856 F.3d 216 (2d Cir. 2017) .................................................................................................5, 12

*Sattler v. City of New York Commission on Human Rights*,
   554 N.Y.S.2d 763 (Sup. Ct. 1990) .........................................................................................18

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Scott v. Cayuga Cnty. Civ. Serv. Comm'n,*
2025 WL 472681 (N.D.N.Y. Feb. 12, 2025) .......................................................6, 7

*Scott v. Nat'l Ass'n for Stock Car Racing, Inc.,*
2008 WL 217049 (S.D.N.Y. Jan. 17, 2008) ............................................................8

*Shaumyan v. Sidetex Co., Inc.,*
900 F.2d 16 (2d Cir. 1990)....................................................................................12

*Tsereteli v. Residential Asset Securitization Trust,*
697 F.Supp.2d 546 (S.D.N.Y. 2010)......................................................................15

*United States v. City of New York,*
631 F. Supp. 2d 419 (S.D.N.Y. 2009)......................................................................7

*Washington v. Cty. of Rockland,*
373 F.3d 310 (2d Cir. 2004)....................................................................................9

*Williams v. N.Y.C. Hous. Auth.,*
61 A.D.3d 62 (1st Dep't 2009) ..............................................................................17

*Yamashita v. Scholastic Inc.,*
936 F.3d 98 (2d Cir. 2019).......................................................................................5

*Zakrzewska v. The New Sch.,*
598 F. Supp. 2d 426 (S.D.N.Y. 2009)....................................................................17

*Zerilli–Edelglass v. N.Y.C. Transit Auth.,*
333 F.3d 74 (2d Cir. 2003)....................................................................................11

**Statutes**

15 U.S.C. § 1691 ................................................................................................1, 11, 12

N.Y. Exec. Law § 292(20) ...........................................................................................12

N.Y. Executive Law § 296-a.........................................................................................11

N.Y.C. Admin. Code § 8-102 .......................................................................................17

N.Y.C. Admin. Code § 8-107 ...................................................................................2, 17

**Other Authorities**

U.S. Securities and Exchange Commission, *Starting a Private Fund*,
https://www.sec.gov/resources-small-businesses/capital-raising-building-
blocks/starting-private-fund (last accessed May 28, 2025) ...................................12

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Treatises**

Black's Law Dictionary, 10th ed ....................................................................................17

## PRELIMINARY STATEMENT

The venture capital firm bringing this suit sat on its claim for years after learning of the alleged racial preferences it now complains about.  The target of its late claim is a one-time economic opportunity fund ("the Fund") PayPal announced in June 2020 to "support and strengthen Black and underrepresented minority businesses."  Am. Compl. ¶¶ 19–20.  The venture capital firm, Andav Capital, and its owner, Nisha Desai, allegedly sought an investment from the Fund in 2020, but did not receive it.  *Id.* ¶¶ 11–12, 32–46.  Now, four years after the Fund last made any new investments, Plaintiffs complain that PayPal engaged in unlawful discrimination because the funds that ultimately received investments had Black and LatinX owners, and Desai is Asian American.  *See generally* Am. Compl.

All but one of Plaintiffs' claims should be dismissed because they filed them too late.  The statute of limitations for Plaintiffs' claims under Section 1981 and New York law require filing suit within three years of when Plaintiffs knew or should have known of the alleged discriminatory harm.  Plaintiffs knew of the alleged preferences they complain about by October 28, 2020, at the latest.  On that date, PayPal announced it was investing in eight early-stage, Black- and LatinX-led venture capital funds—but not Andav, which Plaintiffs contend made the alleged discrimination "unmistakable."  Am. Compl. ¶¶ 48–50.  Because Plaintiffs did not sue until more than three years later, their claims are time-barred.

In an attempt to salvage their untimely suit, Plaintiffs now add a claim under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*, which has a five-year statute of limitations.  But the ECOA is inapplicable to the Fund investments, and, even if it was applicable, Plaintiffs have not sufficiently alleged a claim under that statute.  Plaintiffs applied to PayPal for "investments" and "funding"—not credit that Plaintiffs would ultimately have to pay back.  *See* Am. Compl. ¶¶ 22, 66.  And that is not the only fatal defect with the ECOA claim.  Plaintiffs have

not alleged that they were creditworthy or otherwise qualified to receive any unspecified loans that Plaintiffs now speculate existed. Plaintiffs want to avail themselves of a longer statute of limitations, but their claim under the ECOA—as well as a similar credit discrimination claim under the New York State Human Rights Law ("NYSHRL")—is fundamentally flawed.

