# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDAV CAPITAL,<br>NISHA DESAI,<br><br> *Plaintiffs*,<br><br> v.<br><br>PAYPAL HOLDINGS, INC.,<br>PAYPAL VENTURES,<br><br> *Defendants*. | Case No. 25-cv-33 |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

Table of Authorities ............................................................................................... ii

Introduction ........................................................................................................... 1

Background ............................................................................................................. 2

Legal Standard ....................................................................................................... 5

Argument ................................................................................................................ 6

    I.     Plaintiffs adequately allege that their claims are timely. ............................ 6

        A.     PayPal's rejection of Andav in May 2021 was a discrete discriminatory act within the limitation period. ...............................7

        B.     Even if the May 2021 rejection were not a discrete discriminatory act, Plaintiffs' claims would be timely. ............................... 12

        C.     PayPal's arguments are not relevant to Plaintiffs' NYCHRL claim. ........... 15

    II.    Plaintiffs adequately allege discrimination in credit (Counts II and III). ............... 16

        A.     Defendants are creditors. ................................................................. 16

        B.     Plaintiffs were eligible applicants. ................................................... 18

        C.     Defendants discriminated against Plaintiffs. .................................... 21

        D.     Defendants' discrimination involved credit. .................................... 22

    III.   Plaintiffs adequately allege a claim under the NYCHRL (Count IV). ................... 26

Conclusion ............................................................................................................ 29

Certification of Counsel ....................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**

*Altman Stage Lighting v. Smith*,
  2022 WL 374590 (S.D.N.Y. Feb. 8) ........................................................................... 25

*Amini v. Oberlin Coll.*,
  440 F.3d 350 (6th Cir. 2006) .................................................................................... 20

*Andrews v. Fremantlemedia*,
  613 F. App'x 67 (2d Cir. 2015) ................................................................................. 11

*Arista Recs. v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ...................................................................................... 25

*Bagley v. Lumbermens Mut. Cas. Co.*,
  100 F. Supp. 2d 879 (N.D. Ill. 2000) ....................................................................... 16

*Bantum v. Am. Stock Exchange*,
  N.Y.L.J. (Sup. Ct. Apr. 17, 2003) ............................................................................ 26

*Barrows v. Burwell*,
  777 F.3d 106 (2d Cir. 2015) ........................................................................................ 5

*Benjamin v. Consol. Edison Co.*,
  2018 WL 1406620 (S.D.N.Y. Mar. 20) ..................................................................... 25

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008) ...................................................................................... 25

*Bridgeport Guardians v. Bridgeport*,
  933 F.2d 1140 (2d Cir. 1991) .................................................................................... 20

*Bros. v. First Leasing*,
  724 F.2d 789 (9th Cir. 1984) ..................................................................................... 24

*Cahill v. Rosa*,
  89 N.Y.2d 14 (1996) ................................................................................................... 28

*Cardwell v. Davis Polk & Wardwell*,
  2020 WL 6274826 (S.D.N.Y. Oct. 24) ...................................................................... 14

*Carroll v. Walden Univ.*,
  650 F. Supp. 3d 342 (D. Md. 2022) ....................................................................16, 23

*CFPB v. Townstone Fin.*,
  107 F.4th 768 (7th Cir. 2024) .................................................................................... 24

*Chin v. Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012) .....................................................................................7, 14

*Cole v. N.Y. Dep't of Corr. Servs.*,
  2012 WL 4491825 (N.D.N.Y. Aug. 31) ....................................................................... 5

*Conn. Light & Power Co. v. U.S. Sec'y of Lab.*,
 85 F.3d 89 (2d Cir. 1996) ....................................................................................... 12

*Connolly v. McCall*,
 254 F.3d 36 (2d Cir. 2001) ................................................................................... 8, 9

*Cornwell v. Robinson*,
 23 F.3d 694 (2d Cir. 1994) ..................................................................................... 14

*Dawson v. N.Y.C. Transit Auth.*,
 624 F. App'x 763 (2d Cir. 2015) ............................................................................ 17

*Doe v. Columbia Univ.*,
 831 F.3d 46 (2d Cir. 2016) ................................................................................... 5, 21

*Doyle v. Nordam Grp., Inc.*,
 2010 WL 5141274 (N.D. Okla. Dec. 13) ................................................................ 12

*Doyle v. Nordam Grp., Inc.*,
 492 F. App'x 846 (10th Cir. 2012) ......................................................................... 12

*Elmenayer v. ABF Freight Sys.*,
 318 F.3d 130 (2d Cir. 2003) ..................................................................................... 7

*Equal Access for El Paso v. Hawkins*,
 562 F.3d 724 (5th Cir. 2009) .................................................................................. 27

*Erickson v. Pardus*,
 551 U.S. 89 (2007) ............................................................................................... 5, 24

*Felder v. Pepsi Cola*,
 2015 WL 3447216 (E.D.N.Y. May 6) ....................................................................... 9

*Fitchett v. N.Y.C.*,
 2019 WL 3430726 (S.D.N.Y. July 30) ................................................................ 13, 14

*Fitzgerald v. Henderson*,
 251 F.3d 345 (2d Cir. 2001) ................................................................................... 13

*Fleming v. Verizon N.Y.*,
 419 F. Supp. 2d 455 (S.D.N.Y. 2005) ..................................................................... 14

*Germain v. M&T Bank Corp.*,
 111 F. Supp. 3d 506 (S.D.N.Y. 2015) ........................................................... 17, 22, 23

*Goodwine v. N.Y.C.*,
 2016 WL 3017398 (S.D.N.Y. May 23) ..................................................................... 12

*Hargraves v. Cap. City Mortg.*,
 140 F. Supp. 2d 7 (D.D.C. 2000) ............................................................................ 23

*Harris v. N.Y.C.*,
 186 F.3d 243 (2d Cir. 1999) ............................................................................... 11, 13

*Jefferson v. Briner Inc.,*
   2006 WL 1720692 (E.D. Va. June 21) .......................................................................23

*John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home,*
   2014 WL 1236804 (E.D.N.Y. Mar. 25).....................................................................14

*Johnson v. Vilsack,*
   833 F.3d 948 (8th Cir. 2016) .....................................................................................16

*Juarez v. Nw. Mut. Life Ins.,*
   69 F. Supp. 3d 364 (S.D.N.Y. 2014).........................................................................20

*Kaufman v. Monday.com,*
   2024 WL 3090146 (S.D.N.Y. June 21) .......................................................................2

*Latif v. N.Y.C.,*
   2024 WL 1348827 (S.D.N.Y. Mar. 28)........................................................................7

*Lewis v. Chicago,*
   560 U.S. 205 (2010) .....................................................................................................7

*Lucente v. Cnty. of Suffolk,*
   980 F.3d 284 (2d Cir. 2020) ......................................................................................13

*Mahmoud v. Taylor,*
   2025 WL 1773627 (U.S. June 27)..............................................................................24

*Mihalik v. Credit Agricole Cheuvreux N.A.,*
   715 F.3d 102 (2d Cir. 2013) ......................................................................................27

*Modny v. Foley Hoag,*
   2025 WL 487308 (S.D.N.Y. Feb. 12) ..........................................................................5

*Morgan v. NYS Atty. Gen.'s Off.,*
   2013 WL 491525 (S.D.N.Y. Feb. 8) ..........................................................................15

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002) ...........................................................................................7, 8, 10

*Novio v. N.Y. Acad. of Art,*
   286 F. Supp. 3d 566 (S.D.N.Y. 2017)........................................................................26

*Ortiz v. Cornetta,*
   867 F.2d 146 (2d Cir. 1989) ......................................................................................12

*Pallozzi v. Allstate Life Ins.,*
   198 F.3d 28 (2d Cir. 1999) ........................................................................................28

*Parker v. Workmen's Circle Ctr. of the Bronx,*
   2015 WL 5710511 (S.D.N.Y. Sept. 29) .....................................................................21

