UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
NISHA DESAI et al.,                                 :
                                                    :
                              Plaintiffs,           :
                                                    :                    25-CV-33 (JMF)
             -v-                                    :
                                                    :                    OPINION AND ORDER
PAYPAL HOLDINGS, INC. et al.,                       :
                                                    :
                              Defendants.           :
                                                    :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    In 2020, PayPal Holdings, Inc. ("PayPal"), the well-known financial institution and

technology company, announced the allocation of $500 million to "an economic opportunity

fund to support and strengthen Black and underrepresented minority businesses and

communities" and invited "startups and investment funds to express interest in this fund."  ECF

No. 37 ("FAC"), ¶¶ 20-21 (cleaned up).  Nisha Desai, the Chief Executive Officer of Andav

Capital ("Andav"), a New York-based venture capital firm, applied to PayPal for funding but did

not get it.  *See id.* ¶¶ 11-12, 22, 47-67.  Thereafter, she and Andav brought this lawsuit against

PayPal and PayPal Ventures (the "corporate venture arm and affiliate of PayPal"), challenging

Andav's exclusion from the program.  FAC ¶ 14.  They bring claims under 42 U.S.C. § 1981; the

credit discrimination provision of the New York State Human Rights Law ("NYSHRL"), N.Y.

EXEC. LAW § 296-a; the public accommodations discrimination provision of the New York City

Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE § 8-107(4); and the Equal Credit

Opportunity Act ("ECOA"), 15 U.S.C. §1691 *et seq*.  *See* FAC ¶¶ 97-142.  Now pending is

Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to

dismiss Plaintiffs' Amended Complaint for failure to state a claim.  For the reasons given below, Defendants' motion is GRANTED in part and DENIED in part.

BACKGROUND

The following facts are, unless otherwise noted, taken from the Amended Complaint (the "Complaint") and assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Desai, an Asian-American woman, is the CEO and founding general partner of Andav, a New York-based venture-capital firm.  FAC ¶¶ 11-12.  PayPal is a technology company with offices around the world, including New York City.  *Id.* ¶¶ 13-14.  On June 11, 2020, PayPal "unveiled 'a $530 million commitment to support Black and minority-owned businesses in the U.S. . . . to help address economic inequality.'"  *Id.* ¶ 19 (quoting a PayPal Press Release).  As part of that commitment, PayPal allocated $500 million "specifically for 'an economic opportunity fund to support and strengthen Black and underrepresented minority businesses and communities over the long term' and to 'drive financial health, access and generational wealth creation,' including by 'investing directly into Black and minority-led startups and *minority-focused investment funds*.'"  *Id.* ¶ 20 (quoting the PayPal Press Release) (emphasis added in FAC).  PayPal invited startups and investment funds to express interest in the fund.  *Id.* ¶ 21.

Within a few hours of PayPal's announcement, Desai contacted PayPal to inquire about the funding program and express interest on Andav's behalf.  *Id.* ¶ 32.  Over the course of the next few weeks, Desai communicated with executives and employees of PayPal about the prospect of funding for Andav.  *Id.* ¶¶ 33-38.  Most relevant here, on July 24, 2020, Desai had a conversation with Usman Ahmed, Head of Public Policy and Research for PayPal, during which Ahmed acknowledged that the program "did, in fact, preference black and Hispanic-led firms

over other races and ethnicities, including Asian Americans." *Id.* ¶¶ 40-42.  Desai asked Ahmed "to explain what that meant," but Ahmed "did not do so." *Id.* ¶ 42.  Afterwards, Desai followed up with more information about Andav and, on July 26, 2020, Ahmed responded by email to thank her and let her know that PayPal "would consider . . . Andav's submission." *Id.* ¶¶ 44-45.

On October 28, 2020, PayPal announced its first funding investments, stating in a press release that it was investing $50 million "in eight early-stage, Black and Latinx-led venture capital funds." *Id.* ¶ 47.  Andav was not one of the recipients — even though its "track record" was comparable to, or better than, some of the funds that received investments.  *Id.* ¶ 52.  Instead, "every single one of the funds that PayPal invested in this first round included at least one general partner who was black or Latino." *Id.* ¶ 50.  In the press release announcing these first round investments, PayPal also announced it would establish "a racially exclusive venture capital apprenticeship program" and "'begin offering a three-month fellowship to a Black or Latinx graduate student each semester, through which the PayPal Ventures team will provide coaching, training and mentoring.'" *Id.* ¶ 49 (quoting the press release).

