UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NISHA DESAI et al., Plaintiffs, -v- PAYPAL HOLDINGS, INC. et al., Defendants. | 25-CV-33 (JMF) MEMORANDUM OPINION AND ORDER |

JESSE M. FURMAN, United States District Judge:

On September 22, 2026, Defendants PayPal Holdings, Inc. and PayPal Ventures filed a letter-motion seeking to compel Plaintiffs Nisha Desai and Andav Capital to produce certain documents from other matters related to discrimination or investment funding. *See* ECF No. 64. Specifically, as relevant here, Defendants sought production of certain documents relating to mediation and settlement discussions Plaintiffs had engaged in concerning similar discrimination claims against a non-party financial services provider (the "Other Company"). *See id.* at 2. On September 25, 2026, Plaintiffs filed an opposition, citing *Accent Delight Int'l Ltd. v. Sotheby's*, 505 F. Supp. 3d 281 (S.D.N.Y. 2020), in which this Court had held that private mediation materials are subject to disclosure only if a heightened standard of need is met. *See* ECF No. 69.

In a Memorandum Opinion and Order entered on October 2, 2026, the Court indicated that it was "inclined to agree with Plaintiffs that the materials related to their private confidential mediations are likely shielded from discovery" unless Defendants could satisfy the heightened-need test by showing "'(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality.'" *Desai v. PayPal Holdings, Inc.*, No. 25-CV-33 (JMF), 2026 WL

2969643, at *1 (S.D.N.Y. Oct. 2, 2026) (ECF No. 70) (quoting *Accent Delight*, 505 F. Supp. 3d at 284). At the same time, the Court opined that "[t]he documents in question" were "plainly relevant to the issues raised in this case . . . and would therefore be 'otherwise discoverable.'" *Id.* (quoting FED. R. CIV. P. 26(b)(5)). Ultimately, the Court reserved judgment on whether the documents at issue were subject to disclosure and ordered Plaintiffs to produce a privilege log as to any documents they sought to withhold. *Id.* The parties were further directed to meet and confer concerning the invocation of privilege as to individual documents and to "raise further disputes with the Court only in the event they cannot reach agreement." *Id.*

Defendants now seek to compel production of "four documents . . . that Plaintiffs are withholding as mediation-privileged — a demand letter to [the Other Company] in a case that is nearly identical to this one, that company's response, and the resulting settlement and non-disclosure agreements — along with any similar documents that are not communications made during a mediation." ECF No. 79 ("Defs.' Mot."), at 1. Once again, Plaintiffs oppose the request. *See* ECF No. 87 ("Pls.' Opp'n"). To facilitate a resolution, the Court ordered Plaintiffs to submit the documents for the Court's *in camera* review. *See* ECF No. 88. The documents submitted by Plaintiffs fall into four categories: (1) letters exchanged from June through August 2025 between counsel for Plaintiffs and the Other Company (the "Mediation Parties") outlining the parties' respective legal arguments and discussing whether to enter into mediation (the "Pre-Mediation Letters"), *see* Doc. Nos. 931-32, 934, 936; (2) roughly contemporaneous email correspondence between counsel for the Mediation Parties concerning an agreement to toll the statute of limitations on Plaintiffs' claims (the "Tolling Communications"), *see* Doc. Nos. 927, 930, 933; (3) a January 9, 2026 email from a mediator to the Other Company's counsel and a January 16, 2026 email from the Other Company's counsel to Plaintiffs' counsel in response to

the January 9, 2026 email (the "Mediation Correspondence"), *see* Doc. No. 925; and (4) May 2026 settlement and nondisclosure agreements between the Mediation Parties (the "May 2026 Agreements"), *see* Doc. Nos. 923-24.[1]

The questions presented here are whether these documents are "subject to the heightened standard adopted by the Second Circuit in *In re Teligent, Inc.*, 640 F.3d 53 (2d Cir. 2011)" and, if so, whether Defendants have satisfied that standard. *Accent Delight*, 505 F. Supp. 3d at 284; *see Teligent*, 640 F.3d at 58 ("A party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality."). As noted, this Court previously held that the *Teligent* standard applied "to disclosure of information or materials from a confidential private mediation . . . in which there was an explicit promise of confidentiality." *Accent Delight*, 505 F. Supp. 3d at 287-88. But it did not need to "define the precise metes and bounds of what qualifies as 'mediation' for purposes of this rule," *id.* at 288 n.5, or opine on whether the heightened standard extended to the "disclosure of settlement agreements produced by a mediation," *id.* at 287 n.4. This case calls upon the Court to delve into the issues it left open in *Accent Delight*.

The Court begins with the Second Circuit's analysis in *Teligent*. The *Teligent* Court "tethered [its] heightened standard to the importance of confidentiality to 'the mediation and other alternative dispute resolution processes.'" *Accent Delight*, 505 F. Supp. 3d at 284 (quoting *Teligent*, 640 F.3d at 57). More specifically, the Second Circuit's decision "rested . . . on the rationale that promising confidentiality in mediation 'promotes the free flow of information that may result in the settlement of a dispute.'" *Id.* at 286 (quoting *Teligent*, 640 F.3d at 57). Indeed,

---

[1] For ease of reference, the Court cites to the documents reviewed *in camera* by the file numbers Plaintiffs provided.

the Second Circuit emphasized "that 'were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether.'" *Id.* (quoting *Teligent*, 640 F.3d at 59-60) (cleaned up). At least one other Circuit has echoed that reasoning, noting that, in order to make mediation effective, "[p]arties must be able to abandon their adversarial tendencies to some degree[,] . . . make hypothetical concessions, offer creative *quid pro quos,* and generally make statements that would otherwise belie their litigation efforts." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).