Finally, Plaintiffs fail to state a claim under the New York City Human Rights Law ("NYCHRL") because venture capital funding is not a "public accommodation," N.Y.C. Admin. Code § 8-107(4)(a)(1)(a), as required to pursue a discrimination claim under that statute. PayPal made investments in only 19 venture capital funds, following a highly selective review process. The NYCHRL's prohibition on public accommodations discrimination does not apply to programs like the Fund, which are not open to the public in the first place.

For these reasons, and as discussed in more detail below, Plaintiffs' Amended Complaint should be dismissed with prejudice.

## BACKGROUND[1]

Plaintiff Andav Capital is a venture capital firm. Am. Compl. ¶¶ 11–12. Plaintiff Nisha Desai is Andav's Asian American founder and CEO. *Id.*

On June 11, 2020, PayPal announced the Fund as a $500 million commitment dedicated to "strengthen[ing] Black and underrepresented minority businesses and communities over the long term" by "investing directly into Black and minority-led startups and minority-focused investment funds." Am. Compl. ¶ 20. In Plaintiffs' telling, the Fund "invests in and supports Black and LatinX-led emerging venture-capital funds," while funds "majority-owned by individuals of other

---

[1] PayPal accepts as true the factual allegations in the Amended Complaint solely for purposes of this Motion.

races" are "not given equal consideration."  *Id.* ¶ 4.

According to Plaintiffs, "Ms. Desai and Andav Capital immediately sought funding from" PayPal's "investment program."  Am. Compl. ¶ 22.  "Within hours of PayPal's June 2020 announcement," Desai allegedly contacted Patrick Dowd, a PayPal employee "who had publicly indicated his affiliation with the funding program," to discuss "inclusion in PayPal's funding program."  *Id.* ¶¶ 32–33.  Dowd allegedly "directed" Desai to follow up with another unspecified PayPal employee, "which she did."  *Id.* ¶ 35.  Desai also contacted "Jay Ganatra, Director of PayPal Ventures" and "Mario Ruiz, Principal of PayPal Ventures" and allegedly had "several more exchanges . . .  regarding PayPal's funding program and Andav."  *Id.* ¶¶ 36–38.

On July 24, 2020, Desai allegedly spoke with yet another PayPal employee, Usman Ahmed, about PayPal's "investment program."  Am. Compl. ¶¶ 41, 44.  During that conversation, Ahmed purportedly "confirmed that the program did, in fact, preference [B]lack and Hispanic-led firms over other races and ethnicities, including Asian Americans."  *Id.* ¶ 42.  Nevertheless, Desai and Ahmed continued to correspond by email, and Ahmed allegedly told Desai two days after their meeting that he would "follow up with her."  *Id.* ¶ 45.  The Amended Complaint alleges that "[n]either Mr. Ahmed nor anyone else at PayPal ever followed up with Ms. Desai" after this July 26, 2020 email.  *Id.* ¶ 46.  The lack of communication was apparently a two-way street: Plaintiffs do not allege that Desai made any attempt to communicate with anyone involved with the Fund after July 2020.

Several months later, on October 28, 2020, PayPal announced eight funding recipients.  Am. Compl. ¶ 47.  Plaintiffs were not selected.  According to the Amended Complaint, the recipients were chosen after being "evaluated" by PayPal "based on a mix of historical investment performance, diversity (race, gender, and geography), and alignment with PayPal's commitment

to address the racial wealth gap." *Id.* ¶ 59.  Allegedly, all the recipients included "at least one general partner who was [B]lack or Latino—an unmistakable racial pattern that reflected PayPal's stated race-based purpose." *Id.* ¶ 50.

In exchange for investments, the recipients supposedly incurred "numerous legal obligations to PayPal."  Am. Compl. ¶ 104.  Plaintiffs further claim that PayPal gave Fund recipients "business support," allegedly including direct investments into their portfolio companies and "the provision of credit and access to other beneficial loan opportunities." *Id.* ¶¶ 5, 79.  Despite allegedly engaging in hours of conversation with five different PayPal employees, *id.* ¶¶ 32–46, Plaintiffs do not claim that they ever discussed any specific type of credit transaction with PayPal, much less that they applied for any loans or other debt that they would be required to pay back. They also do not specify what criteria PayPal may have applied to any "credit [or] loan opportunities" available to Fund recipients, *id.* ¶ 79, or allege that Plaintiffs would have been qualified to receive credit, even if available, from PayPal.

Plaintiffs allege that PayPal announced that they were "again award[ing] investment dollars to Black and Hispanic owned funds" on May 26, 2021, and that "[a]gain, PayPal's racial criteria were obvious."  Am. Compl. ¶¶ 55, 57.  Although Plaintiffs contend that PayPal "has not announced an end to the program," they tacitly concede that the Fund has not made any new investments since May 2021.  *Id.* ¶¶ 55, 67.