*People v. Starling,*
   85 N.Y.2d 509 (1995)................................................................................................27

*Petrosino v. Bell Atl.*,
   385 F.3d 210 (2d Cir. 2004) ................................................................. 8

*Powell v. American General Financial*,
   310 F. Supp. 2d 481 (N.D.N.Y. 2004) ................................................ 19

*Sattler v. City of New York Commission on Human Rights*,
   147 Misc. 2d 189 (Sup. Ct. 1990) ....................................................... 27

*Schmitt v. GE Co.*,
   2007 WL 1245312 (D. Conn. Apr. 25) ................................................. 8

*Scott v. NASCAR*,
   2008 WL 217049 (S.D.N.Y. Jan. 17) .................................................. 10

*SFFA v. Harvard*,
   600 U.S. 181 (2023) ............................................................................ 9

*Simon v. N.Y.C.*,
   2015 WL 2069436 (S.D.N.Y. May 4) .................................................. 15

*Smith v. UPS*,
   65 F.3d 266 (2d Cir. 1995) .............................................................. 9, 11

*Staehr v. Hartford Fin. Servs. Grp.*,
   547 F.3d 406 (2d Cir. 2008) .............................................................. 11

*Taylor v. N.Y.C.*,
   207 F. Supp. 3d 293 (S.D.N.Y. 2016) ................................................ 15

*Toussaint v. N.Y.C.*,
   2021 WL 4429316 (S.D.N.Y. Sept. 27) .............................................. 14

*Treadway v. Gateway Chevrolet Oldsmobile Inc.*,
   362 F.3d 971 (7th Cir. 2004) .................................................. 22, 23, 24

*United States v. N.Y.C.*,
   631 F. Supp. 2d 419 (S.D.N.Y. 2009) ................................................ 11

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015) ................................................................ 6, 8

*Wang v. Palmisano*,
   51 F. Supp. 3d 521 (S.D.N.Y. 2014) .................................................. 12

*Whitfield v. N.Y.C.*,
   760 F. Supp. 3d 126 (S.D.N.Y. 2024) .................................................. 5

*Wide v. Union Acceptance Corp.*,
   2002 WL 31730920 (S.D. Ind. Nov. 19) ............................................. 23

*Wilson v. JPMorgan Chase Bank*,
   2021 WL 5179914 (S.D.N.Y. Nov. 8) ................................................. 11

## Statutes

15 U.S.C. §1691(a)(1) ................................................................................................ passim

15 U.S.C. §1691a(b) ........................................................................................................ 21

15 U.S.C. §1691a(d) ....................................................................................................... 26

15 U.S.C. §1691a(e) ...................................................................................... 19, 20, 26, 27

15 U.S.C. §1691a(f) ......................................................................................................... 19

N.Y. Exec. Law §292(1) ................................................................................................. 19

N.Y. Exec. Law §292(22) .............................................................................. 19, 20, 26, 27

N.Y. Exec. Law §296-a ................................................................................. 18, 19, 21, 26

N.Y. Exec. Law §296-a(1)(b) ................................................................................... 19, 26

N.Y.C Code §8-130(a) ..................................................................................................... 33

N.Y.C. Code §8-102 ............................................................................................ 31, 32, 33

N.Y.C. Code §8-103(a) .................................................................................................... 32

N.Y.C. Code §8-107(4)(1)(a) .................................................................................... 31, 32

N.Y.C. Code §8-130(b) .................................................................................................... 33

## Other Authorities

*About*, PayPal Ventures, archive.is/wOOLq (archived July 9, 2025) ......................... 20

*Faces of Impact - Lisha Bell*, YouTube (Nov. 15, 2023), perma.cc/2NSV-QSPX ...................... 11

*Press Release, PayPal Invests $50 Million in Black and Latinx-Led Venture Capital Funds* (October 28, 2020), perma.cc/9SRU-T5XL ............................................................................... 3

SEC, *Diversifying Risk*, archive.ph/JsyXD (archived July 7, 2025) ............................. 20

SEC, *Starting a Private Fund*, sec.gov/resources-smallbusinesses/capital-raising-building-blocks/starting-private-fund (last accessed May 28, 2025) ........................................ 20

## Regulations

12 C.F.R. §1002.2(*l*) ................................................................................................ 20, 26

12 C.F.R. §1002.2(m) ...................................................................................................... 28

12 C.F.R. §1002.4(a) ....................................................................................................... 28

12 C.F.R. §1002.4(b) ................................................................................................. 24, 28

12 C.F.R. §202.2(e) ......................................................................................................... 21

## INTRODUCTION

PayPal's threshold arguments are for legislatures, not for courts. Though three years might seem too long to PayPal, New York gives plaintiffs that long to sue for racial discrimination. PayPal discriminated against Andav less than three years before this case was effectively filed—at the very least when its $530+ million economic opportunity fund announced its May 2021 round of recipients. PayPal concedes that each round of funding was a "discrete" act. MTD (Doc.39) 10. And PayPal knows that each discrete discriminatory act restarts the clock. The law does not *reward* PayPal for *also* discriminating in its first announced round in 2020. It treats the two discriminatory acts as two separate events (or, at worst, one continuous event).

PayPal similarly resists the breadth of the Equal Credit Opportunity Act and New York City's Human Rights Law. By design, the NYCHRL contains a distinctive definition of "provider of public accommodation," and PayPal cannot narrow that definition with dictionaries or authorities from other jurisdictions. And contra PayPal, ECOA covers discrimination in "any aspect" of a credit transaction, not just the final denial by the actual lender. The complaint plausibly alleges that the funding program involved credit based on Andav's experience, standard industry practice, PayPal's own statements, PayPal's past practice, and Andav's communication with PayPal executives. Under the liberal pleading rules, PayPal cannot fault Plaintiffs for lacking more "detail" about the specific credit that the program involved—details that PayPal already has, but that Plaintiffs lack because PayPal shut them out based on race. MTD.13-15.

If PayPal's defenses turn out to be supported by real facts in discovery, then PayPal can raise them again at summary judgment. But they are not reasons to dismiss Plaintiffs' well-pleaded complaint out of the gate. Defendants' motion should be denied.

## BACKGROUND

The following facts come from the amended complaint and must be accepted as true. *Kaufman v. Monday.com*, 2024 WL 3090146, at *1 (S.D.N.Y. June 21).

In June 2020, Defendants unveiled a $530 million commitment to combat "'economic inequality'" by partnering with and funding certain U.S. businesses, including "'minority-focused investment funds.'" Am.-Compl. (Doc.37) ¶¶19-20. According to a press release on PayPal's publicly accessible website, all "'startups and investment funds'" were "invited to express interest" in the program "to the PayPal Ventures team." ¶21.

Desai and Andav Capital appeared to be ideal candidates, ¶¶22-23, ¶¶25-28, ¶30, so Plaintiffs sought to participate in PayPal's program, ¶22, ¶31. Hours after PayPal publicly solicited applicants, Desai contacted several PayPal executives, including the PayPal Ventures team, to seek funding and partnership through the program and to share relevant materials on Andav. ¶¶32-36. After those exchanges, Desai and a PayPal executive had a lengthy discussion about Andav and PayPal's mutual fit. ¶35, ¶37. Desai then had "several more" exchanges and submissions; at PayPal Ventures' request, Desai provided proprietary and confidential information about her and Andav's "investment thesis, execution strategy, professional experience, investment performance, track record, capital markets views, and portfolio company information," among other things. ¶¶37-39.

In July 2020, Desai had a meeting with Usman Ahmed—PayPal's head of public policy and research—about Andav's application to PayPal's program. ¶¶40-41. Given the program's

focus on "racial and socio-economic inclusion," Desai sought to confirm that an Asian-American woman from a blue-collar background would be equally evaluated and included. ¶41. Ahmed responded that the program had a "preference" for blacks and Hispanics. ¶42. But Ahmed refused to say what that "preference" was. ¶42. He gave no details, including whether the preference would be a tip for blacks and Hispanics, an outright ban on other races, a preference in terms of sequencing (blacks and Hispanics would be prioritized in application review, scheduling, due diligence, or capital disbursement), or whether the preference would be facially race-neutral (like a socioeconomic boost). ¶42.