Plaintiffs allege that because PayPal did not follow up with Desai "to reject or accept Andav's submission (or to ask for more information)," she "understood that Andav was still under consideration for PayPal's investment program" and "remained hopeful that PayPal would consider Andav's submission favorably." *Id.* ¶ 53.  On May 26, 2021, however, PayPal announced a "second round of investments, trumpeting that it funded 'an additional $50 million in 11 Black- and Latinx-led early-stage venture capital funds.'" *Id.* ¶ 55 (quoting a press release).  PayPal explained that these investments "were designed to 'build upon the $50 million investment by PayPal in eight Black and Latinx-led early-stage venture capital funds announced in October 2020.'" *Id.* (quoting the press release).  Taking the two rounds of investments

3

together, PayPal invested in nineteen funds "led by 'Black and Latinx managers,' but announced

not $1 of funding or other support for Asian-American woman-led funds." *Id.* ¶ 63; *see also id.*

¶¶ 68-70 (discussing the racial composition of the recipient funds).

PayPal has not announced an end to the investment program, *see id.* ¶ 67, but Plaintiffs

do not allege that it has made any additional investments.  In May 2024, Desai informed PayPal

that she planned to file a lawsuit "no later than May 23, 2024," challenging the company's

failure to provide funding to Andav.  *See* ECF No. 40-2, at 2.  To facilitate settlement

negotiations, Plaintiffs and PayPal entered into a tolling agreement that effectively stopped the

running of any applicable statute of limitations as of May 22, 2024.  *See id.*  Negotiations

eventually broke down, and Plaintiffs filed this lawsuit.  The operative Amended Complaint

alleges that PayPal limited its fund investments on the basis of race and, in doing so, violated

Section 1981's prohibition of race discrimination in contracting (Count I), *see* FAC ¶¶ 97-114;

the ECOA's prohibition of discrimination in a credit transaction (Count II), *see id.* ¶¶ 115-23; the

NYSHRL's prohibition of race discrimination by creditors in granting "credit" (Count III), *see*

*id.* ¶¶ 124-32; and the NYCHRL's prohibition of race discrimination by providers of public

accommodations (Count IV), *see id.* ¶¶ 133-42.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts

set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See,*

*e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018); *Burch*

*v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  A plaintiff's claims will

survive a motion to dismiss, however, only if it alleges facts sufficient "to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, a plaintiff must show "more than a sheer possibility that [the] defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," for example, "are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 463 (S.D.N.Y. 2022) (citing *Ashcroft*, 556 U.S. at 678). If a plaintiff's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Twombly*, 550 U.S. at 547.

## DISCUSSION

PayPal argues that Plaintiffs' claims under Section 1981, the NYSHRL, and the NYCHRL should be dismissed as time barred, *see* ECF No. 39 ("Defs.' Mem."), at 6-11; that their claims under the NYCHRL fail because the investment program is not a "public accommodation" within the meaning of the statute, *see id.* at 17-18; and that their claims under the ECOA and the NYSHRL fail because, among other things, Plaintiffs never applied for "credit," *see id.* at 11-17. The Court will address each argument in turn.

### A. Timeliness

The Court need not dwell long on PayPal's timeliness argument. The parties agree that the statute of limitations for the claims at issue is three years and that, in light of the parties' tolling agreement, this case was effectively filed on May 22, 2024. *See id.* at 6-8 & n.2; ECF No. 48 ("Pls.' Opp'n"), at 6-7. Thus, Plaintiffs' claims are timely if they accrued on or after May 22, 2021 — that is, if Plaintiffs received notice of the allegedly discriminatory decision on

or after that date.  *See* Defs.' Mem. 8-9; Pls.' Opp'n 6-7; *see also, e.g.*, *Andrews v. Freemantlemedia N.A., Inc.*, No. 13-CV-5174 (NRB), 2014 WL 6686590, at *6 (S.D.N.Y. Nov. 20, 2014), *aff'd*, 613 F. App'x 67 (2d Cir. 2015) ("In the context of discrimination, courts have held that a discrimination claim accrues from the date the claimant receives notice of the allegedly discriminatory decision, not when he has reason to know of a possibly discriminatory motive for that conduct." (cleaned up)).  Finally, "a pre-answer motion to dismiss on timeliness grounds may be granted *only* if it is clear on the face of the complaint that the statute of limitations has run."  *Doe v. Kimmel*, No. 24-CV-3201 (JMF), 2025 WL 343509, at *2 (S.D.N.Y. Jan. 30, 2025) (internal quotation marks omitted).