In light of that rationale, the Court agrees with and adopts the standard set forth in *ACQIS, LLC v. EMC Corp.*, No. 14-CV-13560 (ADB), 2017 WL 2818984 (D. Mass. June 29, 2017), for what qualifies as a mediation document. Under that standard, "communications to which a mediator was personally privy, communications that were directly made at a mediator's explicit behest, or communications undertaken with the specific intent to present them to a mediator for purposes of mediation are protected by" the heightened *Teligent* standard. *Id.* at *2. By contrast, the *Teligent* standard does not apply to communications that took place prior to any agreement to mediate, at which point parties have no reasonable expectation of confidentiality and have not yet "abandon[ed] their adversarial tendencies to [any] degree." *Goodyear*, 332 F.3d at 980. Nor does it apply to settlement agreements resulting from mediation, as disclosure of such information "would not necessarily inhibit . . . parties from engaging in a frank and forthcoming negotiation during the mediation itself." *Accent Delight*, 505 F. Supp. 3d at 287 n.4; *see Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 189 (1990) ("[Courts] do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for

probative evidence.'" (alteration omitted) (quoting *Trammel v. United States,* 445 U.S. 40, 51 (1980))).

Applying the foregoing standard to the documents at issue here, the Court holds that the heightened *Teligent* standard does not apply to the Pre-Mediation Letters, each of which makes explicit that Plaintiffs and the Other Company had not yet agreed to confidential mediation. *See* Pls.' June 4, 2025 Letter, Doc. No. 936, at 7 ("If [the Other Company] is interested in pursuing this resolution on an expedited and confidential basis, please contact us no later than June 9, 2025."); Other Company Aug. 6, 2025 Letter, Doc. Nos. 932, 934, at 7 ("If your client wishes to make a reasonable offer and explore the *possibility* of mediation, please let us know." (emphasis added)); Pls.' Aug. 26, 2025 Letter, Doc. No. 931, at 5 ("[I]f [the Other Company] makes a reasonable counteroffer, [Desai] is willing to proceed to mediation in good faith and on an expedited basis."). The Court reaches the same conclusion with respect to the roughly contemporaneous Tolling Communications. *See* Doc. Nos. 927, 930, 933 (reflecting tolling discussions taking place between June 4, 2025, and Sept. 3, 2025). And finally, the *Teligent* standard is also inapplicable to the May 2026 Agreements, as they reflect Desai and the Other Company's final resolution, rather than tentative negotiating positions. *See* Doc. Nos. 923-924.

Because the foregoing documents "are plainly relevant to the issues raised in this case . . . and would therefore be 'otherwise discoverable,'" *Desai*, 2026 WL 2969643, at *1 (quoting FED. R. CIV. P. 26(b)(5)), Plaintiffs must produce them to Defendants "barring any other applicable rules," *ACQIS*, 2017 WL 2818984, at *2. Plaintiffs argue that there is another "applicable rule[]" that bars their production, namely a "settlement privilege," Pls.' Opp'n 3, but the Court disagrees. "Although [Federal Rule of Evidence] 408(a) bars the admission of settlement communications and agreements into evidence for certain purposes, . . . nothing in Rule 408

renders such materials privileged against discovery." *Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438 (BCM), 2020 WL 3578251, at *5 (S.D.N.Y. July 1, 2020). And because those documents "are not privileged, no heightened showing of relevance need be made to justify their disclosure." *Id.* (cleaned up). Accordingly, Plaintiffs must produce the Pre-Mediation Letters, the Tolling Communications, and the May 2026 Agreements.

By contrast, the Court concludes that the heightened *Teligent* standard does attach to the Mediation Correspondence. *See* Doc. No. 925. That document reflects two communications: first, an email from a mediator to the Other Company outlining Desai's position and, second, a later email from the Other Company's counsel to Desai's counsel providing the Other Company's response, in which counsel made clear its intention to share the same communication with the mediator. Because the mediator was "personally privy" to the former and the latter was "undertaken with the specific intent to present [it] to a mediator," the *Teligent* standard applies. *ACQIS*, 2017 WL 2818984, at *2. Under that standard, Defendants must show "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Accent Delight*, 505 F. Supp. 3d at 284 (quoting *Teligent*, 640 F.3d at 58). It is not altogether clear whether Defendants even attempt to meet that standard with respect to the Mediation Correspondence. *See* Defs.' Mot. 3 ("PayPal does not seek communications made during a mediation . . . ."). But in any event, Defendants' only argument that they can meet the *Teligent* standard as to any of the disputed documents is that "PayPal is entitled to know if Plaintiffs threatened litigation, and received payment, for the same harms, during the same time period, that Plaintiffs are alleging they suffered in this matter." *Id.* Because Defendants will obtain that information from the Pre-Mediation Letters, the Tolling Communications, and the May 2026 Agreements, once they are

produced, Defendants cannot meet *Teligent*'s requirements with respect to the Mediation Correspondence, and that document need not be produced.

In sum, Defendants' motion to compel is GRANTED as to the Pre-Mediation Letters, Tolling Communications, and May 2026 Agreements, but DENIED as to the Mediation Correspondence. Plaintiffs shall produce the Pre-Mediation Letters, Tolling Communications and May 2026 Agreements **within three business days of this Memorandum Opinion and Order.** The Clerk of Court is directed to terminate ECF No. 79.

SO ORDERED.

Dated: November 23, 2026
New York, New York

JESSE M. FURMAN
United States District Judge