In their four-count Amended Complaint, Plaintiffs allege that they were "denied equal consideration" for investments from the Fund because of Desai's race.  Am. Compl. ¶ 5.  Plaintiffs now assert that PayPal's alleged decision to limit Fund investments to Black- and LatinX-led investment funds violates Section 1981's prohibition of race discrimination in contracting (Count I), *id.* ¶¶ 97–114; a provision of the NYSHRL prohibiting race discrimination by creditors in

granting "credit" (Count III), *id.* ¶¶ 124–132; and the NYCHRL's prohibition against race discrimination by providers of public accommodation (Count IV), *id.* ¶¶ 133–142. In response to Defendants' motion to dismiss on statute of limitations grounds, Plaintiffs' Amended Complaint now also alleges that PayPal has violated the ECOA (which has a five-year statute of limitations) because "upon information and belief, the structure of PayPal Ventures' investments in successful venture capital funds constituted (at least in part) a 'credit transaction'" (Count II). *Id.* ¶¶ 115–123.

Defendants now move to dismiss the Amended Complaint in its entirety.

## STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must contain more than "conclusory statements" or "naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557) (cleaned up). "Entirely speculative" allegations based on "information and belief" do not suffice. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017). "When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the court must grant a motion to dismiss." *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019) (cleaned up).

**ARGUMENT**

I.  **Plaintiffs' Claims Under Section 1981 and New York Law Should Be Dismissed Because They Are Untimely (Counts I, III, and IV)**

The NYSHRL and the NYCHRL have three-year statutes of limitations.  *See George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016) (NYSHRL); *Lee v. Sutton Garage, LLC*, 2017 WL 11898266, at *2 (S.D.N.Y. Oct. 19, 2017) (NYCHRL).  Section 1981 does not specify a statute of limitations, so federal courts borrow from the most analogous state court law.  *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463 (1975).  Here that is the three-year limitations period under New York's civil rights laws.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (Section 1981).  Under the so-called discovery rule, a claim "accrue[s] when a plaintiff knows or has reason to know of the injury that serves as the basis for the action." *Dombrowski v. City of New York*, 116 F.3d 465 (2d Cir. 1997) (Section 1981); *see also Scott v. Cayuga Cnty. Civ. Serv. Comm'n*, 2025 WL 472681, at *7 (N.D.N.Y. Feb. 12, 2025) (conducting similar analysis under NYSHRL); *Crawford v. US Sec. Assocs.*, 2019 WL 8128253, at *7 (S.D.N.Y. Sept. 11, 2019) (similar standard under NYCHRL).

Plaintiffs' allegations demonstrate that they missed the three-year filing deadline for the Section 1981 and New York claims.  They allege that they were not selected for the Fund because of discrimination that occurred and was "unmistakable," Am. Compl. ¶ 50, more than three years before they sued.  The staleness of Plaintiff's claims is apparent from the Amended Complaint's timeline of events even giving Plaintiffs every reasonable inference.  On June 11, 2020, PayPal "unveiled" the Fund, and Desai allegedly contacted a PayPal employee who had "publicly indicated his affiliation with the funding program" "[w]ithin hours." *Id.* ¶¶ 19–20, 32.  On June 11, 2020, she allegedly contacted a different PayPal employee to "explain Andav's fit for PayPal's program." *Id.* ¶ 36.  During a July 24, 2020 conversation with Desai, a third PayPal employee

purportedly "acknowledged and confirmed that the program did, in fact, preference [B]lack and Hispanic-led firms over other races and ethnicities, including Asian Americans." *Id.* ¶¶ 40–42. Plaintiffs allege that this third employee claimed that he would follow up with Desai, but never did. *Id.* ¶¶ 45–46. On October 28, 2020, PayPal announced the Fund's first round of investments, "every single one of" which allegedly "included at least one general partner who was [B]lack or Latino," demonstrating "obvious" racial criteria and an "unmistakable racial pattern." *Id.* ¶¶ 47– 50; *id.* ¶ 57 (alleging that "PayPal's racial criteria were obvious" "again" in May 2021, and thus asserting they were also obvious in October 2020). Supposedly, PayPal's accompanying press release "emphasized the racial criteria it applied to its investments." *Id.* ¶ 47. Plaintiffs allege that they were "exclud[ed] from competing on equal footing for and receiving funding in [PayPal's] investment program because of Desai's race." *Id.* ¶ 66.