Given the overall positivity of the discussion, Desai pressed forward. The day after her meeting with Ahmed, she sent him more materials about Andav's experience and how Andav would advance the program's goals. ¶44. Ahmed responded the next day and thanked Desai, explaining that "he would consider" her materials, review her "submission," and "follow up" once PayPal made a decision. ¶45. No one ever suggested that Andav's application was incomplete. ¶45.

When PayPal announced its "first" round of investments on October 28, 2020, Andav wasn't on the list. ¶47. PayPal did not notify Andav directly; instead, Defendants published on the web that they were investing "$50 million in eight early-stage, Black and Latinx-led venture capital funds." ¶47 (quoting *Press Release, PayPal Invests $50 Million in Black and Latinx-Led Venture Capital Funds* (October 28, 2020), perma.cc/9SRU-T5XL).

Even still, Desai remained fully interested in the program and understood that Andav was "still under consideration." ¶¶53-54. After all, Desai submitted various materials to PayPal and made an emphatic case for Andav and herself. And Ahmed hadn't yet "followed up." ¶53,

¶45. No one told Desai "that her application was no longer under consideration." ¶54, ¶46. And the initial round of $50 million was only a portion of the overall money that PayPal had promised to invest. ¶19, ¶¶47-48. So Desai remained hopeful that she "would hear from Pay-Pal" as part of the next funding round. ¶54.

But when PayPal announced its second round of recipients on May 26, 2021, Andav was not selected. ¶55. PayPal had again awarded "'$50 million'" solely to "'Black- and Latinx-led early-stage venture capital funds.'" ¶55. Again, PayPal did not notify Andav directly; the results were simply announced online.

In hindsight, the program's "preference" for blacks and Hispanics was an outright ban on other races. The selected companies were all "Black-" or "Latinx-led," ¶¶55-56, to the exclusion of all other races, ¶¶60-61. Among the announced recipients, 0% were majority-led by Asian Americans. ¶57, ¶60, ¶¶63-64, ¶¶68-69. Still today, PayPal has not denied that its program outright excluded businesses based on their leaders' race.

For Desai, this race-based exclusion has been costly. She lost the chance to get millions in investments from PayPal, including valuable "loans, convertible notes, and structured credit." ¶70, ¶¶74-75, ¶79, ¶91. And she lost her shot at other "beneficial loan opportunities" where PayPal arranged credit between recipients and others. ¶79. PayPal would not become a "limited partner" with Andav, ¶71, ¶82; *Press Release*, *supra*—a powerful relationship and a vote of confidence that other recipients used to get significantly more funding, better marketability, and an enhanced competitive edge, Am.-Compl.¶44, ¶¶80-83, ¶¶85-91. PayPal's exclusion also raised unfair doubts about Andav, making other limited partners and industry participants

falsely think that PayPal rejected Andav based on merit. ¶84. The fallout has taken a devastating toll on Desai, personally and professionally. ¶93.

Eventually Desai had no option left but to sue. In May 2024, she told PayPal that she planned to file a complaint. Doc.33-2 at 2. She explained that she would sue "no later than May 23, 2024," understanding that the three-year statute of limitations for some of her claims could expire after May 26, 2024 (three years after PayPal rejected Andav in May 2021). *Id.* But Desai was willing to resolve the dispute out of court. *Id.* To pursue a settlement, the parties entered into a tolling agreement, which stopped the clock "on May 22, 2024." *Id.*; Am.-Compl.¶55.

After negotiations broke down, Plaintiffs sued. Their amended complaint alleges violations of 42 U.S.C. §1981 (Count I), the Equal Credit Opportunity Act (Count II), the New York State Human Rights Law (Count III), and the New York City Human Rights Law (Count IV). ¶¶97-142. PayPal moved to dismiss. Other than the parties' discussions on tolling, PayPal's motion does not introduce any outside evidence and says it "accepts as true" the complaint's "factual allegations." MTD.2 n.1.

## LEGAL STANDARD

A motion to dismiss tests whether the complaint satisfies Rule 8, which requires only "'a short and plain statement.'" *Cole v. N.Y. Dep't of Corr. Servs.*, 2012 WL 4491825, at *9 (N.D.N.Y. Aug. 31). "Specific facts are not necessary"; the complaint need only give the defendant "fair notice." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up). This standard is "liberal." *Id.* at 94. When applying it, courts must stick to the four corners of the complaint, accept factual allegations as true, read general allegations to include all necessary specifics,

draw all reasonable inferences, and construe everything favorably for the plaintiff. *Barrows v. Burwell*, 777 F.3d 106, 115 n.47 (2d Cir. 2015).

After all that, the court decides whether the complaint states a claim that is "'plausible on its face.'" *Modny v. Foley Hoag*, 2025 WL 487308, at *1 (S.D.N.Y. Feb. 12). Plausible means a reasonable inference that the defendant is liable. *Whitfield v. N.Y.C.*, 760 F. Supp. 3d 126, 136 (S.D.N.Y. 2024). It does not mean "probable"—or even "more plausible" than nonliability. *See Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016). Consistent with the Rules' preference for deciding cases on their merits, courts must withhold judgment on what is likely true until after the parties verify the facts in discovery. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## ARGUMENT

According to PayPal, Count I (§1981) states a claim but is untimely; Count II (ECOA) is timely but fails to state a claim; and Counts III and IV (NYSHRL and NYCHRL) neither are timely nor state a claim. PayPal is incorrect. Plaintiffs effectively sued before May 26, 2024—less than three years after PayPal announced a second round of funding that did not include Andav. Defendants are creditors that offered, backed, and arranged credit through the program—each of which triggers the broad credit-discrimination laws. And PayPal is covered by New York City's uniquely broad public-accommodations law.

## I.    Plaintiffs adequately allege that their claims are timely.

Plaintiffs' claims under §1981, NYSHRL, and NYCHRL are timely. The parties agree on the basics: The statute of limitations for these claims is three years. MTD.6. The parties' tolling agreement means this case was effectively filed "on May 22, 2024." Doc.40-2 at 2; MTD.8 n.2. And the clock starts for a "'discrimination claim'" on "'the date the claimant

receives notice of the allegedly discriminatory decision.'" MTD.9. PayPal announced that An-

dav was not chosen for the program when it published the recipients of the latest round on

May 26, 2021. Am.-Compl.¶¶55-60. That date is less than three years before this case was

effectively filed on May 22, 2024. ¶55, ¶80; *accord* MTD.4, 8.

According to PayPal, Plaintiffs cannot challenge the funding program's rejection of

Andav in May 2021 because the program also did not choose Andav in October 2020. This

argument violates basic limitations principles under any view of PayPal's conduct. If each

round of funding was a "'discrete'" discriminatory act, MTD.10, then Plaintiffs can challenge

the second rejection. If the two rounds were part of "one" continuous decision, MTD.10-11,

then Plaintiffs can challenge the whole process. And none of PayPal's arguments are even

relevant to the NYCHRL.

### A. PayPal's rejection of Andav in May 2021 was a discrete discriminatory act within the limitation period.

Plaintiffs can challenge the program's rejection of Andav in May 2021, which occurred

less than three years ago, because that rejection was a discrete discriminatory act. A discrete

act is a "single completed action" that occurs at a specific time, like a "'termination, failure to

promote, denial of transfer, or refusal to hire.'" *Elmenayer v. ABF Freight Sys.*, 318 F.3d 130,

134-35 (2d Cir. 2003); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). "Each

discrete discriminatory act starts a new clock" for challenging "that act." *Morgan*, 536 U.S. at

113. Just as "every failure to promote is a discrete act," every failure to select Andav for the

program was a discrete act. *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012);

*e.g.*, *Lewis v. Chicago*, 560 U.S. 205, 212-13 (2010) (new clock "each time [the city] filled a new

class of firefighters"); *Latif v. N.Y.C.*, 2024 WL 1348827, at *4 (S.D.N.Y. Mar. 28) (new clock "[e]ach time [defendant] denied [plaintiff] a promotion").