Treating Plaintiffs' allegations as true, the Court cannot say that it is clear on the face of the Complaint that the claims at issue are untimely.  To be sure, Defendants' argument would be on point if the only act Plaintiffs were challenging were PayPal's October 2020 decision not to fund Andav.  But Plaintiffs plausibly allege that Defendants *also* discriminated against them on May 26, 2021, when PayPal announced a "second round of investments."  FAC ¶ 55.  A reasonable factfinder could conclude that that announcement was a "discrete discriminatory act," and it is well established that, when a plaintiff is subjected to multiple acts of discrimination, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

PayPal's arguments to the contrary are unpersuasive.  First, PayPal argues that because Plaintiffs allege that PayPal's discriminatory motive was "unmistakable" as of the first investment decisions on October 28, 2020, the statute of limitations should begin to run from that date.  Defs.' Mem. 6-8.  But "[t]he existence of past acts and the [plaintiff's] prior knowledge of their occurrence . . . does not bar [the plaintiff] from filing charges about related discrete acts so

6

long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Morgan*, 536 U.S. at 113; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) ("[I]dentifiable discrete actions are not time-barred simply because they occurred as part of an ongoing pattern of discrimination or retaliation that began outside the statutory period."). If, therefore, the May 26, 2021 announcement was a discrete act — as Plaintiffs plausibly allege — the fact that Desai may have known of PayPal's alleged "racial preferences" earlier would be immaterial. Defs.' Mem. 7.

PayPal also contends that the May 26, 2021 round of investments is irrelevant to Plaintiffs' claims because the Complaint does not allege that they "made any further attempts to pursue funding after [Andav was] not selected in October 2020." Defs.' Mem. 8. But PayPal initially announced its intention to provide $500 million in investments, and the first round of funding allocated only $50 million of that total. *See* FAC ¶¶ 20, 47. In light of that, and the fact that PayPal never rejected Andav's application, Desai could reasonably have believed that Andav was still under consideration come the second, "discrete" round of funding. *See id.* ¶¶ 46, 53-54; *cf. United States v. City of New York*, 631 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (holding that the limitations period did not run in the two years between an employee's interview and the next job posting because "no one told [the employee] that [the employer] would not be extending a job offer to her" in that period). These facts distinguish this case from *Scott v. National Ass'n for Stock Car Racing, Inc.*, No. 06-CV-6029 (DAB), 2008 WL 217049 (S.D.N.Y. Jan. 17, 2008), upon which Defendants rely, *see* Defs.' Mem. 8. *Scott* involved only a single discrete decision: the defendants' decision not to hire the plaintiff "for the positions for which he applied." 2008 WL 217049*, at *11. In light of that, the court correctly concluded that the plaintiff could not "toll the statute of limitations by initiating [later] contact" with the defendants or by "claiming he

was waiting patiently for five to six years for [the defendants] to give him any job." *Id.* at *12 (internal quotation marks omitted). Here, by contrast, Plaintiffs plausibly allege multiple discrete discriminatory acts, at least one of which — the May 26, 2021 decision not to grant Andav funding — is without the limitations period.

In short, Defendants' timeliness argument must be and is rejected.

## B.  The NYCHRL Claim

Defendants' attack on Plaintiffs' NYCHRL claim can also be swiftly rejected. The NYCHRL makes it unlawful for any "provider of public accommodation" to "refuse, withhold from or deny . . . the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" because of race. N.Y.C. ADMIN. CODE § 8-107(4)(a)(1)(a). "[P]rovider of public accommodation" is defined, in turn, to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind." *Id.* § 8-102; *see D.H. v. City of New York*, 309 F. Supp. 3d 52, 80 (S.D.N.Y. 2018) (observing that NYCHRL is "statutorily defined to encompass a broad range of entities"). And significantly, the NYCHRL instructs that it is to be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof." N.Y.C. ADMIN. CODE § 8-130(a); *see, e.g.*, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108-09 (2d Cir. 2013).