All this makes clear that Plaintiffs' claims accrued, at the latest, on October 28, 2020, when they knew or had reason to know that they had been purportedly injured. *See Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992); *Scott*, 2025 WL 472681, at *7; *Crawford*, 2019 WL 8128253, at *7. In Plaintiffs' own telling, as of October 28, 2020, PayPal had selected funding recipients other than Plaintiffs, its racial preferences were purportedly "unmistakable" and "obvious," and it had been months since Desai learned that PayPal allegedly preferred Black and LatinX-led funds and PayPal employees had stopped communicating with Plaintiffs. Am. Compl. ¶¶ 42, 47–50, 57. Plaintiffs knew or should have known that they had been injured as of that date. *See, e.g.*, *United States v. City of New York*, 631 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (plaintiffs' failure-to-hire claims accrued when they had reason to know they had not been selected for interviews); *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1047, 1051 (9th Cir. 2008) (Section 1981 claim accrued when job applicants who were never formally rejected "should have

realized" they had not been selected).  Thus, the deadline for Plaintiffs to file suit was three years

later, on October 28, 2023.  Plaintiffs filed their suit on January 2, 2025, so their Section 1981 and

New York claims are untimely.[2]

  While Plaintiffs allege that PayPal announced a second round of funding recipients in May

2021 and "has not announced an end to the program," Am. Compl. ¶¶ 55, 67, Plaintiffs do not

allege that they made any further attempts to pursue funding after they were not selected in October

2020.  Instead, Plaintiffs claim that Desai "remained hopeful" that PayPal would award her funding

because no one from PayPal had followed up to let her know "her application was no longer under

consideration."  Am. Compl. ¶¶ 53–54.  Desai's "hopefulness," however, cannot extend the statute

of limitations.  *Scott v. Nat'l Ass'n for Stock Car Racing, Inc.*, 2008 WL 217049, at *12 (S.D.N.Y.

Jan. 17, 2008).  In *Scott*, for example, the court found that a job applicant's Section 1981 claim

was time-barred because the plaintiff knew he had not received a job offer more than three years

before he filed suit, even though he had allegedly engaged in a "repeated dialogue" with defendants

"for the next five to six years" and received a more explicit rejection as part of those conversations.

The employer in that case argued, and the court agreed, that "Plaintiff cannot toll the statute of

limitations by . . . claiming he was waiting patiently for five to six years for [the employer] to give

him any job."  *Id.* at *4, *12.  So too, here, Desai cannot extend the statute of limitations by

claiming she was waiting patiently for PayPal to consider her for funding, even after excluding her

from the Fund's first round of investments, which she claims were "unmistakab[ly]"

discriminatory.  Am. Compl. ¶ 50.

---

[2] Although Plaintiffs signed a tolling agreement with PayPal effective May 22, 2024, the
agreement does not save their claims.  The agreement preserves Plaintiffs' rights to "assert and
pursue [their] claims in litigation as if they had been filed on May 22, 2024."  Denerstein Decl.
Ex. B at 1.  By that date, Plaintiffs' claims had already been untimely for more than six months.

Perhaps recognizing this, Plaintiffs now attempt to distinguish the Fund's May 2021 investments by claiming that the week after they were announced, some unnamed, "well-connected peer fund manager wrote in an industry group chat (that includes Ms. Desai) that PayPal was investing in only Black and LatinX-led fund managers." Am. Compl. ¶ 60. Plaintiffs do not explain, however, why comments from an anonymous fund manager—who Plaintiffs do not allege had any unique insight into PayPal's operations—could have alerted Desai to the discrimination she now challenges when an alleged statement almost a year earlier from one of PayPal's own employees, that the Fund purportedly "preference[d] [B]lack and Hispanic-led firms over other races and ethnicities," *id.* ¶ 42, followed by PayPal's October 2020 investments exclusively in Black and LatinX-led firms, *id.* ¶ 47, did not. In any event, "courts have held that a discrimination claim accrues from the date the claimant receives notice of the allegedly discriminatory decision, not when he has reason to know of a possibly discriminatory motive for that conduct." *Andrews v. Freemantlemedia N.A., Inc.*, 2014 WL 6686590, at *6 (S.D.N.Y. Nov. 20, 2014), *aff'd sub nom. Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67 (2d Cir. 2015) (citations and quotation marks omitted); *Washington v. Cty. of Rockland*, 373 F.3d 310, 319 (2d Cir. 2004) (plaintiffs' claims accrued "when plaintiffs knew or had reason to know that defendants filed [the allegedly discriminatory] charges").