Instead of resisting this principle, PayPal concedes it. To stop Plaintiffs from arguing that the two rounds were one continuing violation, PayPal argues that the first denial of funding in 2020 was "a discrete act." MTD.10. But PayPal misses the obvious implication: If the first round was discrete from the second, then the second round was discrete from the first. Plaintiffs can thus challenge the second round because it falls within the limitation period, regardless whether and how PayPal discriminated before. The law is crystal clear: "identifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination … that began outside the statutory period." *Vega*, 801 F.3d at 79. That principle holds even when the act is part of a discriminatory program or policy that began outside the limitation period. *Schmitt v. GE Co.*, 2007 WL 1245312, at *5 (D. Conn. Apr. 25). PayPal's earlier discriminatory act was not a free pass for PayPal to discriminate a second time, without resetting the statute-of-limitations clock. *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001). In fact, the earlier discrimination is important "'background evidence in support of [the] timely claim.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).

While PayPal's discrimination in the first round did not bode well for Andav's chances in the second round, that prior discrimination could not start the clock on Plaintiffs' challenge to the second round *before* decisions for that round were made and announced. As PayPal concedes, "'a discrimination claim accrues from the date the claimant receives notice of the allegedly discriminatory decision, not when he has reason to know of a possibly discriminatory motive for that conduct.'" MTD.9. So it does not matter that Plaintiffs knew the program had

a "'preference'" for blacks and Hispanics in July 2020, or that the program's first round chose "exclusively" black- and Hispanic-led firms in October 2020. MTD.9 (quoting Am.-Compl.¶42). Any contrary suggestion "relies on the erroneous assumption that, when a person knows in advance that he will be injured, his claim accrues even before he has suffered injury." *Connolly*, 254 F.3d at 41. "The existence of past acts and the [plaintiff's] prior knowledge of their occurrence … does not bar [plaintiffs] from filing charges about related discrete acts" that happen later. *Morgan*, 536 U.S. at 113. Timeliness turns on when the plaintiff knew it was harmed by a policy, "not when the plaintiff knows of a policy that will, sometime in the future, give rise to that harm." *Connolly*, 254 F.3d at 41. The "repeated application of a discriminatory policy" starts a new clock after "the last such act," even if another clock started after "the first such act." *Id.*

PayPal does not defend the notion that the clock starts when "Plaintiffs knew of the alleged preferences they complain about," MTD.1; but even on that theory, Plaintiffs' complaint could not be dismissed. Per the complaint, PayPal initially refused to explain what the program's "preference" for blacks and Hispanics meant. ¶42. Even after the program's first round picked only blacks and Hispanics, PayPal still could have picked other races in later rounds, and PayPal had not yet said that others were outright barred based on race. ¶20; *cf. SFFA v. Harvard*, 600 U.S. 181 (2023) ("preference" for blacks and Hispanics did not mean colleges barred whites or Asians); Am.-Compl.¶70 ("multiple emerging Asian-American women fund managers" applied to the program). Though in retrospect the first round's selection of only black- and Hispanic-led funds is "'unmistakable'" evidence of discrimination,

MTD.7, it was not until much later—and inside the limitation period—that PayPal's preference was revealed to be the race-based, totalizing bar that Plaintiffs challenge. Am.-Compl.¶¶55-61; *see Felder v. Pepsi Cola*, 2015 WL 3447216, at *5-6 (E.D.N.Y. May 6) ("tentative" evidence does not start the clock); *Smith v. UPS*, 65 F.3d 266, 267-68 (2d Cir. 1995) ("suggestions" do not start the clock). Of course, it's hard to tell when a plaintiff should have known that the defendant's policy or intent was illegal; that's precisely why the law ties the statute of limitations to the plaintiff's rejection instead.

PayPal cannot get around its concession that the two rounds were discrete by speculating that Andav never applied for the second round. *Cf.* MTD.8. The complaint alleges the opposite. After not being selected for the first round, Andav remained in the applicant pool and in consideration for the program. Am.-Compl.¶¶53-54. Nothing in the complaint suggests that, after the first round was announced in October 2020, PayPal rejected all pending applications and made everyone reapply. And nothing in the complaint suggests that PayPal required applicants who were not selected in October 2020 to do something "further" to remain in consideration. MTD.8. (No announcement, press release, or other document from PayPal supports those theories either.) PayPal, too, has described the program as one application process that started in 2020 and continued at least through May 2021. *E.g.*, Am.-Compl.¶59; *Faces of Impact - Lisha Bell*, at 4:18-4:25, YouTube (Nov. 15, 2023), perma.cc/2NSV-QSPX (cited at Am.-Compl.¶73, ¶92) ("[W]e set up a very simple online questionnaire; please submit to us; we reviewed it; and we got capital out in 18 months.").

This case is not like *Scott v. NASCAR*, where the plaintiff applied, "was not hired," and then waited five years to sue. 2008 WL 217049, at *4, *11-12 (S.D.N.Y. Jan. 17). Andav applied, was not chosen for the first round but remained in contention, and then was rejected in a second round a few months later. Contra Defendants, Desai was not "'hopeful'" that PayPal would reconsider its *prior* rejection of Andav in the first round. MTD.8. She was "hopeful" that PayPal would choose Andav in the *next* round because Andav's application remained live and under consideration. Am.-Compl.¶¶53-54. Plaintiffs can challenge that second "discrete" rejection because it "'occurred' within the appropriate time period." *Morgan*, 536 U.S. at 114; *Scott*, 2008 WL 217049, *11.

Nor can PayPal speculate that, when the program did not choose Andav for the first round, it somehow announced that Andav had been rejected for all future rounds. *Cf.* MTD.8, 10-11. Again, the complaint alleges the opposite. After the first recipients were announced in October 2020, Andav remained in consideration. Am.-Compl.¶¶53-54. Everyone knew there would be additional rounds, since the first round disbursed only a portion of what PayPal had pledged. ¶20. There was, in fact, a second round not long after the first. ¶55. And Andav's application was never rejected in between the first and second rounds. ¶¶53-54. Until PayPal announced the second group of recipients in May 2021, the clock to challenge that round could not have started because Plaintiffs lacked "'definite notice'" of PayPal's "'official position'" on Andav. *Smith*, 65 F.3d at 268. PayPal's cited cases agree. *E.g.*, *United States v. N.Y.C.*, 631 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (clock did not run during the two-year period between plaintiff's "interview" and the "posting" because "no one told" plaintiff that defendant "would not be extending a job offer to her"); *Andrews v. Fremantlemedia*, 613 F. App'x 67, 68

(2d Cir. 2015) ("plaintiffs' claims accrued when they were eliminated from the show" because that decision "was communicated to each plaintiff at the time of their respective eliminations").

Notably, PayPal knows how its application process worked; and while PayPal isn't supposed to contest the complaint's facts at this stage, it never even *suggests* that Plaintiffs misdescribe the program's process. If PayPal really required applicants to submit brand-new applications for the second round, then PayPal can prove that fact in discovery and reraise a statute-of-limitations defense at summary judgment. But PayPal bears the burden to prove untimeliness. *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). At the pleading stage, dismissing claims as untimely "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. N.Y.C.*, 186 F.3d 243, 250 (2d Cir. 1999); *accord Wilson v. JPMorgan Chase Bank*, 2021 WL 5179914, at *9 (S.D.N.Y. Nov. 8). Timeliness cannot be decided on "a motion to dismiss" where any "doubt" remains. *Ortiz v. Cornetta*, 867 F.2d 146, 149 (2d Cir. 1989); *see Wang v. Palmisano*, 51 F. Supp. 3d 521, 536 (S.D.N.Y. 2014) (denying motion to dismiss on timeliness grounds where it was "unclear when Plaintiff's job applications were rejected"); *Goodwine v. N.Y.C.*, 2016 WL 3017398, at *5 (S.D.N.Y. May 23) (declining to "parse" a "patchwork" of limitation rules at the pleading stage). More than doubt, PayPal's theories are implausible and are contradicted by the complaint's well-pleaded facts.