Citing *Black's Law Dictionary*'s definition of "public," PayPal argues that Plaintiffs' claim fails because "Plaintiffs do not allege that [the PayPal] Fund investments were 'open or available for all to use, share, or enjoy.'" Defs.' Mem. 17-18. But that argument ignores both the statutory definition of the term, *see, e.g.*, *People v. Starling*, 650 N.E.2d 387, 390 (N.Y. 1995) (observing that, "[b]ecause the Legislature has chosen to supply its own definition" of a

statutory term, the lower court had "properly declined to supplement that definition with defendant's proffered dictionary definition"), and the injunction to construe the statute "liberally for the accomplishment of the uniquely broad and remedial purposes thereof," N.Y.C. ADMIN. CODE § 8-130(a); *see also, e.g.*, *Cahill v. Rosa,* 674 N.E.2d 274, 276 (N.Y. 1996) (stating, as to the analogous state statute, that "the definition of place of accommodation should be interpreted liberally").  It also ignores the gravamen of Plaintiff's claim, which is that PayPal invited, without qualification, "'[s]tartups and investment funds'" to apply for funding, FAC ¶ 21, and then discriminated on the basis of race in making its decisions.  Put simply, PayPal does not — and could not — dispute that it falls within the broad scope of the *statutory* definition of the term "provider of public accommodation."  For present purposes, that is the end of the matter.

PayPal's reliance on *Sattler v. City of New York Commission on Human Rights*, 554 N.Y.S.2d 763 (Sup. Ct. 1990), *aff'd*, 580 N.Y.S.2d 35 (App. Div. 1992), *see* Defs.' Mem. 18, which held that a dentist's office was not a place of public accommodation within the meaning of the NYCHRL, is misplaced for at least four reasons.  First, the decision was explicitly based on the fact that the statutory definition included the phrase "retail stores and establishments dealing with goods and services of any kind," but that phrase was deleted from the statute in 1991.  *See* 580 N.Y.S.2d at 37; *see also* 554 N.Y.S. 2d at 766.  Second, the decision predated the 2005 amendment of the statute, which added the "liberal construction" mandate.  *See Mihalik*, 715 F.3d at 108-09.  Third, even if the Court were to ignore those material amendments, the narrow interpretation adopted by the court in *Sattler* was explicitly considered and rejected by the New York Court of Appeals when construing similar language in the New York State law analog to the NYCHRL.  *See Cahill*, 674 N.E.2d at 276-77.  Fourth, and in any event, PayPal is a far cry from the dentist's office in *Sattler*, a one-person shop that was "locked at all times" and took

9

patients "by referral only." 554 N.Y.S.2d at 768. PayPal generally, and its investment fund specifically, were broadly open to the public. *See* FAC ¶¶ 21, 77, 136-38.

In sum, Defendants' efforts to dismiss Plaintiffs' NYCHRL claim fall short.

## C. The ECOA and NYSHRL Claims

By contrast, the Court concludes that Plaintiffs fail to state credit discrimination claims under the ECOA and the NYSHRL. The ECOA provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a)(1). Section 296-a is the "state counterpart" to the ECOA, and Plaintiffs concede that discrimination claims under both statutes should be "consider[ed] . . . together." *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 525 (S.D.N.Y. 2015); *see* Pls.' Opp'n 16. Specifically, to establish a *prima facie* case under either law, a plaintiff must allege that "(1) [she] was a member of a protected class, (2) [she] applied for credit from [the] defendant, (3) [she] was qualified for credit but [the] defendant denied [her] credit application, and (4) [the] defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain*, 111 F. Supp. 3d at 526 (internal quotation marks omitted).