Plaintiffs' belated attempts at wordsmithing similarly fall short. It does not matter, for example, whether PayPal's May 2021 announcement is described as "reiterat[ing]," Compl. ¶ 50, or "admitt[ing]," Am. Compl. ¶ 56, the alleged racial discrimination that Plaintiffs contend was "unmistakable" and "obvious" in October. Am. Compl. ¶¶ 50, 57. And the fact that Plaintiffs are hoping to gain a seven-month grace period by employing such artful pleading only underscores the purpose of the discovery rule. No matter how Plaintiffs characterize it, the Amended

Complaint makes clear that they knew or should have known of their injury as of October 28, 2020. Their claims under Section 1981 and New York law were, quite simply, filed too late.

Plaintiffs' claims also are not saved by the exception for "continuing violations." The continuing violation doctrine permits a plaintiff to "bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Doe v. State Univ. of N.Y. Purchase Coll.*, 617 F. Supp. 3d 195, 208 (S.D.N.Y. 2022) (cleaned up). The doctrine applies only to claims "that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment"—traditionally, hostile work environment claims—and is "heavily disfavored." *Doe*, 617 F. Supp. 3d at 208–09; *see also Liboy v. Russ*, 2023 WL 6386889, at *7 (S.D.N.Y. Sept. 29, 2023) (similar). The continuing violation doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (cleaned up); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 115 (2002) (explaining that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," while hostile work environment claims may be subject to the continuing violation doctrine because they are "based on the cumulative effect of individual acts").

The Amended Complaint challenges a discrete act: PayPal's alleged refusal in 2020 to consider Plaintiffs for funding based on Desai's race. *See, e.g.*, Am. Compl. ¶¶ 47–52. This type of one-off, particularized decision is precisely the kind of "discrete unlawful act" that is outside the scope of the continuing violation doctrine. *See, e.g.*, *Lewis v. Clark*, 2015 WL 3905315, at *2 n.4 (D. Conn. June 25, 2015) (holding that plaintiff's claim accrued when he was banned from campus despite the ban continuing to be in effect at the time of the suit). Were it otherwise, the

limitations period would be "forever manipulable" by Plaintiffs because they "could re-start the statute of limitations at any time by printing up and submitting a new [request] for payment, regardless of [their] prior knowledge that [PayPal] would refuse to pay." *Miller v. Bridgeport Police Dep't*, 2016 WL 3086402, at *5 (D. Conn. May 31, 2016) (dismissing Section 1981 failure-to-contract claim), *aff'd*, 718 F. App'x 49 (2d Cir. 2017). For all of these reasons, Plaintiffs' claims under Section 1981 and New York law should be dismissed as untimely.[3]

## II. Plaintiffs' Credit Discrimination Claims Should Be Dismissed Because They Allegedly Applied For Funding, Not Credit (Counts II and III)

Plaintiffs amended their Complaint to add allegations intended to support claims for credit discrimination under the ECOA, 15 U.S.C. § 1691, *et seq.*, and the NYSHRL, N.Y. Executive Law § 296-a. Section 296-a is the "state counterpart" to the ECOA, and discrimination claims under both statutes may be considered together. *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 526 (S.D.N.Y. 2015). To establish a *prima facie* case under either law, Plaintiffs "must demonstrate that: (1) [they were] a member of a protected class, (2) [they] applied for credit from defendant, (3) [they were] qualified for credit but defendant denied [their] credit application, and (4) defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Id.* (citations and quotation marks omitted).

---

[3]    To the extent Plaintiffs claim that the applicable statutes of limitations should be equitably tolled, the Court should reject that argument as well. Equitable tolling is generally only appropriate where (1) "the defendant has actively misled the plaintiff respecting the cause of action," (2) "the plaintiff has in some extraordinary way been prevented from asserting his rights," or (3) the plaintiff "has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, 356 F. App'x 521, 522 (2d Cir. 2009). A plaintiff seeking equitable tolling also must demonstrate that she "acted with reasonable diligence during the time period she seeks to have tolled." *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). Plaintiffs do not plead facts supporting any of these bases for equitable tolling.

Plaintiffs' credit discrimination claims fail because they do not allege that they applied for credit from PayPal. Indeed, other than speculating, "on information and belief," that PayPal provided Fund recipients "credit and access to other beneficial loan opportunities," Am. Compl. ¶ ¶ 79—a conclusory contention that Plaintiffs have alleged no facts to support—Plaintiffs have not identified *any* form of "credit" that the Fund purportedly provided. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017). Nor does it make sense that a venture capital firm—which, as its name indicates, deals in capital (that is, investments)—would be seeking credit from PayPal.[4] Even if Plaintiffs had plausibly alleged that PayPal was for some reason offering loans to venture capital firms as part of the Fund, the claims still fail because Plaintiffs have not alleged that they were qualified to receive loans or credit from PayPal.