### B.    Even if the May 2021 rejection were not a discrete discriminatory act, Plaintiffs' claims would be timely.

If PayPal's May 2021 funding decision was not a discrete discriminatory act, then the timeliness of Plaintiffs' claims becomes even easier. Though the funding program had several discrete rounds, PayPal sometimes says the program was a "one-time" event. MTD.1. Under

this view, PayPal created one program, set aside one pot of money, and decided to award that money to one set of recipients. But if that were true, then PayPal announced the first half of the recipients in October 2020 and the other half in May 2021. Applicants who were not selected in the first round could not have known that they were rejected *by the program* until PayPal announced all the rounds. The clock to challenge the funding program, then, could not have started until PayPal announced its "final decision" on who was accepted and rejected in May 2021. *Conn. Light & Power Co. v. U.S. Sec'y of Lab.*, 85 F.3d 89, 96 (2d Cir. 1996); *see, e.g., Doyle v. Nordam Grp., Inc.*, 2010 WL 5141274, at \*5 (N.D. Okla. Dec. 13) (clock started when "the employer fill[ed] the position to the exclusion of plaintiff," not when the employer first rejected the plaintiff, because "the position was still open" and plaintiff could have gotten it later), *aff'd*, 492 F. App'x 846 (10th Cir. 2012).

Alternatively, Plaintiffs' claims would be timely under the continuing-violation doctrine. The statute of limitations for "a continuous practice and policy of discrimination" does not start "until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (cleaned up). The continuing-violation doctrine applies where the plaintiff alleges "an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250. While the doctrine "most often" arises in Title VII cases, "its application is not limited to that context." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (collecting cases).

If the two rounds of funding were not discrete acts, then they would be a continuing violation. Through the funding program, PayPal adopted a policy of contracting only with

black- and Hispanic-led companies. Am.-Compl.¶¶64-66, ¶¶68-70. PayPal's many racially discriminatory programs at that time, *see* ¶4, ¶19, ¶49, ¶62, could also "reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination," *Fitzgerald*, 251 F.3d at 362; *see also id.* (district courts should not reject a continuing-violation theory for failure to allege "a formal policy" before the plaintiff has "an opportunity to conduct discovery"). In furtherance of its policies, PayPal excluded Plaintiffs from "receiving funding in its investment program because of Ms. Desai's race." Am.-Compl.¶66. That exclusion included refusing to contract with Andav in the second round in May 2021. ¶¶55-57. Because that act in furtherance of PayPal's policies falls within the limitation period, Plaintiffs' claims are timely. *See, e.g.*, *Harris*, 186 F.3d at 250 (reversing dismissal where plaintiff alleged "repeated *failure* to consider him for promotion … in furtherance of the continuing policy of discrimination"); *Fitchett v. N.Y.C.*, 2019 WL 3430726, at *7-8 (S.D.N.Y. July 30) (similar).

PayPal's only argument against the continuing-violation doctrine is that its "alleged refusal in 2020 to consider Plaintiffs for funding" is a "discrete unlawful act." MTD.10. True, for most statutes, "'discrete acts' of discrimination … do not implicate the continuing-violation doctrine." *Chin*, 685 F.3d at 156. But PayPal can't have it both ways. "[I]ncidents of … discrimination must be categorized either as discrete acts or continuing violations." *Fleming v. Verizon N.Y.*, 419 F. Supp. 2d 455, 465 (S.D.N.Y. 2005). If PayPal's refusal in May 2021 to consider Andav for funding based on Desai's race is not a discrete act, then neither is PayPal's refusal in October 2020. Both acts would be "'part of a continuing policy and practice of prohibited discrimination.'" *John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home*, 2014 WL 1236804, at *6 (E.D.N.Y. Mar. 25); *see Fitchett*, 2019 WL 3430726, at *7 (applying continuing-

violation doctrine where plaintiff alleged a "process over time of ignoring him and shunting his candidacy aside based on racial animus"). And because PayPal's May 2021 refusal to consider Andav occurred "within the applicable limitations period, all acts contributing to that violation may be timely challenged in [Plaintiffs'] discrimination claim, even those occurring outside of the statutory period." *Fleming*, 419 F. Supp. 2d at 465; *see Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

### C.    PayPal's arguments are not relevant to Plaintiffs' NYCHRL claim.

At a minimum, PayPal's timeliness arguments are not relevant to the NYCHRL. The NYCHRL's version of the continuing-violation doctrine is broader. *Cardwell v. Davis Polk & Wardwell*, 2020 WL 6274826, at \*39 (S.D.N.Y. Oct. 24). Even "discrete acts can trigger the NYCHRL's continuing violations doctrine where they can be shown to be the result of a discriminatory policy or practice." *Toussaint v. N.Y.C.*, 2021 WL 4429316, at \*5 (S.D.N.Y. Sept. 27) (cleaned up). As explained, Plaintiffs plausibly alleged a discriminatory policy or practice by PayPal. So if PayPal's May 2021 decision is a discrete act, then Plaintiffs can challenge all acts taken pursuant to PayPal's policy of discrimination, including the funding program's October 2020 decision. *E.g.*, *Taylor v. N.Y.C.*, 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (treating discrete failures to hire as a "continuing violation, rendering the conduct outside the limitations period timely" under NYCHRL); *Morgan v. NYS Atty. Gen.'s Off.*, 2013 WL 491525, at \*12 (S.D.N.Y. Feb. 8) (treating a discrete failure to promote as part of a continuing violation under NYCHRL).

PayPal doesn't even acknowledge this distinction between the NYCHRL and the other statutes. PayPal cites one case about the NYCHRL for an unrelated proposition, and that case did not involve or discuss the continuing-violation doctrine. MTD.6. When PayPal argues that

the continuing-violation doctrine does not apply to "discrete" acts, it cites no cases addressing the NYCHRL's broader standard. MTD.10-11. Any new arguments in PayPal's reply should not be credited. *Simon v. N.Y.C.*, 2015 WL 2069436, at *2 n.4 (S.D.N.Y. May 4).

## II.    Plaintiffs adequately allege discrimination in credit (Counts II and III).

Though PayPal is right that Plaintiffs' ECOA claim is timely, *see* MTD.1, it is wrong that Plaintiffs' credit-discrimination claims violate Rule 8. ECOA makes it "unlawful for any creditor to [racially] discriminate against any applicant, with respect to any aspect of a credit transaction." 15 U.S.C. §1691(a)(1). Section 296-a of the NYHRL tracks ECOA's text, *see* N.Y. Exec. Law §296-a(1)(b), so claims under the two laws can be "considered together." MTD.11. The statutes have four elements:

1. Defendants were creditors;
2. Plaintiffs were eligible credit applicants;
3. Defendants racially discriminated against Plaintiffs; and
4. Defendants' discrimination involved an aspect of a credit transaction.

15 U.S.C. §1691(a)(1); N.Y. Exec. Law §296-a(1)(b). Considering these elements, Plaintiffs plausibly alleged credit-related discrimination under both statutes.