The statutory definitions of "applicant" and "credit" are "essential to the correct application of these provisions." *Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990) (discussing the ECOA). As relevant here, an "applicant" is "any person who applies to a creditor directly for an extension, renewal, or continuation of credit." 15 U.S.C. § 1691a(b); *see Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) ("[T]he plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit."). "Credit" is defined, in turn, as "the right granted by a creditor to a debtor to defer payment of

10

debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor."  15 U.S.C. § 1691a(d); *see* N.Y. EXEC. LAW § 292(20) (defining "credit" as "the right conferred upon a person by a creditor to incur debt and defer its payment, whether or not any interest or finance charge is made for the exercise of this right"); *see also* 12 C.F.R. § 1002.2(j) (defining "credit"); *id.* § 1002.2(m) (defining "credit transaction").  And a creditor is "any person who regularly extends, renews, or continues credit."  15 U.S.C. § 1691a(e). "Reading these various definitions together, it is apparent that the ECOA" — and, by extension, the NYSHRL — "extends only to instances in which the right to defer payment of an obligation is granted.  Absent a right to defer payment for a monetary debt, property or services, the [statutes are] inapplicable."  *Shaumyan*, 900 F.2d at 18.

Measured against these standards and definitions, Plaintiffs' allegations fall short because they fail to allege that they were "applicants" for "credit."  The Complaint alleges that Plaintiffs sought "funding" and "investments" from PayPal — but it nowhere alleges that Plaintiffs would have been required to pay such "funding" and "investments" back.  FAC ¶¶ 22, 33, 55, 66.  And while the Complaint makes various allegations that purport to tie Plaintiffs' application to PayPal's fund to a credit transaction, none suffices.  First, Plaintiffs speculate that they might have used their relationship with PayPal, had it chosen to invest in Andav, to secure credit at some point in the future.  For example, the Complaint alleges that "institutional limited partners in emerging venture capital funds" typically "allow their brand and signed subscription agreements to be used by those venture funds to secure subscription credit facilities."  *Id.* ¶ 76.  It also alleges that, although "[t]he precise structure" of PayPal's "investments in each of the funds it invested in is not public," it is "common . . . that money invested by a limited partner . . . is used . . . to secure additional capital, thus constituting a form of credit."  *Id.* ¶ 71.  But the fact

11

that PayPal's involvement with Plaintiffs might have allowed them to more effectively apply for credit is not sufficient to make Plaintiffs' attempt to establish that relationship itself an "application for credit."  As stated above, for the ECOA to apply, the Complaint must allege that Plaintiffs "request[ed] . . . an extension of" the "right . . . to defer payment of a debt."  12 C.F.R. §§ 1002.2(e), (j), (m).  Because the Complaint does not allege that Plaintiffs were at any stage of making any such request, Plaintiffs fail to satisfy this requirement.

As Plaintiffs note, the Complaint also suggests that PayPal might have extended credit to some of the companies that recipients of funding themselves invest in — i.e., their "portfolio companies."  Pls.' Opp'n 22.  For example, the Complaint alleges that PayPal "extended further credit benefits to awardee" funds by "invest[ing] directly into portfolio companies of" the funds.  FAC ¶ 72.  The Complaint says these investments into portfolio companies "include loans, convertible notes, and structured credit."  *Id.* ¶ 74.  On that score, the Complaint describes a $15 million investment by PayPal into Qoala, a portfolio company, which was "in the form of a convertible note and is characterized as 'lending.'"  *Id.* ¶ 75.  Relatedly, the Complaint alleges that PayPal's work with funds it selects for its investment program includes "giving lendable capital" to those funds — namely, giving them funds that they can subsequently lend themselves to their portfolio companies.  *Id.* ¶ 73.  But once again, these allegations miss the mark.  For the ECOA and NYSHRL to apply, the "credit" at issue must be "the right granted by a creditor *to an applicant* to defer payment."  12 C.F.R. § 1002.2(j) (emphasis added).  Plaintiffs' arguments why third parties might have lost out on credit because Andav was not selected for investment are therefore inapposite.  *See, e.g.*, *Germain*, 111 F. Supp. 3d at 528-29 (holding that a mortgage banker and firm did not have standing to pursue ECOA claims on behalf of clients).