### a. Plaintiffs Fail To Allege That They Applied For Credit

The ECOA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payments therefor." 15 U.S.C. § 1691a(d). "Credit" is similarly defined under the NYSHRL as "the right conferred upon a person by a creditor to incur debt and defer its payment, whether or not any interest or finance charge is made for the exercise of this right." N.Y. Exec. Law § 292(20) (emphasis added). Thus, "[a]bsent a right to defer payment for monetary debt, property or services," the statutes are "inapplicable." *Shaumyan v. Sidetex Co., Inc.*, 900 F.2d 16, 18 (2d Cir. 1990); *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203 (4th Cir. 2002) (the "essence of the credit relationship" is "one that provides a right to defer payment on a debt or other obligation"); *Arch Ins. Co. v. Watermark Env't, Inc.*, 534 F. Supp. 3d 602, 606 (E.D. Va. 2021) (for ECOA to

---

[4]    Instead, venture capital funds seek out capital commitments from investors, and "call down" those commitments in order to make investments in portfolio companies. *See* U.S. Securities and Exchange Commission, *Starting a Private Fund*, https://www.sec.gov/resources-small-businesses/capital-raising-building-blocks/starting-private-fund (last accessed May 28, 2025).

apply, the contractual arrangement between the parties must involve one party "grant[ing] a right" to the other "to defer payment of [a] debt or other obligation").

The ECOA and NYSHRL are inapplicable because Plaintiffs do not allege that they applied to PayPal for the right to defer payment for debt or any other thing of value. As one would expect from a venture capital firm, Plaintiffs instead "sought funding" and "investments" from PayPal— none of which they allege they would have had to pay back. *See* Am. Compl. ¶ 22 ("Ms. Desai and Andav Capital immediately sought funding from the new PayPal investment program."); *id.* ¶ 33 ("Mr. Dowd and Ms. Desai had a two-hour discussion . . . regarding [Andav's] inclusion in PayPal's funding program."); *id.* ¶ 66 ("PayPal refused to contract with Ms. Desai and Andav, excluding them from . . . receiving funding in its investment program."); *id.* ¶ 55 (complaining that PayPal "awarded investment dollars to Black and Hispanic owned funds"). Because Plaintiffs did not apply for "credit" from PayPal, they cannot make out a credit discrimination claim.

Plaintiffs' Amended Complaint attempts, but fails, to plead around this reality with raw speculation about the ways PayPal's investments in other venture capital funds may have been structured or used by the funds to secure additional credit. Plaintiffs concede, however, that they are even now unsure whether PayPal extended credit to *any* Fund recipients. *See* Am. Compl. ¶ 71 ("The precise structure of PayPal and PayPal Ventures' investments in each of the funds it invested in is not public."). To state a claim for credit discrimination, Plaintiffs must do more than guess that someone, somewhere, *might* have received some type of credit which Plaintiffs never even sought. The rampant guesswork in Plaintiffs' Amended Complaint cannot bring their contract discrimination claims within the ambit of the ECOA or its New York state counterpart.

*First*, Plaintiffs contend that they were unlawfully denied credit because "[u]pon information and belief . . . the benefits and collaboration" that PayPal provided to Fund recipients

"included the provision of credit and access to other beneficial loan opportunities." Am. Compl. ¶ 79. But Plaintiffs' vague allegations that some Fund participants may have benefited from the "provision of credit" and "access" to loans, *id.*, do not establish that Plaintiffs *themselves* ever applied to PayPal for these benefits (how could they have, when Plaintiffs have only "information and belief" that the opportunities existed?) or that others actually took advantage of them. Because "Plaintiff[s were] not . . . applicant[s] within the plain meaning of the ECOA," they "cannot invoke the protections of the Act." *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 291 (N.D.N.Y. 2008), *aff'd*, 421 F. App'x 97 (2d Cir. 2011). Moreover, Plaintiffs' conclusory assertions provide no detail about what types of credit were purportedly available to Fund participants; whether that credit was available to individuals who were not Fund participants; or what criteria PayPal allegedly used in determining whether to award credit to participants.[5] Even if Plaintiffs *had* adequately alleged that they applied for credit, there is not enough information to support an inference that they were discriminated against. *See Kwiatkowski v. Polish & Slavic Fed. Credit Union*, 2011 WL 6225390, at *4 (E.D.N.Y. Dec. 12, 2011), *aff'd* 511 F. App'x 117 (2d Cir. 2013) (dismissing ECOA claim because there were "no factual allegations that could reasonably lead me to infer that it was [plaintiff's] national origin that drove the credit union to deny his loan applications"); *Presidential Bank, FSB v. 1733 27th Street SE LLC*, 271 F.