### A.    Defendants are creditors.

Under ECOA, a "creditor" includes "any" entity that "regularly" extends or arranges credit. 15 U.S.C. §1691a(e)-(f). New York's definition is similar. *See* N.Y. Exec. Law §292(1), (22) ("creditor" includes "any" entity that "does business in [New York]" and "extends credit or arranges for the extension of credit by others"). These definitions are "broad." *Carroll v. Walden Univ.*, 650 F. Supp. 3d 342, 361 (D. Md. 2022). An entity "regularly" extends or arranges credit even if it does so only several times a year. *E.g.*, *Bagley v. Lumbermens Mut. Cas. Co.*, 100 F. Supp. 2d 879, 882 (N.D. Ill. 2000) (issuing four sets of loans was "sufficient to make [the

defendant] a creditor"). An entity is also a creditor—even if it "do[es] not participate in credit decisions"—if it regularly "refers" people to creditors. 12 C.F.R. §1002.2(*l*) official interp.

Defendants are creditors. PayPal Holdings—the parent company over everything at PayPal, including PayPal Ventures and the program, ¶¶15-16—offers a host of "credit products," including a "digital" line of credit, a "revolving" line of credit, several "credit cards," and myriad business loans. ¶77, ¶118, ¶136 (cleaned up). PayPal Ventures also regularly makes investments in the form of credit and helps recipients by backing and arranging for credit with PayPal and others. ¶¶74-75, ¶¶78-79. These allegations, which must be taken as true, are more than enough to "infe[r]" that Defendants "meet the relevant definitions of 'creditor.'" *Johnson v. Vilsack*, 833 F.3d 948, 958 (8th Cir. 2016).

Defendants don't deny that they are creditors generally. *See* MTD.16. Though they say Plaintiffs must also allege that Defendants were "creditors" with respect to the Fund, MTD.16, that argument is irrelevant and wrong. Irrelevant because the complaint alleges that Defendants were creditors with respect to the program. *E.g.*, ¶74, ¶76, ¶78, ¶79, ¶118, ¶¶127-28. And wrong because PayPal ignores the statutory text. Under both laws, whether an entity is a creditor turns on what it "regularly" does, not on what it did on a particular occasion. 15 U.S.C. §1691a(e); *accord* N.Y. Exec. Law §292(22) (similar). Defendants do not dispute that they "regularly" extend or arrange credit, 15 U.S.C. §1691a(e), or that they "d[o] business in [New York]," N.Y. Exec. Law §292(22). So Plaintiffs' allegations about what Defendants do in "other contexts" besides the funding program are sufficient on their own to make Defendants creditors. MTD.16; *see, e.g.*, Am.-Compl.¶77, ¶118, ¶136, ¶138.

**B.    Plaintiffs were eligible applicants.**

Under ECOA, an "applicant" is "any person who applies to a creditor" for credit. 15 U.S.C. §1691a(b); *accord* N.Y. Exec. Law §296-a ("applicants"). The application need not be formal; a mere "reques[t]" will do. 12 C.F.R. §202.2(e). Some courts also ask whether applicants were eligible for the credit—meaning they met the objective eligibility requirements, other than the discriminatory ones. *See Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 533 (S.D.N.Y. 2015).

Plaintiffs applied to the program. Immediately after Defendants opened it, Desai interviewed with PayPal executives and asked to participate. Am.-Compl.¶¶32-33, 35-36. She submitted materials, revealed detailed and confidential data, and repeatedly supplemented her submission. ¶39; *accord* ¶35, ¶37, ¶44. This process was how companies applied for the program. ¶59, ¶¶31-45. And Defendants agree that Plaintiffs did enough, as PayPal confirmed it would review "Andav's submission" and never claimed that Andav's application was "[in]complete." ¶45; *see Dawson v. N.Y.C. Transit Auth.,* 624 F. App'x 763, 769 (2d Cir. 2015) ("that Defendant's agents represented to [plaintiff] on multiple occasions that they were aware of his request and were considering it[ b]el[ies] the conclusion that Plaintiff's campaign was insufficien[t]").

Plaintiffs were also eligible, apart from race, to participate. As the complaint alleges and Defendants concede, the funding program was broadly open to "startups and investment funds." Doc.32 at 1; *accord* Am.-Compl.¶21, ¶¶26-28, ¶¶55-56. Andav was a U.S.-based investment firm with a relevant funding mandate and demonstrably fitting experience. ¶¶11-12, ¶22, ¶¶26-27. Though not necessary, the complaint also explains why Andav was a strong candi-

date. Andav shared the funding program's stated goals, invested in the program's stated priorities, and had a better track record than other program awardees. ¶22, ¶26, ¶¶51-52. Again, Defendants agreed that Andav was qualified, which is why PayPal said it would "consider … Andav's submission" and never identified any objective flaw. ¶45.

Defendants do not challenge that Plaintiffs applied to the program. Though they claim that Andav never applied for credit, they simply repeat their argument that the program involved no credit. *See* MTD.16-17. That argument is wrong, as explained below. *Infra* II.D. And the program had only one application process. *See* Am.-Compl.¶21, ¶¶31-46. Nothing in the complaint suggests that, after recipients applied to the program and had their businesses carefully scrutinized by PayPal, the program required yet another application before it would provide investments in the form of credit or facilitate credit opportunities. ¶39, ¶¶44-46.

If Defendants are saying that Plaintiffs somehow wanted access to the program but not the credit opportunities that the program provided or arranged, *cf.* MTD.14 n.5, they are impermissibly fighting the complaint's facts. Plaintiffs did want those opportunities. *E.g.*, Am.-Compl.¶¶31-44, ¶¶71-74. Credit, after all, is a common type of "investment" and "funding." *Cf.* MTD.13. PayPal's lawyers wonder why investors would give an investment fund not just cash, but also loans (on favorable terms) and help getting loans. *See* MTD.12 n.4 (citing SEC, *Starting a Private Fund*, sec.gov/resources-smallbusinesses/capital-raising-building-blocks/starting-private-fund (last accessed May 28, 2025)). But as PayPal's source explains, investors make "investments of various sizes and types," including both "equity" and "debt," to diversify their risk and to meet the recipient's ever-changing needs. SEC, *Diversifying Risk*, archive.ph/JsyXD (archived July 7, 2025); *accord* Am.-Compl.¶92. And as PayPal itself touts, a

key benefit of working with PayPal Ventures is its "suppor[t] engag[ing] with … other investors" and its "help" navigating "credit," given PayPal's "deep corporate support network" and the "credibility that comes with being backed by one of the world's most trusted brands." *About*, PayPal Ventures, archive.is/wOOLq (archived July 9, 2025) (cited at Am.-Compl.¶78); *see also* Am.-Compl.¶75, ¶80.

Defendants also never contest that Andav was eligible for the program. The question is whether Andav met the program's objective minimum criteria, not whether Andav had "general creditworthiness." MTD.16. A bank that gives high-interest loans to bankrupt people—but only if they are white—could not escape liability because bankrupt people can't generally get loans. Creditworthiness is relevant only to the extent that it's an objective eligibility requirement for the program in question. In *Powell v. American General Financial*, for example, the program had certain minimum "credit history" requirements that the plaintiff never alleged she met. 310 F. Supp. 2d 481, 488 (N.D.N.Y. 2004). But here, the funding program had no such requirements. Am.-Compl.¶21. Its mission was to support "early-stage" funds led by "first time" partners that otherwise get "overlooked" by traditional funders. ¶61, ¶80, ¶¶22-23. The program helped *make* otherwise underfunded companies funded by giving them PayPal's powerful backing and support. ¶¶83-92.

If PayPal means that Andav was not qualified to get *any* credit—either from PayPal after it selected Andav for the funding program, or from others once Andav had PayPal's powerful backing—that argument is even weaker. At the pleading stage, the complaint must be read favorably to Plaintiffs, and nothing in the complaint suggests that Andav was insolvent or unable to get traditional financing. The complaint alleges the opposite: When Plaintiffs

applied to the program, Andav was a successful firm run by a successful founder with a good track record. ¶¶24-30, ¶51. Its track record was *better* than some of the funds that PayPal chose. ¶52. And, of course, the complaint alleges that Andav was qualified for the funding program. To paraphrase PayPal, it is "wholly implausible" that Andav was qualified for "millions of dollars of investments" from the funding program and yet not qualified for "credit" from PayPal and others. MTD.14 n.5.