Finally, the Complaint alleges that, "[u]pon information and belief, including standard industry practice and announcements from funds selected by PayPal, the benefits and collaboration that PayPal provided to the venture capital firms that received its racially exclusionary awards included the provision of credit and access to other beneficial loan opportunities." FAC ¶ 79. But while "a plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, . . . a plaintiff cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-2827-CV, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023) (summary order) (internal quotation marks omitted). Plaintiffs' allegations "are neither based on facts peculiarly within the possession and control of [PayPal] nor based on factual information that makes them plausible." *Id.* (internal quotation marks omitted). Notably, Plaintiffs cite a wide variety of specific and public information regarding PayPal's investments in funds and portfolio companies in their attempts to characterize the potential investments as a credit transaction. *See* FAC ¶¶ 72-78. But none of those allegations support an inference that Plaintiffs themselves were applicants for credit from PayPal, so their "entirely speculative" allegations to the contrary based on "information and belief" do not suffice. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 226 (2d Cir. 2017).

Plaintiffs make a few broad arguments to avoid these conclusions. First, they assert that "Defendants are creditors" by pointing to other contexts in which PayPal and PayPal Ventures extend credit. Pls.' Opp'n 17. For example, PayPal "offers a host of 'credit products,' including a 'digital' line of credit, a 'revolving' line of credit, several 'credit cards,' and myriad business loans." *Id.* (citing FAC ¶¶ 77, 118, 136). And PayPal Ventures "regularly makes investments in the form of credit and helps recipients by backing and arranging for credit with PayPal and

13

others." *Id.* (citing FAC ¶¶ 74-75, 78-79). That may be so, but to qualify for the protections of the ECOA and the NYSHRL, the plaintiff herself must be an "applicant," *Gorham-DiMaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 291 (N.D.N.Y. 2008), *aff'd*, 421 F. App'x 97 (2d Cir. 2011) (summary order), which requires a showing that she herself "request[ed] credit," *Hawkins*, 761 F.3d at 941; *see* 15 U.S.C. § 1691a(b). Thus, it is not sufficient that PayPal offers credit and, thus, arguably qualifies as a creditor within the meaning of the statutes. Plaintiffs must also plausibly allege that they applied for credit, which they fail to do.

Second, Plaintiffs cite a string of out-of-Circuit cases to argue that ECOA claims are "not limited to defendants who themselves extend credit to the plaintiff." Pls.' Opp'n 23 (cleaned up) (citing *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 976-77 (7th Cir. 2004), and *Carroll v. Walden Univ., LLC*, 650 F. Supp. 3d 342, 359 (D. Md. 2022)). But these cases are distinguishable, as they all involved concrete — rather than speculative and hypothetical — applications for credit. In *Treadway*, for example, the plaintiff responded to a direct-mail solicitation from a seller of automobiles by providing the dealership with her information so it could "attempt[] to arrange for financing" on her behalf "through banks or finance companies." 362 F.3d at 973-74. Based on her credit report, the dealership "unilaterally decided not to seek financing" on her behalf. *Id.* at 974. Similarly, in *Carroll*, the plaintiff submitted an application to the defendant for it to "process[] the application[], request[] additional information, determine[] eligibility, and then communicate[] offers . . . regarding student loans." 650 F. Supp. 3d at 359. In each case, that is, the plaintiff plainly "f[ell] within the definition of an 'applicant'" and "adequately allege[d] a credit transaction." *Id.* Not so here.

Nor is the Court persuaded by Plaintiffs' argument, based on the official interpretation of the implementing regulations for the ECOA, that the ECOA "covers all dealings, without

14

exception, between an applicant and a creditor." Pls.' Opp'n 24 (internal quotation marks omitted) (quoting 12 C.F.R. § 1002.4(a) (Supp. I 2025)). First, as explained above, Plaintiffs do not plausibly allege in the first instance that they were "applicants" within the meaning of the statute. Thus, they "can not invoke the protections of the Act" or its state analogue. *Gorham-DiMaggio*, 592 F. Supp. 2d at 291. Second, what the interpretation actually says is that "*the general rule stated in § 1002.4(a)* covers all dealings, without exception, between an applicant and a creditor." 12 C.F.R. § 1002.4(a) (Supp. I 2025) (emphasis added). The "general rule stated in § 1002.4(a)," however, is that "[a] *creditor* shall not discriminate against *an applicant* on a prohibited basis *regarding any aspect of a credit transaction*." 12 C.F.R. § 1002.4(a) (emphasis added). Thus, the official interpretation does not get Plaintiffs past the "credit" and "applicant" gates.