---

[5]    The handful of credit programs identified in the Amended Complaint only underscore how far-fetched Plaintiffs' credit discrimination claims are. For example, Plaintiffs cite to the PayPal Working Capital business loan—a loan that ranges between $1,000 and $200,000. Am. Compl. ¶ 77. But Plaintiffs also complain that "PayPal awarded multi-million-dollar investment contracts" averaging "$5 million dollars at a time," "to numerous black and Latino emerging fund managers" instead of Andav. *Id.* ¶ 70. The apparent contention that Plaintiffs were entitled to millions of dollars in investments, but at the same time might have applied for thousands of dollars in credit, is wholly implausible.

Supp. 3d 163, 170 (D.D.C. 2017) (dismissing ECOA claim based on "threadbare and conclusory allegations" of discrimination).

*Second*, Plaintiffs appear to argue that PayPal's investments constitute credit because Andav might have either (1) loaned the funding it received from PayPal to "other beneficiaries" or "related parties," Am. Compl. ¶ 71; *id.* ¶ 73 (alleging that PayPal gave "investment awardees . . . lendable capital"), or (2) used PayPal's investments to "secure [lines of] credit," for itself, *id.* ¶ 76. It is of no moment, however, whether Andav could have used PayPal's investment to enable Andav to become a creditor or to borrow debt from other creditors. To state a claim under the ECOA and NYSHRL, Plaintiffs must show that they "applied for credit from [the] *defendant*." *Germain*, 111 F. Supp. 3d at 526 (emphasis added). Plaintiffs have not alleged that here.

*Third*, it is irrelevant that PayPal might have "invest[ed] directly into [Andav's] portfolio companies." Am. Compl. ¶ 72. Plaintiffs do not have standing to pursue discrimination claims on behalf of unspecified and unnamed third parties, who never applied for credit in the first place. *See Germain*, 111 F. Supp. 3d at 528–29 (mortgage banker and firm did not have standing to pursue ECOA claims on behalf of clients). And even if they did, Plaintiffs' assumptions that those investments would have occurred if Andav had been selected to participate in the Fund—and that they would have been structured to include "loans, convertible notes, and structured credit," Am. Compl. ¶ 74—are sheer speculation and insufficient to survive a motion to dismiss. *Tsereteli v. Residential Asset Securitization Trust*, 697 F.Supp.2d 546, 548 n.9 (S.D.N.Y. 2010) ("Conclusory, hypothetical speculation . . . is not entitled to an assumption of truth on a motion to dismiss."); *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 631 (S.D.N.Y. 2003), *aff'd*, 355 F.3d 206 (2d Cir. 2004) ("While complaint allegations must generally be taken as true for purposes of a motion to

dismiss, it does not follow that conclusory allegations and speculation . . . will defeat such a motion.").

*Finally*, while Plaintiffs attempt to argue that PayPal is a "creditor" in other contexts, Am. Compl. ¶ 117, that misses the point. It is irrelevant whether PayPal issues "credit cards," "credit products, including a digital credit line and a revolving line of credit," or "Working Capital Business" or "PayPal Business" loans, *id.* ¶ 77, because Plaintiffs do not allege that they applied for, and were denied access to, those forms of credit. Plaintiffs' conclusory assertions that PayPal may, in some cases, provide credit to "business clients," *id.*, fail to support a reasonable inference that they themselves were discriminated against.

### b. Plaintiffs Fail To Allege That They Were Qualified To Receive Credit

Plaintiffs also do not allege that they were "qualified for credit but the defendant denied [their] credit application." *Germain*, 111 F. Supp. 3d at 526. Courts have consistently dismissed credit discrimination claims on this basis. In *Powell v. American General Financial, Inc.*, for example, the court dismissed a plaintiff's ECOA claim where she summarily alleged that she was "qualified" for credit and that her "debt ratio was acceptable" but did not allege "any facts which would tend to show that she actually had a sufficient credit history, sufficient collateral, and/or a necessary co-signer." 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004); *see also Lumpkin v. Am. Express Co.*, 2025 WL 1111222, at *2 (M.D. Fla. Apr. 15, 2025) (dismissing plaintiff's claim because he failed to allege sufficient facts that "he was qualified (i.e., credit-worthy) for Defendant's Platinum credit card"); *Bojorquez v. Wells Fargo Bank, NA*, 2014 WL 1883674, at *3 (D. Or. May 8, 2014) (dismissing the plaintiffs' claim because they "neglect[ed] to allege any facts demonstrating that they were eligible for but nonetheless denied credit"). Plaintiffs have done far less here than the claimant in *Powell*: The Amended Complaint does not even specify what *type* of credit Plaintiffs purportedly applied to receive, much less describe Plaintiffs' general creditworthiness or purported

16

qualifications, or allege that any other purported "creditors" extended loans to Andav.  Because Plaintiffs have not alleged sufficient facts to demonstrate that they were qualified for credit, yet their applications were denied, Counts II and III of the Amended Complaint should be dismissed.