### C. Defendants discriminated against Plaintiffs.

PayPal also "discriminate[d]" against Plaintiffs based on race. 15 U.S.C. §1691(a)(1). The program preferenced funds led by blacks and Hispanics over funds led by Asian-Americans and whites. *See* 12 C.F.R. §1002.4(b) official interp. (explaining that ECOA bans "discriminatory preference[s]"). The funding program's explicit racial preference and intent were confirmed in statements by PayPal's decisionmakers. *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006); *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014); *see, e.g.*, Am.-Compl.¶42, ¶59, ¶¶55-56, ¶¶61-62, ¶64. And they were shown when, through two rounds of funding, 100% of the recipients were led by blacks or Hispanics and 0% were led by whites or Asians. *Bridgeport Guardians v. Bridgeport*, 933 F.2d 1140, 1146 (2d Cir. 1991); *see, e.g.*, Am.-Compl.¶50, ¶57, ¶63, ¶¶68-70. These allegations go far beyond the "minimal plausible inference of discriminatory intent" needed at the pleading stage. *Columbia Univ.*, 831 F.3d at 55.

PayPal does not contest that *the funding program* discriminated based on race; though PayPal speculates that the same credit opportunities might have been equally available to Andav outside the program, MTD.14-15, that argument doesn't work. PayPal can try to prove that causation-style defense with evidence at summary judgment, but the defense appears nowhere in the complaint and cannot be a reason to dismiss at the pleading stage. *See Columbia*

*Univ.*, 831 F.3d at 57 n.10; *Parker v. Workmen's Circle Ctr. of the Bronx*, 2015 WL 5710511, at \*4 (S.D.N.Y. Sept. 29). The complaint alleges the opposite: PayPal gave credit because recipients were part of the program, and PayPal's backing was essential to opening credit opportunities that were otherwise unavailable. Am.-Compl.¶¶72-76, ¶¶79-81. Even if Andav were equally capable of getting credit without the program, PayPal still would be liable. By blocking Andav from the program, PayPal refused to refer Andav to other creditors or to back its applications for credit because of race, ¶6, ¶¶71-74—practices that themselves count as illegal discrimination under the credit laws, *infra* II.D.

### D.    Defendants' discrimination involved credit.

PayPal's discrimination also involved "a[n] aspect of a credit transaction." 15 U.S.C. §1691(a)(1); N.Y. Exec. Law §296-a(1)(b). The program involved credit in several ways. PayPal provided credit to recipients directly and to the portfolio companies that they co-owned, including in the form of "loans, convertible notes, and structured credit." Am.-Compl.¶74, ¶72, ¶118. PayPal also became a "limited partner" with the recipients, which meant it backed their applications for "subscription credit facilities" and other loans. ¶71, ¶76. And PayPal used its relationships to refer recipients to get "credit" from others. ¶¶78-80, ¶82. By barring Andav from participating in the program, PayPal blocked Andav from accessing the program's credit. By refusing to become a limited partner with Andav, PayPal refused to back Andav's credit applications—thus depriving Andav of "the right" to "incur debts" for PayPal and the partnership. 15 U.S.C. §1691a(d); 12 C.F.R. §202.2(j). And by denying Andav the program's assistance, PayPal discriminated by refusing to "arrang[e]" credit or refer Andav for credit. 15 U.S.C. §1691a(d)-(e); N.Y. Exec. Law §292(22); 12 C.F.R. §1002.2(*l*) & official interp.

Though PayPal assumes it can't be liable for refusing to back or refer Andav to "other creditors," MTD.15, PayPal is mistaken. ECOA bars discrimination with respect to "any aspect" of a credit transaction. 15 U.S.C. §1691(a)(1). It bars entities that regularly extend or arrange credit from discriminating against "*any* applicant, with respect to any aspect of *a* credit transaction." *Id.* (emphases added); *see also* §1691a(b) ("applicant" means "any person who applies to *a* creditor" (emphasis added)). In other words, creditors can violate the statute by discriminating against someone seeking credit from a third party. The opposite reading—that creditors violate ECOA only when they deny credit themselves—contradicts the statute's coverage of entities that "arrang[e]" credit and entities that "participate" in credit decisions. 15 U.S.C. §1691a(e); *accord* N.Y. Exec. Law §292(22). And it would invalidate several regulations that contemplate liability for creditors who don't make the ultimate credit decision themselves. *See Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976-77 (7th Cir. 2004) (making this point).

PayPal quotes a case saying the plaintiff must have "'applied for credit from [the] *defendant*,'" MTD.15 (alterations by PayPal; quoting *Germain*, 111 F. Supp. 3d at 526), but that case was just explaining how to prove an ECOA violation in cases involving that fact pattern. As *Germain* carefully acknowledged, ECOA can also be violated by defendants that merely "helped arrange" credit or that "'participated in the decision to grant or deny credit.'" *Germain*, 111 F. Supp. 3d at 529 n.11. Courts uniformly recognize that ECOA is "not limit[ed]" to defendants who themselves "extend credit" to the plaintiff. *Treadway*, 362 F.3d at 976-77; *e.g.*, *Carroll*, 650 F. Supp. 3d at 359 (university processed applications for loans made by others); *Jefferson v. Briner Inc.*, 2006 WL 1720692, at *5 (E.D. Va. June 21) (broker "actively advocat[ed]"

for clients with other lenders); *Wide v. Union Acceptance Corp.*, 2002 WL 31730920, at *3 (S.D. Ind. Nov. 19) (entity backed credit and "'influence[d] the credit decision'" of others).

Regardless, the complaint also alleges that PayPal *itself* denied Plaintiffs credit. As explained, PayPal gave credit to recipients of the program, Plaintiffs applied to the program, and PayPal excluded Plaintiffs from the program. PayPal cannot avoid liability by saying Andav applied only to the program, not to specific credit within the program—or that Andav and its companies had no guarantee of getting credit through the program. *Cf.* MTD.14-15. ECOA broadly "covers all dealings, without exception, between an applicant and a creditor." 12 C.F.R. §1002.4(a) official interp. While it certainly bans the discriminatory denial of credit, it also bans discrimination earlier in the process. *Hargraves v. Cap. City Mortg.*, 140 F. Supp. 2d 7, 23 (D.D.C. 2000). It bans, for example, discrimination in "application procedures" or the "furnishing of credit information," as well as "discourag[ing]" someone from "making or pursuing an application" in the first place. 12 C.F.R. §1002.4(a) official interp.; §1002.2(m); §1002.4(b) & official interp. "Congress well understood that 'any aspect of a credit transaction' had to include actions taken by a creditor before an applicant ultimately submits his or her credit application." *CFPB v. Townstone Fin.*, 107 F.4th 768, 776 (7th Cir. 2024). A defendant can "effectively den[y] credit" under ECOA "even before it would necessarily have the authority or ability to grant credit" and "before the applicant has even requested it." *Treadway*, 362 F.3d at 975-76. PayPal's race-based exclusion of Andav from the program did just that.

PayPal's arguments also ask this Court to ignore the pleading standard. The point of Rule 12(b)(6) is to test compliance with Rule 8, and the point of Rule 8 is to give the defendant "'notice.'" *Erickson*, 551 U.S. at 93. PayPal does not lack notice: It knows exactly whether and

how its program involved credit. Notably, PayPal doesn't even *deny* that the program provided credit and arranged credit opportunities. Its lawyers are careful to phrase their arguments only in terms of factual "detail" that the complaint supposedly omits. *E.g.*, MTD.14. But complaints don't need "[s]pecific facts." *Erickson*, 551 U.S. at 93. Nothing in ECOA turns on what "types of credit" the program involved. MTD.14; *see Bros. v. First Leasing*, 724 F.2d 789, 791 (9th Cir. 1984) (ECOA "applies to all 'credit transactions'"). And the complaint alleges several specific types of credit. *E.g.*, ¶¶74-75 ("loans, convertible notes, and structured credit"); ¶76 ("secure subscription credit facilities"); ¶77 ("traditional small business loans"). PayPal Ventures itself advertises on its website that it helps its recipients navigate "'credit,'" ¶78—a "representa-tio[n]" that Plaintiffs can "bas[e] their … claim on" without more "specific allegations," *Mahmoud v. Taylor*, 2025 WL 1773627, at *20 (U.S. June 27).