Finally, it does nothing to save Plaintiffs' claims that the ECOA "bans discrimination earlier in the process" of applying for credit than the "denial of credit" itself. Pls.' Opp'n 24 (citing *Hargraves v. Cap. City Mortg.*, 140 F. Supp. 2d 7, 23 (D.D.C. 2000)). True, the ECOA (but not the NYSHRL) can apply to conduct that precedes an actual formal application for credit. *See, e.g.*, *Treadway*, 362 F.3d at 976; *see also CFPB v. Townstone Fin., Inc.*, 107 F.4th 768, 776 (7th Cir. 2024) ("Congress well understood that 'any aspect of a credit transaction' had to include actions taken by a creditor before an applicant ultimately submits his or her credit application."). But that does not obviate the need for Plaintiffs to plead a sufficiently non-speculative credit transaction at all or suggest that they can rely on conclusory allegations that a credit transaction might have arisen at some point in the future that would likely be influenced by PayPal's actions at issue here. *See, e.g.*, *Chizh v. Polish & Slavic Fed. Credit Union*, No. 10-CV-1505 (SLT) (LB), 2011 WL 2680495, at *5 (E.D.N.Y. July 8, 2011) (dismissing an ECOA

claim as "outside the scope of the ECOA's corresponding regulation, which clarifies that any 'application' must be 'made in accordance with procedures used by a creditor for the type of credit requested.'" (quoting 12 C.F.R. § 202.2(f))); *Shaumyan*, 900 F.2d at 18 ("Absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable.").

In sum, Plaintiffs fail to plausibly allege that they were "applicants" for "credit" within the meaning of the ECOA and NYSHRL and, thus, those claims must be and are dismissed.[1]

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part. Specifically, Plaintiffs' claims under the ECOA and NYSHRL are dismissed, but their claims under Section 1981 and the NYCHRL survive.

Further, the Court declines to *sua sponte* grant Plaintiffs leave to amend their dismissed claims. To be sure, leave to amend a pleading should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), and there are multiple reasons to exercise that discretion to deny leave here. First, the problems with Plaintiffs' dismissed claims — namely, that they fail to allege that there was a credit transaction — are substantive, so amendment as to these claims would likely be futile. *See, e.g.*, *Roundtree v. N.Y.C.*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021)

---

[1] In light of that conclusion, the Court need not and does not reach PayPal's argument that Plaintiffs also fail to allege that they were qualified to receive credit. *See* Defs.' Mem. 16-17.

(citing cases).  Second, Plaintiffs do not request leave to amend or suggest that they are in possession of facts that would cure the problems with the dismissed claims.  *See, e.g., Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at \*15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014).  And third, the Court granted Plaintiffs leave to amend their original complaint in response to Defendants' motion to dismiss — which raised the same arguments with respect to Plaintiffs' NYSHRL claim — and explicitly warned that they would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss."  ECF No. 36; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).

Unless and until the Court orders otherwise, Defendants shall file their Answer to Plaintiffs' remaining claims within **four weeks of the date of this Opinion and Order**.  *See* Fed R. Civ. P. 12(a)(4)(A).  In addition, the initial pretrial conference, previously adjourned, is hereby reinstated and RESCHEDULED for **January 27, 2026**, at **9:00 a.m.**  To access the conference, counsel should call the Court's dedicated conference call line at (855) 244-8681 and use access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID number, press the pound (#) key again.  The parties are reminded to follow the procedures for telephone conferences described in the Court's Individual Rules and Practices for Civil Cases, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman, including Rule 3(B)(i), which requires the parties, no later than twenty-four hours before the conference, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may

17

speak during the conference and the telephone numbers from which counsel expect to join the call. The parties are reminded that, no later than the **Thursday before the conference**, they must submit a joint status letter and proposed Case Management Plan. *See* ECF No. 23.

The Clerk of Court is directed to terminate ECF No. 38.

SO ORDERED.

Dated: December 19, 2025
New York, New York

_____
JESSE M. FURMAN
United States District Judge

18