### III.    Plaintiffs' NYCHRL Claim Should Be Dismissed Because The Fund Investments Were Not Public Accommodations (Count IV)

Finally, Plaintiffs cannot state an NYCHRL claim because they fail to allege that, in making investments through the Fund, PayPal acts as a "provider of public accommodation."  The NYCHRL makes it unlawful for any "provider of public accommodation" to "refuse, withhold from or deny the full and equal and enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation" because "of any person's actual or perceived race."  N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).  In turn, "provider of public accommodation" is defined to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind."  *Id.* § 8-102.  The statute does not expressly define the word "public," but that term is commonly understood to mean "[o]pen or available for all to use, share, or enjoy."  Black's Law Dictionary, 10th ed.  While the NYCHRL has "uniquely broad and remedial purposes," *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009), courts have ruled that the "starting point of analysis" for interpreting the statute "must be the plain meaning of the statutory language, since it is the statutory text which is the clearest indicator of legislative intent."  *Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 435 (S.D.N.Y. 2009), *aff'd*, 620 F.3d 168 (2d Cir. 2010).

Plaintiffs' allegations make clear that PayPal is not a "provider of public accommodation" because the Fund is not "public" at all.  Plaintiffs do not allege that Fund investments were "open or available for all to use, share, or enjoy."  Indeed, the Amended Complaint alleges the opposite:

17

investments were only made in 19 venture capital funds after they were "evaluated" by PayPal "based on a mix of historical investment performance, diversity (race, gender, and geography), and alignment with PayPal's commitment to address the racial wealth gap." Am. Compl. ¶ 59. This "customized and selective assessment" "bears little resemblance" to classic public accommodations like "staying in a hotel, eating at a restaurant, or riding a bus." *Fulton v. City of Philadelphia*, 593 U.S. 522, 539 (2021) (defendant agency's foster care certification not a public accommodation under Philadelphia ordinance because it required a lengthy and stringent selection process); *see also New Hope Fam. Servs., Inc. v. James*, 2022 WL 4494277, at *9 (N.D.N.Y. Sept. 28, 2022) (similar under NYSHRL).

*Sattler v. City of New York Commission on Human Rights*, 554 N.Y.S.2d 763 (Sup. Ct. 1990), *aff'd*, 580 N.Y.S.2d 35 (1992), is instructive. There, the court held that a dental office was not a place of "public accommodation" under the NYCHRL because the owner accepted new patients only by referral. *Id.* at 768. Because "a person [could not] simply walk into petitioner's office unannounced, off the street," the office was insufficiently "public" to be considered a public accommodation. *Id.*[6] So too here. Because treating PayPal as a "provider of public accommodation" would effectively read the word "public" out of the NYCHRL, Count IV must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

---

[6] Although *Sattler* considered a previous version of the NYCHRL prior to its amendment in 1991, its logic in refusing to hold that a selectively available service is a public accommodation is consistent with the current version of the statute.

Dated: May 28, 2025                    Respectfully submitted,


By: */s/ Mylan L. Denerstein*
     Mylan L. Denerstein
     GIBSON, DUNN & CRUTCHER LLP
     200 Park Avenue
     New York, NY 10166-0193
     (212) 351-3850
     mdenerstein@gibsondunn.com

     Jason C. Schwartz (*pro hac vice*)
     GIBSON, DUNN & CRUTCHER LLP
     1700 M Street N.W.
     Washington, D.C. 20036-4504
     (202) 955-8242
     jschwartz@gibsondunn.com

     Gregg J. Costa (*pro hac vice*)
     GIBSON, DUNN & CRUTCHER LLP
     811 Main Street, Suite 300
     Houston, TX 77002-6117
     (346) 718-6649
     gcosta@gibsondunn.com

     *Attorneys for Defendants PayPal Holdings, Inc.*
     *and PayPal Ventures*

## <u>CERTIFICATION OF COUNSEL</u>

I hereby state, pursuant to Southern District of New York Local Civil Rule 7.1(c), that the foregoing brief was prepared using Microsoft Word.  According to Microsoft Word's word count feature, the total number of words in the foregoing brief (excluding the caption, table of contents, table of authorities, signature block, and this certification) is 5,945.

Dated:  May 28, 2025

*/s/ Mylan L. Denerstein*
Mylan L. Denerstein