Plaintiffs' well-pleaded allegations about credit must be accepted as true. Of course, Plaintiffs don't yet have specific documents outlining specific credit that the funding program offered and arranged: PayPal's dealings with program recipients are mostly nonpublic, and PayPal blocked Andav from learning more based on Desai's race. Am.-Compl.¶71. But be-cause these "facts are peculiarly within the possession and control of the defendant," Plaintiffs are "permitted to plead [them] 'upon information and belief.'" *Benjamin v. Consol. Edison Co.*, 2018 WL 1406620, at *2 (S.D.N.Y. Mar. 20) (cleaned up); *e.g.*, *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) ("records" regarding defendant's loans with third parties); *Altman Stage Lighting v. Smith*, 2022 WL 374590, at *6 (S.D.N.Y. Feb. 8) (defendant's business relationships and discussions with third parties). Independently, Plaintiffs can plead on information and belief because their complaint adds "factual information that makes the inference of culpability

plausible." *Arista Recs. v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Andav *is* an investment firm with extensive experience working in this industry, dealing with investors of all sizes, and structuring and managing investments. Am.-Compl.¶¶26-30. The complaint's allegations that the funding program provided, backed, and arranged for credit are not "'[e]ntirely specula-tive.'" MTD.5. They are supported by "Andav's experience," Plaintiffs' "discussions with banks," "standard industry practice," statements from PayPal, PayPal's extensive business lending, and an empirical example of a company whose investment from PayPal Ventures was credit. *E.g.*, Am.-Compl.¶¶74-81.

What's entirely speculative are the opposite assumptions: That PayPal, a company that specializes in giving loans to businesses, offered no credit to the recipients of its funding pro-gram. That PayPal, despite being the recipients' limited partner, would not back the partner-ship's loans. And that PayPal, despite promising to use its vast network and expertise to help recipients, did not help them get credit. If all that's true, then PayPal can prove it after discov-ery. But for now, PayPal has more than fair "notice" of why Plaintiffs allege the opposite. *KeyCorp*, 521 F.3d at 214-16.

### III. Plaintiffs adequately allege a claim under the NYCHRL (Count IV).

In New York City, businesses must offer their goods and services "on equal terms" to all. N.Y.C. Code §8-107(4)(1)(a). The NYCHRL bans "any place or provider of public accom-modation" from racially discriminating in "any" of its "accommodations, advantages, services, facilities or privileges." *Id.* The term "provider of public accommodation" is defined to include "providers … of goods, services, facilities, accommodations, advantages or privileges of any kind." §8-102. The statute's rule of construction says its provisions "shall be construed liber-ally" to accomplish its "uniquely broad and remedial purposes." §8-103(a).

The complaint alleges a plausible violation of the NYCHRL. Defendants are "provider[s] of public accommodation": They offer credit, capital, and other investments, which are at least "advantages," "privileges," and "services." §8-102; *see* Am.-Compl.¶62, ¶70, ¶¶73-75, ¶¶136-37. The Fund was one of those products, and Defendants do not deny that their program discriminated based on race.

Though PayPal insists that the program was not open to the "public," MTD.17-18, PayPal is reading requirements into the NYCHRL that aren't there. The statute asks whether the "provider of public accommodation" discriminated in "any" of its services, not whether a particular service was open to the public. N.Y.C. Code §8-107(4)(1)(a); §8-102. Regardless, PayPal didn't meaningfully limit which companies could apply for its program (aside from its racial bar). Am.-Compl.¶21, ¶59. That PayPal selected only some applicants does not defeat public-accommodation status. *E.g.*, *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 583 (S.D.N.Y. 2017) (NYCHRL covers graduate school); *Bantum v. Am. Stock Exchange*, N.Y.L.J. at 24, col. 3 (Sup. Ct. Apr. 17, 2003), perma.cc/7B2P-NG3G (NYCHRL covers stock exchange).

PayPal's argument also turns on the supposedly ordinary meaning of the word "public," MTD.17-18; but in the NYCHRL, the term "provider of public accommodation" is specifically defined. N.Y.C. Code §8-102. When a law "suppl[ies] its own definition of [a] term," that definition displaces the term's "'ordinary meaning'"—not the other way around. *People v. Starling*, 85 N.Y.2d 509, 514 (1995). PayPal does not dispute that it satisfies the NYCHRL's definition (and that it fails the narrow carveout for private clubs, N.Y.C. Code §8-102). Its plea

to use some other definition violates one of the most "[b]asic canons of statutory interpreta-tion." *Equal Access for El Paso v. Hawkins*, 562 F.3d 724, 727 (5th Cir. 2009). Its reliance on dictionaries and other jurisdictions also violates the NYCHRL's rule of construction, which says its provisions must be "construed liberally" precisely because the NYCHRL is "uniquely broad and remedial." N.Y.C Code §8-130(a); *accord* §8-130(b) (requiring "exemptions" from the NYCHRL to be "construed narrowly in order to maximize deterrence of discriminatory conduct"). After the NYCHRL's amendments in 2005, courts "must analyze NYCHRL claims separately and independently" from other laws and jurisdictions. *Mihalik v. Credit Agricole Cheuvreux N.A.*, 715 F.3d 102, 109 (2d Cir. 2013).

Unsurprisingly, PayPal cites no case exempting a company from the NYCHRL be-cause, despite meeting the statute's definition of public accommodation, the company is in-sufficiently "public." Its lead case, *Sattler v. City of New York Commission on Human Rights*, held that a dentist's office did *not* satisfy the statutory definition of "place of public accommoda-tion," since that definition used to say "'*retail* stores and establishments.'" 147 Misc. 2d 189, 194 (Sup. Ct. 1990) (emphasis added). The *Sattler* court "stressed the importance of the mod-ifying word 'retail,'" calling that word "critical" to its decision. *Id.* at 194-95. But the word "retail" has since been deleted, and the NYCHRL now covers "providers" of "services" of "any kind." N.Y.C. Code §8-102. Even before the amendment, the trial court's reasoning in *Sattler* had been rejected by New York's highest court. *See Cahill v. Rosa*, 89 N.Y.2d 14, 21-22 (1996). And PayPal isn't like the dentist's office in *Sattler* anyway, a one-person shop that stayed "locked at all times" and took only "referrals." 147 Misc. 2d at 197. PayPal, its facilities, and the funding program's application process were broadly open. Am.-Compl.¶21, ¶77, ¶¶136-

38; *cf., e.g.*, *Pallozzi v. Allstate Life Ins.*, 198 F.3d 28, 32 (2d Cir. 1999) (deeming insurance under-writing to be a public accommodation under federal law).

## CONCLUSION

The Court should deny Defendants' motion to dismiss.

Dated: July 18, 2025

Respectfully submitted,

*/s/ Patrick Strawbridge*
Thomas R. McCarthy**
Cameron T. Norris**
Daniel M. Vitagliano* (SDNY Bar No.
5856703)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
tom@consovoymccarthy.com
cam@consovoymccarthy.com
dvitagliano@consovoymccarthy.com

Patrick Strawbridge**
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Supervised by principals of the firm
admitted to practice in VA
**Pro hac vice

## CERTIFICATION OF COUNSEL

Per Local Civil Rule 7.1(c), this brief was prepared using Microsoft Word. According to Word, its total number of words (excluding the caption, table of contents, table of authorities, signature block, and this certification) is 8,179.

*/s/ Patrick Strawbridge*